## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

_____

| | |
|---|---|
| John Doe, on behalf of himself and all others similarly situated, ) | |
| Plaintiff, ) | |
| v. ) | Civil Case. No. _____ |
| JEFFREY A. MEYERS, Commissioner of the New Hampshire Department of Health and Human Services, in his official capacity, ) | |
| Defendant ) | |
| and ) | |
| SOUTHERN NEW HAMPSHIRE MEDICAL CENTER ) | |
| Defendant ) | |
| and ) | |
| NEW HAMPSHIRE CIRCUIT COURT DISTRICT DIVISION, ) | |
| Necessary Third-Party Pursuant to Rule 19(a) ) | |

_____

## PETITION FOR WRIT OF HABEAS CORPUS
## AND
## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## (EXPEDITED HEARING REQUESTED ON HABEAS RELIEF)

Plaintiff John Doe files this Petition for Writ of Habeas Corpus against Jeffrey A.

Meyers, Commissioner of the New Hampshire Department of Health and Human Services

("DHHS"), in his official capacity, and Southern New Hampshire Medical Center ("SNHMC").

DHHS and SNHMC are currently unlawfully detaining Plaintiff by having failed to provide him a hearing to determine whether there is probable cause to believe that he is in such a mental condition as a result of mental illness to pose a likelihood of danger to himself or others.  Such a hearing should have occurred by November 8, 2018, which was three days after his November 5, 2018 initial detention.  Such a hearing within three days of detention is mandated by (i) the procedural due process guarantees of the Fourteenth Amendment to the United States Constitution, (ii) the procedural due process guarantees of Part I, Article 15 of the New Hampshire Constitution, and (iii) RSA 135-C:31, I.  As no hearing has been held within three days of his initial detention, Plaintiff must be immediately released.

Plaintiff John Doe, on behalf of himself and all others similarly situated, also brings this Class Action Complaint for Declaratory and Injunctive Relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, against Jeffrey A. Meyers, Commissioner of the New Hampshire Department of Health and Human Services, in his official capacity.  With respect to the class action relief sought in Counts I, II and III of this Complaint, SNHMC and the New Hampshire Circuit Court District Division are only joined as third parties because, in the absence of these parties, "the court cannot accord complete relief among existing parties."  *See* Fed. R. Civ. P. 19(a)(1)(A).

## INTRODUCTION

There is a systemic pattern and practice in New Hampshire where people who may be experiencing mental health crises are involuntarily detained in hospital emergency rooms without the State providing them with any due process, appointed counsel, or opportunity to contest their detention.  This practice is known as "psychiatric boarding."  As of October 31, 2018, approximately 46 adults and 4 children were being involuntarily "boarded" in emergency

rooms under RSA 135-C:27-33 while awaiting admission to a Designated Receiving Facility (DRF).  Though emergency room wait times can vary, they can last up to three weeks.

Indeed, the State has incorrectly interpreted RSA 135-C:31, I to provide due process only **_after_** the patient is formally admitted to a DRF.  The end result of this regime is that, while these patients are detained in hospital emergency rooms for weeks awaiting admission to a DRF, they receive no lawyer, no hearing, and no opportunity to be heard to contest their detention.  To make matters worse, because these emergency rooms are not community-based mobile crisis centers or DRFs designed to treat those involuntarily admitted under Chapter 135-C, many of these detained individuals may also not be receiving the medical care they need to address the mental health crisis they may be experiencing.  In short, the State is not complying with its constitutional and statutory obligation to provide timely process to these individuals as soon as their involuntary detention begins at the hospital emergency room.

This problem has become worse in recent years.  In the last three years, the number of adults being detained without process in emergency rooms while awaiting DRF admission has increased by over 350%.  As the Human Services Research Institute's December 22, 2017 report entitled "Evaluation of the Capacity of the New Hampshire Behavioral Health System" explained: "There has been a steady increase in the number of individuals experiencing boarding in New Hampshire ERs. On September 24, 2017 there were 70 people waiting for admission. The greatest total number of individuals at one time was 72."  *See* Human Services Research Institute, Final Report: Evaluation of the Capacity of the New Hampshire Behavioral Health System (Dec. 22, 2017), at p. 4 (emphasis added), *available at* https://www.hsri.org/publication/evaluation-of-the-capacity-of-the-new-hampshire-behavioral-health-system.  This waitlist has increased despite a recent upward trend in the number of

3

inpatient beds and community-based services available.

Plaintiff John Doe is one of these individuals who is currently being "boarded" without any due process. His boarding began on November 5, 2018 at Southern New Hampshire Medical Center ("SNHMC"). Plaintiff is being boarded in a windowless room with a television. Under RSA 135-C:31, I, Plaintiff should have received a hearing by November 8, 2018, at which time a Circuit Court judge would have determined whether there is probable cause to believe that he is in such a mental condition as a result of mental illness to pose a likelihood of danger to himself or others. However, no such due process has been provided. Instead, on November 8, 2018, SNHMC simply "renewed" the Petition to restart the three-day clock in order to buy time for DRF bed space to become available. As of November 8, 2018, Plaintiff is 14 on the waitlist to a DRF.

Plaintiff in this case is not asking this Court to remedy the DRF waitlist or address the State's failure to "immediately deliver" individuals to DRFs under RSA 135-C:29—a problem that is complex and beyond the scope of this narrow lawsuit.[1]  Rather, this case only asks this Court to require the State to perform its constitutionally-required obligation to provide due process protections to individuals involuntarily detained in emergency rooms.[2]  The State has failed to meet this most basic obligation. Accordingly, Plaintiff and the Plaintiff Class seek declaratory and injunctive relief against the State's violation of the Fourteenth Amendment's

---

[1] The ACLU-NH believes that the best policy response to the DRF waitlist is not institutionalization, but rather (i) increased community-based outpatient services for crisis prevention and diversion and (ii) full compliance with the Disability Rights Center's 2014 Community Mental Health Agreement (CMHA) as part of the class action settlement with the State in *Amanda D. v. Hassan*, No. 1:12-cv-53-SM.  These responses will reduce the need for inpatient beds and the incidence of emergency room boarding.

[2] This due process problem may be solved with video conferencing technology in coordination with the Circuit Court system.  As explained below, DHHS has devised such a plan to provide due process using this technology.  However, hospitals have resisted efforts to provide due process to those they have elected to involuntarily detain.  Given the fact that the DRF waitlist is unlikely to be resolved in the immediate future by policymakers, this makes the necessity of providing immediate due process to those being "boarded" in emergency rooms all the more urgent.

procedural due process guarantee.  Plaintiff and the Plaintiff Class further seek declaratory and injunctive relief against the State's violation of the due process guarantees in Part I, Art. 15 of the New Hampshire Constitution, as well as RSA 135-C:31, I.  Finally, Plaintiff seeks immediate habeas relief.

Plaintiff further alleges as follows:

## THE PARTIES

1.      Plaintiff John Doe[3] resides in Hillsborough County, New Hampshire.  He has been detained at Southern New Hampshire Medical Center since November 5, 2018 pursuant to a Petition and Certificate for Involuntary Emergency Admission.  Under RSA 135-C:31, I, Plaintiff should have received a hearing by November 8, 2018, at which time a Circuit Court judge would have determined whether there is probable cause to believe that he is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others.  The State has not provided him this hearing to determine whether he meets the criteria for involuntary admission.

2.      Defendant Jeffrey A. Meyers is the Commissioner of the New Hampshire Department of Health and Human Services (DHHS).  As Commissioner, Mr. Meyers oversees all DHHS programs, including its program of mental health services and its Medicaid program.  His responsibilities include, among other things, overseeing New Hampshire Hospital, as well as designing and delivering a comprehensive and coordinated system of community services for individuals with serious mental illness.  As Commissioner, his obligation is to ensure that the State of New Hampshire is providing appropriate procedural due process to individuals who are being involuntarily detained under RSA 135-C:27-33.  Commissioner Meyers is sued in his

---

[3] A Motion to Proceed Anonymously is being filed contemporaneously with this Complaint.

official capacity.   Commissioner Meyers, personally and through the conduct of his agents, servants, and employees, acted under color of state law at all times relevant to this action.

3.      Southern New Hampshire Medical Center ("SNHMC") is a New Hampshire hospital with a principal place of business at 8 Prospect Street, Nashua, NH 03060.  Plaintiff joins SNHMC as a Defendant as to Count IV's request for habeas corpus relief.  SNHMC, in detaining Plaintiff, is performing acts attributable to DHHS under 42 U.S.C. § 1983.  As to Class Action Counts, I, II, and III, SNHMC is a party in this action only because, in the absence of SNHMC, "the court cannot accord complete relief among existing parties."  *See* Fed. R. Civ. P. 19(a)(1)(A).

4.      The New Hampshire Circuit Court District Division handles misdemeanor and violation level offenses (including motor vehicle matters), small claims, landlord-tenant cases, stalking cases and other civil cases.   There are 32 Circuit Court District Division locations around the state.  The New Hampshire Circuit Court District Division conducts hearings under RSA 135-C:31 to determine if there is probable cause for involuntary emergency admission. Plaintiff joins the New Hampshire Circuit Court District Division as a party to Class Action Counts I, II, and III only because, in the absence of the New Hampshire Circuit Court District Division, "the court cannot accord complete relief among existing parties."  *See* Fed. R. Civ. P. 19(a)(1)(A).  The New Hampshire Circuit Court District Division is also a party to the extent this Court orders the Circuit Court system to hold a probable cause hearing for Plaintiff in response to his request for habeas corpus relief.

## JURISDICTION AND VENUE

5.      The federal claim in Class Action Count I arises under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.  A basis for habeas corpus relief

under Count IV also arises under the Fourteenth Amendment to the U.S. Constitution. This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331.

6.      The state law claims in Class Action Counts II and III arise under this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. A basis for habeas corpus relief under Count IV also arises under Part I, Article 15 of the New Hampshire Constitution and RSA 135-C:31, I. This Court has supplemental jurisdiction over these state law bases for habeas corpus relief.

7.      As to Count IV's request for habeas corpus relief, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1651 (All Writs Act), and § 2241 (habeas corpus); and Art. I, § 9, cl. 2 of the U.S. Constitution. Plaintiff is in custody in violation of the United States Constitution.

8.      Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

9.      Venue in the District of New Hampshire is based on 28 U.S.C. § 1391(b).

## CLASS ACTION ALLEGATIONS

10.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, the named Plaintiff brings this action on behalf of himself and other individuals who are currently being or will be after the date of this Class Action Complaint involuntarily detained pursuant to RSA 135-C:27-33 while awaiting involuntary admission to a DRF. These individuals are at serious risk of institutionalization at New Hampshire Hospital and other DRF hospitals.

11.     Prior to admission to a DRF, these individuals receive no procedural due process—including a lawyer or a hearing—to contest whether they meet the criteria for involuntary admission under RSA 135-C:27. This period without process can last up to three weeks until DRF admission. Plaintiff seeks declaratory and injunctive relief individually and on behalf of the class to remedy this procedural due process violation and violation of RSA 135-

C:31, I.

12.     The plaintiff class is so numerous that joinder of all members is impracticable. As of October 31, 2018, the class consists of at least 50 individuals (46 adults and 4 children) being involuntarily detained in emergency rooms without due process while awaiting DRF admission, as well as those individuals who will be involuntarily detained at non-DRF facilities in the future.

13.     There are questions of law and fact common to the Plaintiff Class, which includes whether the State of New Hampshire is violating the procedural due process protections of the Fourteenth Amendment and Part I, Article 15 of the New Hampshire Constitution—as well as RSA 135-C:35, I—by failing to provide any process to individuals who are being involuntarily detained under RSA 135-C:27-33 and are awaiting involuntary admission to a DRF.

14.     The named Plaintiff's claims are typical of the Plaintiff Class, thereby allowing the named Plaintiff to adequately and fairly represent the interests of the class members. The named Plaintiff will fully and vigorously prosecute this action and is represented by an ACLU-NH attorney experienced in federal class action litigation and constitutional law.  Individual members of the class would have difficulty pursuing their own claims remedying systemic violations on their own.

15.     New Hampshire has administered its mental health system in a way that fails to provide necessary process to individuals who are being involuntarily detained under RSA 135-C:27-33 and are awaiting involuntary admission to a DRF.  Therefore, New Hampshire has acted or declined to act on grounds that apply generally to the class, making injunctive and/or corresponding declaratory relief appropriate with respect to the class as a whole.  As a result, and consistent with similar civil rights actions, the Plaintiff and Plaintiff Class seek certification

pursuant to Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

**I.      Plaintiff's Experience**

16.     Plaintiff is 26 years old.  He has been married for 5 years to his wife, with whom they have two biological girls, ages 3 and 4.  Plaintiff is the breadwinner for the family, and the family is dependent on his income to survive.   Though low income, Plaintiff is steadily employed as a plasterer.

17.     On November 5, 2018, Plaintiff was admitted to SNHMC's emergency room after a suicide attempt.

18.     When admitted to SNHMC, Plaintiff acknowledged that he needed help. Understandably, he also expressed his worry that being admitted to SNHMC for a significant period of time would cause him to miss work, which could financially devastate his family.  The SNHMC clinicians on staff took this statement to mean that Plaintiff was reluctant to receive treatment and, as a result, SNHMC completed a Petition and Certificate for Involuntary Emergency Admission under RSA 135-C:27-33.

19.     However, Plaintiff *is* willing to undergo treatment for any mental health issues, including taking medication and receiving out-patient care.  Plaintiff strenuously believes that he is no longer a danger to himself, and that his issues can best be managed through community-based mental health support, as well as loving support under the watchful eye of his family. Plaintiff's wife wants him back at home and wishes to supervise his transition.  Rather than permit Plaintiff to avail himself of these options, SNHMC has continued to involuntarily detain him, causing his family financial uncertainty and preventing Plaintiff from being with his children.   SNHMC has declined to transition Plaintiff to "voluntary" status at SNHMC's

Behavioral Health Unit.

20.     Plaintiff should have received a probable cause hearing by November 8, 2018, at which time a Circuit Court judge would have determined whether there is probable cause to believe that he is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others.   No such hearing occurred.   Instead, SNHMC renewed this IEA Petition on November 8, 2018.[4]

21.     Thus far, Plaintiff has been detained for 5 days.   Presumably, SNHMC will assess whether to renew Plaintiff's IEA Petition on Tuesday, November 13.

22.     Plaintiff has been frustrated by his continued involuntary detention.   This frustration is entirely understandable.   Plaintiff has absolutely no idea when he will be released. As SNHMC staff have told him, they do not know when the release will occur, and it could be weeks.   When someone is indefinitely detained against their will without due process, wishes to see their children, and is worried about the financial security of one's family, such frustration should be sympathized with, especially when the person is kept in a secluded, windowless room. Plaintiff believes that he would be best served outside this restrictive environment.

23.     Even if it can be disputed that probable cause exists to believe that Plaintiff is in such a mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others, this is precisely why due process is essential—namely to resolve the dispute so individuals are not needlessly detained and kept away from their jobs and families.   Here, Plaintiff is desperate to get back to his family and his work.   His family needs him.   He is entitled to make that case to a Circuit Court judge.

---

[4] To the extent liability concerns motivated SNHMC to renew its IEA petition as to Plaintiff, it is important to note that, under a bill that came into effect on July 1, 2018 (Senate Bill 590), "[n]o civil action shall be maintained against a person who rescinds an involuntary admission pursuant to paragraph I or II, provided that the person is acting in good faith within the limits of his or her authority."  *See* RSA 135-C:29-a.

24.     At approximately 6:00 p.m. on Friday, November 9, 2018, Plaintiff's wife contacted the ACLU of New Hampshire about this situation.  This lawsuit was immediately filed at approximately 4:30 a.m. on Saturday, November 10, 2018.

## II.     The Systemic Nature of the Problem

25.     Plaintiff's experience is part of a systemic pattern and practice in New Hampshire where people who may be experiencing mental health crises are involuntarily detained in hospital emergency rooms without the State providing them with any due process, appointed counsel, or opportunity to contest their detention.   This practice is known as "psychiatric boarding."

26.     As of October 31, 2018, approximately 46 adults and 4 children were being involuntarily "boarded" in emergency rooms under RSA 135-C:27-33 while awaiting admission to a DRF.[5]  In short, while these hospitals will adequately treat individuals with cancer, broken bones, or cuts, these hospitals often place individuals experiencing a mental health issue in conditions that are tantamount to solitary confinement while they wait for a bed at a DRF.[6]  As these emergency rooms are not community-based mobile crisis centers or DRFs designed to treat

---

[5] There are five DRFs in New Hampshire that accept patients involuntarily admitted under Chapter 135-C.  New Hampshire Hospital in Concord has approximately 168 beds available.  As of December 2017, the four remaining DRFs have approximately 52 beds available: (i) the Cypress Center/Mental Health Center of Greater Manchester in Manchester (approx. 16 DRF beds available); (ii) the Psychiatric Intensive Care Unit at Elliot Hospital called "Pathways" in Manchester (approx. 14 DRF beds available); (iii) Franklin Regional Hospital in Franklin (approx. 10 DRF beds available); and (iv) Portsmouth Regional Hospital (approx. 12 DRF beds available).  *See* Human Services Research Institute, Final Report: Evaluation of the Capacity of the New Hampshire Behavioral Health System (Dec. 22, 2017), at p. 55 and 57 (Exhibit 25), *available at* https://www.hsri.org/publication/evaluation-of-the-capacity-of-the-new-hampshire-behavioral-health-system.    No DRF beds are available for individuals being involuntary admitted in the North Country after the closure of Androscoggin Valley Hospital.  New Hampshire Hospital is also one of the few options available for children in psychiatric crisis.  DRF capacity on a given day depends, in part, on patient mix.  Patient mix may impede full utilization of the 52 beds available at the non-New Hampshire Hospital DRF facilities.

[6] *See* Gali Katznelson and J. Wesley Boyd, "Solitary Confinement: Torture, Pure and Simple," *Psychology Today* (Jan. 15, 2018) ("The psychological effects of isolation last long after individuals are removed from isolation. Indeed, years after their release, many who experienced solitary confinement in Pelican Bay had difficulty integrating into society, felt emotionally numb, experienced anxiety and depression, and preferred to remain in confined spaces."),   *available   at*   https://www.psychologytoday.com/us/blog/almost-addicted/201801/solitary-confinement-torture-pure-and-simple.

those involuntarily admitted under Chapter 135-C, many of these detained individuals may also not be receiving the medical care they need to address the mental health crisis they may be experiencing.  It should come as no surprise that solitary conditions are likely to exacerbate a mental health crisis.

27.     This problem has gotten worse in the past three years.   According to data collected by National Alliance on Mental Health-New Hampshire (NAMI-NH), as of the second quarter of 2015, approximately 14 adults and 6 children, on average, were detained in emergency rooms with no due process until their placement in a DRF.  *See* July 2018 NAMI-NH Data, Slide 4, attached as <u>*Exhibit A*</u>.  As of October 2018, the number of adults being detained has increased by over 350% to the 50s on average.  A chart prepared by NAMI-NH highlights this significant increase:



*See id.* at Slide 1.[7]  The greatest number of waiting adults reached 71 (on August 21, 2017) and the greatest number of waiting children reached 27 (on May 25, 2017).  *See id.* at Slide 2; NAMI-NH, NHH Delay Data, *available at* https://goo.gl/o9R1Yv.  The second quarter of 2018 was the second highest on average for waiting adults and waiting children combined (50 total).  *See* July 2018 NAMI-NH Data, Slide 4, attached as <u>Exhibit A</u>.[8]

28.     Though emergency room wait times can vary, they can last up to three weeks.  At least one individual has waited 22 days in an emergency room without due process.[9]  Another individual was detained for 15 days before he was released after filing a habeas petition.  *See* <u>Exhibit B</u> (decision documenting a person's involuntary admission from July 25, 2018 to August 8, 2018).  New Hampshire Circuit Court Administrative Judge Edwin W. Kelly also documented three individuals who were held in emergency rooms from 14 to 15 days before being transferred to a DRF.  *See* Nov. 17, 2016 Kelly Order, p. 3-4, attached as <u>Exhibit C</u>.  From July 11, 2017 to September 6, 2017, emergency room wait times usually exceeded three days on average.  *See* July 2018 NAMI-NH Data, Slide 6 (data presented by New Hampshire Hospital's interim Chief Executive Officer Don Shumway at the 2017 N.H. Hospital Association Annual Meeting; during

---

[7] *See also* Human Services Research Institute, Final Report: Evaluation of the Capacity of the New Hampshire Behavioral Health System (Dec. 22, 2017), at p. 20 (Exhibit 1 documenting waitlist numbers from April 2015 to September 2017), *available at* https://www.hsri.org/publication/evaluation-of-the-capacity-of-the-new-hampshire-behavioral-health-system.

[8] As the Human Services Research Institute's December 22, 2017 report entitled "Evaluation of the Capacity of the New Hampshire Behavioral Health System" explained: "*There has been a steady increase in the number of individuals experiencing boarding in New Hampshire ERs*. On September 24, 2017 there were 70 people waiting for admission. The greatest total number of individuals at one time was 72."  *See* Human Services Research Institute, Final Report: Evaluation of the Capacity of the New Hampshire Behavioral Health System (Dec. 22, 2017), at p. 4 (emphasis added), *available at* https://www.hsri.org/publication/evaluation-of-the-capacity-of-the-new-hampshire-behavioral-health-system.  This waitlist has increased despite a recent upward trend in the number of inpatient beds and community-based services available. *Id.*

[9] *See* Jennifer Crompton, "Shortage of Mental Health Beds Forces Man Into ER for More Than 3 Weeks," *WMUR* (Aug. 8, 2018) ("A shortage of psychiatric facility beds in the state is having real consequences in North Conway, where a man has been living in an emergency room for more than three weeks. Scott Johnstone, 29, has been forced to live in Memorial Hospital's emergency room going on 22 days now as he waits for a bed in a psychiatric facility."), *available at* https://www.wmur.com/article/shortage-of-mental-health-beds-forces-man-into-er-for-more-than-3-weeks/22680883.

this time period, 35% of involuntary admissions were 3-10 days, and 17% of involuntary admissions were in excess of 10 days), attached as _Exhibit A_.  During this wait time, the State has established a policy, practice, and custom of providing no lawyer or hearing where such individuals can challenge their involuntary detention as not meeting the criteria of RSA 135-C:27.

29.     Because of this lack of community diversion resources and available DRFs beds, these individuals are not being "immediately delivered" to a DRF facility upon the completion of an involuntary admission certificate, as is contemplated under RSA 135-C:29, I.  Though enforcement of RSA 135:29, I is outside the scope of this narrow lawsuit, the end result is that the State abandons these individuals and compels them to detention in non-DRF emergency rooms—like Defendant SNHMC—that are not necessarily equipped to treat them often for weeks at a time without providing them with a lawyer or ability to contest their detention. Indeed, through this weeks-long abandonment, the State is avoiding its obligations to make treatment "immediately" available to these individuals in DRF facilities—responsibilities that are exclusively reserved to it—by delegating them to non-DRF facilities—like Defendant SNHMC—that may not have the resources to provide adequate treatment.  Simply put, non-DRF facilities like SNHMC are compelled to provide State functions through this boarding.  Such care is traditionally a public function of DHHS.  This practice is not only wrong, but it violates one of the bedrock principles in the Fourteenth Amendment: that a person's liberty should not be involuntarily taken away without the State giving that person the opportunity to be heard.

30.     This due process is critical.  According to data from DHHS, in 2017, of 1290 IEA cases docketed after a patient was transferred to a DRF, the patient was discharged _before_ the probable cause hearing occurred in 13% of the cases (162) and no probable cause was found in

1% of the cases (14).  Assuming that some of these 176 cases consisted of patients who spent time in emergency rooms before placement to a DRF, many of these patients may have been released sooner had they received timely due process in the hospital emergency room as required.

31.     This policy, practice, and custom of failing to provide timely due process is also inconsistent with New Hampshire law.  The State has interpreted the law as providing due process to these individuals only ***after*** a bed becomes available at a DRF and within three (3) days of that individual being formally admitted to that DRF for involuntary treatment, excluding Sundays and holidays.  DHHS has communicated this interpretation to hospitals.  This is an incorrect interpretation of the law, which requires process "[w]ithin 3 days of an involuntary emergency admission"—here, within 3 days of when the patient is admitted to the hospital emergency room at the non-DRF hospital.  *See* RSA 135-C:31, I (providing process "[w]ithin 3 days of an involuntary emergency admission").  In an August 9, 2018 decision, the Merrimack County Superior Court held that RSA 135-C:31 requires due process within three days of a person's involuntary admission *to a hospital emergency room*, as opposed to within three days of the person's admission to a DRF.  *See* Aug. 9, 2018 order, at p. 7, attached as *Exhibit D*.  The State is not complying with this legal interpretation of the Merrimack County Superior Court.

32.     Simply put, this is not a matter of the State providing deficient process to those individuals being involuntarily detained while awaiting admission to a DRF.  Rather, this is a matter of the State providing ***no*** process to these individuals.

### III.   The State is Aware of This Problem

33.     On November 17, 2016, Circuit Court Chief Judge Kelly issued an extraordinary order with respect to three individuals who ultimately waited 17 to 20 days between the date of

their initial emergency room detention and the date of their probable cause hearings challenging their involuntary detention. *See id.*; Nov. 16, 2016 Supplemental Order, attached as *Exhibit E*. As the Court explained: "In the cases before the court, up to four additional petitions and certificates were filed before the transfer to the receiving facility was accomplished, resulting in stays in the emergency room up to 15 days long." *See* Nov. 17, 2016 Order, at p. 8, attached as *Exhibit C*.

34.     The Circuit Court acknowledged that these cases "present[ed] issues of significant statutory and constitutional dimensions," and highlighted the due process implications of the current regime. *Id.* at p. 11.  The Court explained that, while a person is being involuntarily detained in an emergency room prior to involuntary DRF admission, the Court "[is] not aware that the person [is] the subject of a petition." *Id.* at p. 8.  Instead, the Court only becomes aware of the detention "until the individual was eventually transferred to the receiving facility and the petition was filed [with the Court after admission to the DRF]." *Id.*  The Court also acknowledged the systemic nature of the problem.  According to the Circuit Court, a "review of 1251 IEA cases filed during 2015 found that in 43% of those cases, the person was not transferred immediately to a receiving facility," with the result being that these individuals were detained in emergency rooms for a period of time prior to admission to a DRF without any process. *Id.*  The Court noted the obvious due process concerns with this system, explaining that "[d]uring the period leading up to the probable cause hearing, the liberty interest of the person sought to be admitted is impacted." *Id.* at p. 11.[10]

---

[10] Given these serious concerns, Circuit Court Chief Judge Kelly sought to transfer to the New Hampshire Supreme Court, among other legal questions, the question of whether New Hampshire's practice violated procedural due process. *Id.* at p. 5, Question Nos. 4 and 5.  Chief Judge Kelly explained that, because individuals are admitted to DRFs within weeks, at which time process is provided, these legal questions were capable of repetition yet evading review. *Id.* at p. 11.  On December 7, 2016, the New Hampshire Attorney General's Office objected to the Circuit

35.     As a result of Circuit Court Chief Judge Kelly's order and the work of advocacy organizations, a bill was enacted in 2017—House Bill 400—that, in part, required the Defendant Commissioner to "develop a plan with recommendations to ensure timely protection of the statutory and due process rights of patients subject to the involuntary emergency admissions process of RSA 135-C who are awaiting transfer to a designated receiving facility."  *See* 2017 House Bill 400, p. 2, Section 112:3, as *Exhibit F*.[11]

36.     In response to House Bill 400, on August 31, 2017, Defendant Commissioner issued a report proposing a 90-day pilot program in which four hospitals (Catholic Medical Center in Manchester, Dartmouth Hitchcock Medical Center in Lebanon, Defendant SNHMC in Nashua, and Speare Memorial Hospital in Portsmouth), DHHS, and the New Hampshire Circuit Court system would, consistent with the terms of RSA 135-C:31, provide due process for individuals being involuntarily detained at these hospitals before DRF placement.   As the Defendant Commissioner's August 31, 2017 proposal explained, "[t]he proposed pilot project would be led by a task force and will focus on how to facilitate the conduct of probable cause hearings within 72 hours of a patient being certified for IEA in a hospital ED department."  *See* Aug. 31, 2018 Pilot Project Proposal, attached as *Exhibit I*.  As the Commissioner's August 31, 2017 letter reported, as part of this pilot program, individuals involuntarily detained would

---

Court's interlocutory transfer statement on the ground that the New Hampshire Supreme Court "lacks the authority to render an opinion on those questions outside the context of a concrete case or controversy."  *See* Dec. 7, 2016 Attorney General Objection, attached as *Exhibit G*.  On December 8, 2016, the New Hampshire Supreme Court denied the Circuit Court's interlocutory transfer statement.  *See* Dec. 8, 2016 Sup. Ct. Order, attached as *Exhibit H*.

[11] The bill continued: "*The recommendations shall provide for judicial review on a schedule consistent with the statutorily required schedule for persons who have been admitted to a designated receiving facility*.  The commissioner shall consult with representatives of the American Civil Liberties Union of New Hampshire, New Hampshire Hospital Association, the New Hampshire Medical Society, the New Hampshire Psychiatric Society, the superior court system, the New Hampshire Bar Association, the National Alliance on Mental Illness, and the Disability Rights Center-NH.  The plan shall be submitted to the oversight committee on health and human services, established in RSA 126-A:13, for approval as soon as practicable.  The commissioner shall make a report relative to the plan which shall be submitted to the speaker of the house of representatives, the president of the senate, and the governor on or before September 1, 2017."  *Id.* (emphasis added).

receive, among other things, a hearing conducted via video link and telephone, the right to legal counsel, and the right to adequate and humane treatment while in an emergency room awaiting DRF placement.  *See id.,* Aug. 31, 2017 Letter.  The pilot project was scheduled to run from Nov. 1, 2017 to Jan. 31, 2018.

37.     However, in late 2017, the pilot project collapsed because the hospitals backed out of the program.  Due to the concerns raised by the hospitals, "there was … a consensus that there remained very significant barriers for the implementation of even the pilot program that the workgroup believe to be 'insurmountable' in light of the current structure of the hospital system in the state."  *See* Commissioner Dec. 21, 2017 Letter, attached as <u>*Exhibit J*</u>.  The hospitals' concerns consisted of "security concerns," the fear of "[l]iability associated with a plan to conduct hearings outside of statutory authority,"[12] and staffing needs.  *Id.*

38.     The 2017 budget also approved funding for 20 more DRF beds, but implementation has stalled given that no bids were received from hospitals and health-care facilities to create those beds in response to DHHS's request for proposals.[13]  As the pilot project collapsed because of the concerns raised by hospitals, the Defendant Commissioner, in December 2017, then placed an emphasis on a so-called "back door" approach designed to discharge individuals currently in DRF beds at New Hampshire Hospital—an approach which, if successful, would open up DRF bed space and help mitigate the DRF waitlist.  This approach too has been unsuccessful thus far.[14]

---

[12] Again, this liability fear is misplaced, as Chapter 135-C:31 requires process "[w]ithin 3 days of an involuntary emergency admission" under RSA 135-C:31, I — here, within 3 days of when the patient is admitted to the hospital emergency room at the non-DRF hospital.

[13] *See* Dave Solomon, "'Back door' Approach to Shortage of Mental Health Beds Has Some Success," *Union Leader*, Dec. 17, 2017.

[14] Under this "back door" approach, the focus would be on discharging individuals who no longer need to be at New Hampshire Hospital, which is the largest DRF.  Such discharges presumably would then free up space that could then be used by individuals who are being boarded.  As the *Union Leader* explained, "Discharging a patient at the

39.     Moreover, despite the Merrimack County Superior Court's August 9, 2018 order stating unequivocally that RSA 135-C:31 requires due process within three days of a person's involuntary admission *to a hospital emergency room* (as opposed to admission to a DRF), the Court explained in a later September 6, 2018 order that the hospital in that case, Concord Hospital, "is not bound in any way by this Court's order of August 9, 2018, now that [Plaintiff] is not restrained of his liberty."  *See* Sept. 6, 2018 Order, at p. 7, attached as *Exhibit B*.  The Court added: "This Court's Order of August 9, 2018 is not res judicata nor may Concord Hospital be collaterally estopped by any findings the Court made in it."  *Id.* at p. 8.  In short, despite that Court's significant and correct interpretation of the law requiring that due process be provided within three days of the involuntary detention at the hospital emergency room, this legal ruling is simply not being complied with and there is no vehicle to enforce it except in individual, non-binding cases that will not bring systemic relief.

40.     With other avenues having failed to address this obvious and systemic due process problem, Plaintiff has nowhere else to turn but this Court through this Class Action Complaint.

41.     It is important to note that the failure of the failure to resolve this problem cannot be solely placed on the Defendant Commissioner.  In response to House Bill 400, the Commissioner spent countless hours attempting, in good faith, to devise a video-conferencing

---

hospital is a far cheaper and faster way to open up a bed than waiting for new ones to be created, as long as there is somewhere to send the discharged patients."  *See* Dave Solomon, "'Back door' Approach to Shortage of Mental Health Beds Has Some Success," *Union Leader*, Dec. 17, 2017.  Unfortunately, in the approximately eleven months since this "back door" approach has been implemented, the problem has only gotten worse and there continue to be scores of individuals who are on the DRF waitlist who are being deprived of due process.  The Governor has stated that one reason this "back door" approach has not been successful thus far is because New Hampshire lacks transitional housing.     *See* Jennifer Crompton, "Officials: Not Enough Transitional Housing for Psychiatric Patients," *WMUR* (Aug. 8, 2018) ("We have about 20 to 30 people minimum at New Hampshire Hospital that could be discharged today and free up those beds, but we don't have the transitional housing for them."), *available at* https://www.wmur.com/article/officials-not-enough-transitional-housing-for-psychiatric-patients/22692452.

solution to this problem in collaboration with the Circuit Court system and the New Hampshire hospitals who are boarding these patients. The hospitals backed away from this viable video-conferencing solution thoughtfully developed by the Commissioner. But—regardless of the Commissioner's good faith, yet unsuccessful, effort to resolve this crisis—the responsibility to fix this problematic practice continues to be the State's.

42.     Given this continued constitutional violation at the hands of the State, immediate judicial action is required.

43.     To the extent that the named Plaintiff will be released after the filing of this lawsuit, Plaintiff's claim is capable of repetition yet evading review. The challenged action in this lawsuit—namely, the detention of persons for over three days (not including Saturdays and holidays) up to three weeks—is too short to be fully litigated prior to this period's cessation or expiration. In addition, there is not only a reasonable expectation or a demonstrated probability that the Plaintiff Class will be subject to the same action again, but there is a certainty. As of October 31, 2018, there are at least 50 class members being involuntarily detained without due process.

## CLAIMS FOR RELIEF

### Count I
### Class Action Count
### (Fourteenth Amendments to the U.S. Constitution, as enforced by 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS)

### Against Defendant DHHS; SNHMC and the Circuit Court, District Division are Parties Pursuant to Rule 19(a)

44.     The named Plaintiff and the members of the Plaintiff Class reallege and incorporate by reference the allegations contained in the preceding paragraphs.

45.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of … liberty … without due process of law."  This principle protects the right of a person to not be deprived of his or her liberty without appropriate process.

46.     Under 42 U.S.C. § 1983, the Defendant Commissioner is a "person" liable for unconstitutional policies, practices, and customs.

47.     Under 42 U.S.C. § 1983, every person acting under color of state law who deprives another person of his or her constitutional rights is also liable at law and in equity.

48.     The State of New Hampshire has intentionally allowed a policy, practice, and/or custom to develop of failing to provide any procedural due process to individuals who are being involuntarily detained under RSA 135-C:27-33 and are awaiting involuntary admission to a DRF.

49.     The State of New Hampshire has known or should have known about the existence of this policy, practice, and/or custom.

50.     The named Plaintiff and the members of the Plaintiff Class are currently being or have been involuntarily detained while awaiting admission to a DRF pursuant to the involuntary emergency admission process in RSA 135-C:27-33.

51.     The named Plaintiff and the members of the Plaintiff Class have a protected liberty interest in not being involuntarily detained under Chapter 135-C.  *See State v. Lavoie*, 155 N.H. 477, 482 (2007) (loss of liberty and social stigma are "substantial" private constitutional interests).

52.     However, while being detained awaiting admission to a DRF, the named Plaintiff and the members of the Plaintiff Class have not been provided a lawyer, let alone a hearing to establish whether there is probable cause to involuntarily admit them under RSA 135-C:27-33.

53.     As a result of this policy, practice, and custom, the named Plaintiff and the members of the Plaintiff Class will continue to suffer irreparable harm—namely being deprived of their right to procedural due process.

54.     Unless restrained from doing so, the State will continue to violate the Fourteenth Amendment by enforcing this policy, practice, and custom.

55.     Unless enjoined, the State's continued enforcement of this statute will continue to inflict injuries for which the named Plaintiff and the members of the Plaintiff Class have no adequate remedy at law.

56.     The named Plaintiff and the members of the Plaintiff Class are entitled to reasonable attorneys' fees and costs.

## Count II
## Class Action Count
## (N.H. Const. Part I Article 15 –PROCEDURAL DUE PROCESS)

**Against Defendant DHHS; SNHMC and the Circuit Court, District Division are Parties Pursuant to Rule 19(a)**

57.     The named Plaintiff and the members of the Plaintiff Class reallege and incorporate by reference the allegations contained in the preceding paragraphs.

58.     Part I, Article 15 of the New Hampshire Constitution provides that "No subject shall be arrested, imprisoned, despoiled, or derived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

59.     The New Hampshire Supreme Court has held that "law of the land" means "due process of law." *Gantert v. Rochester*, 168 N.H. 640, 647 (2016).

60.     The State of New Hampshire has intentionally allowed a policy, practice, and/or custom to develop of failing to provide any procedural due process to individuals who are being involuntarily detained under RSA 135-C:27-33 and are awaiting involuntary admission to a DRF.

61.     The State of New Hampshire has known or should have known about the existence of this policy, practice, and/or custom.

62.     The named Plaintiff and the members of the Plaintiff Class are currently being or have been involuntarily detained while awaiting admission to a DRF pursuant to the involuntary emergency admission process in RSA 135-C:27-33.

63.     The named Plaintiff and the members of the Plaintiff Class have a protected liberty interest in not being involuntarily detained under Chapter 135-C.  *See State v. Lavoie*, 155 N.H. 477, 482 (2007) (loss of liberty and social stigma are "substantial" private constitutional interests).

64.     However, while being detained awaiting admission to a DRF, the named Plaintiff and the members of the Plaintiff Class have not been provided a lawyer, let alone a hearing to establish whether there is probable cause to involuntarily admit them under RSA 135-C:27-33.

65.     As a result of this policy, practice, and custom, the named Plaintiff and the members of the Plaintiff Class will continue to suffer irreparable harm—namely being deprived of their right to procedural due process.

66.     Unless restrained from doing so, the State will continue to violate Part I, Article 15 of the New Hampshire Constitution by enforcing this policy, practice, and custom.

67.     Unless enjoined, the State's continued enforcement of this statute will continue to inflict injuries for which the named Plaintiff and the members of the Plaintiff Class have no adequate remedy at law.

68.     The named Plaintiff and the members of the Plaintiff Class are entitled to reasonable attorneys' fees and costs.

## Count III
## Class Action Count
### (Violation of RSA 135-C:31, I)

**Against Defendant DHHS; SNHMC and the Circuit Court, District Division are Parties Pursuant to Rule 19(a)**

69.     The named Plaintiff and the members of the Plaintiff Class reallege and incorporate by reference the allegations contained in the preceding paragraphs.

70.     The State has interpreted the law as providing due process to individuals detained in emergency rooms under Chapter 135-C:27-33 only ***after*** a bed becomes available at a DRF and within three (3) days of that individual being formally admitted to that DRF for involuntary treatment (excluding Sundays and holidays).

71.     This is an incorrect interpretation of the law, which requires process "[w]ithin 3 days of an involuntary emergency admission"— here, within 3 days of when the patient is admitted to the hospital emergency room at the non-DRF hospital.  *See* RSA 135-C:31, I (providing process "[w]ithin 3 days of an involuntary emergency admission").  In an August 9, 2018 decision, the Merrimack County Superior Court held that RSA 135-C:31 requires due process within three days of a person's involuntary admission *to a hospital emergency room*, as opposed to within three days of the person's admission to a DRF.  *See* Aug. 9, 2018 order, at p. 7, attached as *Exhibit A*.

72.     The State of New Hampshire is not complying with this legal interpretation of the

Merrimack County Superior Court.

73.     The State of New Hampshire has intentionally allowed a policy, practice, and/or custom to develop of failing to provide any procedural due process to individuals who are awaiting involuntary admission to a DRF within three days of such individuals being involuntarily admitted to an emergency room, as is required under RSA-C:31, I.

74.     As a result of this policy, practice, and custom, the named Plaintiff and the members of the Plaintiff Class will continue to suffer irreparable harm—namely being deprived of their rights under RSA 135-C:31, I.

75.     Unless restrained from doing so, the State will continue to violate RSA 135-C:31, I by enforcing this policy, practice, and custom.

76.     Unless enjoined, the State will continue to inflict injuries for which the named Plaintiff and the members of the Plaintiff Class have no adequate remedy at law.

77.     The named Plaintiff and the members of the Plaintiff Class are entitled to reasonable attorneys' fees and costs.

### Count IV
### (Habeas Corpus Relief)

### Against Defendants DHHS and SNHMC

78.     Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

79.     SNHMC and DHHS have failed to provide Plaintiff a hearing to determine whether there is probable cause to believe that he is in such a mental condition as a result of mental illness to pose a likelihood of danger to himself or others.  This should have occurred by November 8, 2018, which was three days after his initial detention commenced on November 5, 2018.

80.     Plaintiff's detention violates the procedural due process protections of the Fourteenth Amendment to the United States Constitution.

81.     Plaintiff's detention violates the procedural due process protections of Part I, Article 15 of the New Hampshire Constitution.

82.     Plaintiff's detention violates RSA-C:31, I.

83.     For these reasons, Plaintiff John Doe must be released.

**REQUEST FOR RELIEF**

WHEREFORE, as to Counts I, II, and III, the named Plaintiff and the Plaintiff Class respectfully request the following relief:

a)     Certify this case as a class action pursuant to Fed. R. Civ. P. 23;

b)     Declare that New Hampshire's policy, practice, and/or custom of failing to provide any procedural due process to individuals who are awaiting involuntary admission to a DRF in an emergency room violates the Fourteenth Amendment;

c)     Declare that New Hampshire's policy, practice, and/or custom of failing to provide any procedural due process to individuals who are awaiting involuntary admission to a DRF in an emergency room violates the Part I Article 15 of the New Hampshire Constitution;

d)     Declare that New Hampshire's policy, practice, and/or custom of failing to provide any procedural due process to individuals who are awaiting involuntary admission to a DRF within three days of such individuals being involuntarily admitted to an emergency room violates RSA 135-C:31, I;

e)     Preliminarily and permanently enjoin New Hampshire from failing to provide any procedural due process to individuals who are awaiting involuntary admission to a DRF within three days of such individuals being involuntarily admitted to an emergency room;

f)      Require the State to provide procedural due process to individuals who are awaiting involuntary admission to a DRF within three days of such individuals being involuntarily admitted to an emergency room;

g)      Award Plaintiffs attorneys' fees in this action pursuant to 42. U.S.C. § 1988(b);

h)      Award Plaintiffs their costs of suit; and

i)      Grant such other and further relief as this Court deems just and proper in the circumstances.

WHEREFORE, as the habeas relief sought in Count IV, Plaintiff respectfully requests the following relief:

a)      Assume jurisdiction over this matter;

b)      Hold an expedited hearing;

c)      Order Southern New Hampshire Medical Center ("SNHMC") and Jeffrey A. Meyers, Commissioner of the New Hampshire Department of Health and Human Services ("DHHS"), in his official capacity, to release Plaintiff John Doe, as SNHMC and DHHS has failed to timely provide him a hearing to determine whether there is probable cause to believe that he is in such a mental condition as a result of mental illness to pose a likelihood of danger to himself or others.

d)      Award Plaintiffs attorneys' fees in this action pursuant to 42. U.S.C. § 1988(b);

e)      Award Plaintiffs their costs of suit; and

f)      Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

John Doe, on behalf of himself and all others similarly situated,

By and through their attorneys affiliated with the American Civil Liberties Union of New Hampshire Foundation,


*/s/ Gilles R. Bissonnette*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH  03301
Tel.:  603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org

Dated:  November 10, 2018