# EXHIBIT I



# State of New Hampshire

DEPARTMENT OF HEALTH AND HUMAN SERVICES
129 PLEASANT STREET, CONCORD, NH 03301-3857
603-271-9200   FAX: 603-271-4912   TDD ACCESS: RELAY NH 1-800-735-2964

JEFFREY A. MEYERS
COMMISSIONER

August 31, 2017

His Excellency, Governor Christopher T. Sununu
State House, 107 North Main Street
Concord, New Hampshire 03301

The Honorable Senate President Chuck Morse
107 North Main Street, Room 302
Concord, New Hampshire 03301

The Honorable House Speaker Shawn Jasper
107 North Main Street, Room 311
Concord, New Hampshire 03301

      Re:    *Report on Involuntary Emergency Admissions Pursuant to 2017 Law Chapter 112 (House Bill 400)*

Dear Governor Sununu, President Morse and Speaker Jasper:

    In accordance with 2017 Laws Chapter 112:3 (HB 400), I am submitting the following plan relative to the due process rights of patients subject to an involuntary emergency admission who are awaiting transfer to a designated receiving facility. The plan focuses solely on the direction of the legislature to provide a timely hearing for those persons waiting in hospital emergency rooms for inpatient treatment or discharge following such a hearing.

    The Department and the stakeholders consulted in this process recognize that there are many issues and concerns that are necessarily related to the presence of persons with serious and persistent mental illness who present themselves, or are involuntarily transported to, the State's acute care hospitals for evaluation and treatment. These concerns, including the lack of sufficient inpatient capacity for involuntary admission; the responsibility of acute care hospitals to treat those persons who are waiting for inpatient psychiatric treatment; workforce shortages, and the current reimbursement rate structure for the services provided by the community mental health centers, among others, are not within the scope of this plan. These concerns are, however, critically related to the capacity of the State to provide services to those who have serious and persistent mental illness and they deserve further discussion by the legislature in this coming session.

    As discussed below, the plan to provide timely IEA hearings is recommended to be implemented initially on a pilot basis to ensure that it is properly coordinated with all parties involved, including patients and their legal counsel, the hospitals, New Hampshire Hospital and the other Designated Receiving Facilities, and the Court. Full implementation of the plan also has a significant financial cost and would be contingent on an appropriation by the legislature. We have submitted a preliminary cost estimate for the full implementation of the plan that is subject to further refinement. An estimate for the cost of the 90-day pilot program that is recommended will be forthcoming shortly.

One reason we strongly recommend a pilot program is the potential clinical impacts on patients from a finding of probable cause for commitment while they are situated in hospital emergency rooms without the ability to provide further treatment and/or timely inpatient admission. The Chief Medical Officer of New Hampshire Hospital, Dr. Alex DeNesnera, has voiced concerns about potential negative impacts to patients who are found to require inpatient admission while waiting in an emergency department without the ability to provide timely inpatient admission or treatment. While the goal of holding the IEA hearings is to afford patients their statutory rights, one unintended consequence of holding these hearings might be an increased security risk – to patients and staff -- in the emergency departments. A pilot program would help identify the potential for these impacts across the hospital system.

I. Statutory Authority:

The relevant provision of House Bill 400, as enacted, provides as follows:

The commissioner of the department of health and human services shall develop a plan with recommendations to ensure timely protection of the statutory and due process rights of patients subject to the involuntary emergency admissions process of RSA 135-C who are awaiting transfer to a designated receiving facility. The recommendations shall provide for judicial review on a schedule consistent with the statutorily required schedule for persons who have been admitted to a designated receiving facility. The commissioner shall consult with representatives of the American Civil Liberties Union of New Hampshire, New Hampshire Hospital Association, the New Hampshire Medical Society, the New Hampshire Psychiatric Society, the superior court system, the New Hampshire Bar Association, the National Alliance on Mental Illness, and the Disability Rights Center-NH. The plan shall be submitted to the oversight committee on health and human services, established in RSA 126-A:13, for approval as soon as practicable. The commissioner shall make a report relative to the plan which shall be submitted to the speaker of the house of representatives, the president of the senate, and the governor on or before September 1, 2017.

II. Development of the Plan:

On July 6, 2017, I convened representatives of the stakeholder organizations identified by the legislature in order to hear their ideas and concerns. Also present at this meeting were representatives of individual hospitals, including Concord Hospital, Dartmouth Hitchcock Medical Center, Lakes Region Hospital, Elliot Hospital and Southern NH Medical Center; New Hampshire Hospital clinical staff, and DHHS management and staff. Participants raised a number of issues, including, but not limited to:

- Can timely hearings be conducted via video in 26 hospital emergency departments?
- How would such a process be coordinated and by whom?
- Because hearings can agitate patients, how would emergency rooms be staffed to ensure patient and hospital staff safety, and to what extent would patients need to be moved for the hearings?
- How will hospitals afford patient confidentiality in the hearing process for patients who are not located in rooms and who may not voluntarily cooperate in the hearing process?
- What happens after probable cause is found, but no DRF bed is available?
- How can patients receive mental health treatment while in the emergency room and by which provider (given that all mental health providers are not credentialed by the hospital)?
- What resources are needed to implement a statewide IEA hearing process
- Does discharge from the emergency department prior to DRF admission create issues of risk management?
- How can hospitals bill for lengthy emergency department stays?

In addition to these meetings, I sent a letter to each of the 26 hospital Chief Executive Officers requesting information about their ability to conduct IEA hearings. I also met with Administrative Judge of the New Hampshire Circuit Courts Edwin W. Kelly and his Information Technology Team to determine how IEA hearings could be coordinated with the court system in each of the hospitals across the state.

On August 7, 2017, I met with the New Hampshire Hospital Association and several hospital representatives to further discuss the hospitals' role in the hearing process. Finally, on August 29, 2017, I reconvened the stakeholder group to brief them on the plan that is presented in this report.

### III. Plan to Provide IEA Hearing Within 72 hours of Presentment and Screening at An Acute Care Hospital Emergency Department:

The most practicable plan to provide a hearing involves conducting a hearing by video and telephone linkages that would involve the following elements:

> __Hearings will be conducted via Video Link and Telephone__. The hospital will provide, upon request, a private space for counsel to meet with the petitionee and will provide, in conjunction with the Court, a secure and confidential video link that meets HIPAA privacy standards. The State will provide suitable laptop computers for use in each hospital that will include software that permits the transmission and recording of the hearing. A record of the hearing is required for purposes of appeal.

> __Right to Legal Counsel__. The individual who is the subject of the IEA proceeding has the statutory right to appointed counsel if the person is unable to pay. The Department would issue a Request for Applications to insure that attorneys are available to attend hearings in all 26 hospitals. (The Department currently has a contract for such attorneys that serve indigent patients in the four Designated Receiving Facilities; this contract could be expanded, or the Department could enter into an agreement with a suitable organization such as the Judicial Counsel, which contracts with appointed counsel with the Public Defender).

> __Right to Treatment__. Individuals waiting in an emergency department for placement in a DRF have the right to receive adequate and humane treatment, and the right to refuse such treatment.

> __Notice of Rights__. The department shall provide, for distribution by the hospital to the individual within 12 hours of admission, a notice of the rights under RSA 135-C:30 that are applicable in the emergency department.

> __Central IEA Coordinator__. The department would be required to establish, fund, and provide a Central IEA Coordinator, situated at NH Hospital. The acute care hospital will transmit the IEA petition to the Coordinator, who will contact the Court, engage defense counsel and notify the petitioner and witnesses of the time and location of the hearing. After the judge renders a decision, the Coordinator will convey the outcome to the hospital, petitioner and counsel. This is expected to be a full time position.

> __Ten Day Limitation__. The finding of probable cause in the emergency department shall expire ten days after admission to New Hampshire Hospital or another designated receiving facility. During that ten day period, the DRF shall assess the individual to determine whether a longer term commitment is necessary.

IV. Pilot Program:

In order to ensure the success of any plan and to minimize the potential problems in implementation, the Department and the New Hampshire Hospital Association agreed that it is advisable to establish a 90-day pilot program that could begin once all necessary resources have been secured, including personnel and training has been completed.

The Department requested, and the New Hampshire Hospital Association submitted, a proposed pilot program. The Hospital Association's Proposed Pilot is enclosed with this report.

V. Resources Required to Implement the Plan:

In order to carry out full implementation of the plan, the DHHS will need funding for:

1. The Central IEA Coordinator position at NH Hospital;
2. The laptop computers with associated software and maintenance;
3. Attorneys to represent indigent patients in the IEA hearings;
4. Training for the attorneys to represent individuals; and
5. Training for staff in the emergency departments

Annual Costs associated with needed resources:

| Resource | Preliminary Cost Estimate * |
|---|---|
| Central IEA Coordinator | $81,368 (LG 26, Step 5 + Benefits) |
| Laptop Computers & Software (*1) | $108,000 |
| Laptop & Software user training (*2) | $25,000 |
| Vendor Technical Statewide Support (*3) | $100,000 |
| Internet Connectivity (*4) WiFi at hospital vs. DoIT network if available vs. MiFi device | To be determined |
| Data Recording Storage (*5) | To be determined by storage |
| Portable Printers ($400/unit) (*6) | $10,400 |
| -Webex Secure software (*7) | $5,000 |
| Attorneys (*8) | $540,000 |
| Emergency room staff training | $50,000 (In-person and Web-based training) |
| Total (minimum cost) | $924,768.00 |
| * Resources identified as needed and estimates are preliminary and subject to confirmation ||

1. Assumes 26 sites, $3000 per laptop with all associated software, extra 10 units as backup.
2. Training for end users, one time training and materials prepared; ongoing training would be at an additional cost.
3. External vendor to support laptops across the state, historically more cost effective than DOIT direct hires

Governor Sununu, President Morse and Speaker Jasper
August 31, 2017
Page 5 of 5

4. Internet Connectivity methodology needs to be determined, DOIT network is not in each hospital, at this time it is unknown if hospitals will allow external devices to connect to their network, MiFi or other devices may or may not be robust enough for all sites or to carry streaming video conference. Needs assessment to be completed to identify appropriate business needs.
5. Cloud service to be identified for uploading and HIPAA compliant storage of recorded conferences from 26 different sites, price to be determined and will vary as storage costs increase.
6. Unknown is any paperwork needs to be printed for signatures or other needs, assumes $400/printer x 26 sites
7. Additional webex software may be required depending on needs analysis
8. Estimating 3,000 hearings annually @ $62.00 per hour ($186.00 per case). Current contract for IEAs is at $167,000; thus, incremental cost is approximately $373,000. Total annual cost is $540,000.

I will be presenting this plan publicly at the next meeting of the Health and Human Services Oversight Committee. This plan is being posted to the Department's website for the information of the general public.

Respectfully submitted,

Jeffrey A. Meyers
Commissioner


Enclosure

cc: Hon. Frank Kotowski, Chairman, Health & Human Services Oversight Committee
    Hon. Edwin Kelly, Chief Administrative Judge, NH Circuit Court
    Senator Jeb Bradley, Chairman, Senate Health and Human Services Committee
    Steven Ahnen, New Hampshire Hospital Association
    Kenneth Norton, NAMI, NH
    Gills Bissonette, Esq. NH ACLU
    Valerie Acres and James Potter, NH Medical Society
    Sue Ellen Griffen, President, NH Behavioral Health Association
    Michael Skibbie, Disability Rights Center
    New Hampshire Bar Association
    New Hampshire Psychiatric Association
    Kristy Merrill, Senate Chief of Staff
    Terry Pfaff, House Chief of Staff
    Donald Shumway, Interim CEO, New Hampshire Hospital
    Chief Executive Officers of all 26 NH Acute Care Hospitals

## PILOT PROJECT PROPOSAL

## New Hampshire Hospital Association

A PROPOSAL TO PROVIDE AN OPPORTUNITY FOR A HEARING TO MENTAL HEALTH PATIENTS CERTIFIED
AS AN INVOLUNTARY EMERGENCY ADMISSION
WHILE WAITING IN A HOSPITAL EMERGENCY DEPARTMENT
FOR PLACEMENT TO NEW HAMPSHIRE HOSPITAL OR OTHER DESIGNATED RECEIVING FACILITIES

### INTRODUCTION

The situation of patients having to wait multiple days in one of NH's hospital emergency departments for access to the mental health treatment and services they need is a symptom of a larger crisis, which is the lack of adequate resources to care for people who require acute psychiatric services.   This lack of adequate resources adversely affects not only those patients awaiting admission to New Hampshire Hospital (NHH) or one of the few Designated Receiving Facilities (DRFs) in the State, but also poses major challenges to  our hospitals that care for these patients  every day.

It is the shared goal of the State of New Hampshire, the courts, patients and their families, health care providers, and other stakeholders that our systems need to ensure that these individuals can get the care they need when and where they need it. That means that we need additional inpatient capacity to treat those individuals suffering from an acute psychiatric illness.

Until we have addressed those capacities and other needs of the health care infrastructure in our state, steps need to be taken to protect the rights of IEA patients waiting to be transferred to NHH or a DRF. All parties: NH DHHS, hospitals, community mental health centers, the court system and other healthcare entities, must work together to find the right approaches to protect these patients' rights. Hospitals can be constructive partners with NH DHHS and the court system to facilitate the conduct of probable cause hearings at the hospital until such time as those hearings can be conducted in the appropriate forum -- at NHH or at the DRFs.

### PROPOSED PILOT PROJECT

The proposed pilot project would be led by a task force and will focus on how to facilitate the conduct of probable cause hearings within 72 hours of a patient being certified for IEA in a hospital ED department.

Four hospitals have volunteered for this pilot project (scheduled to run from November 1, 2017 – January 31, 2018):

- Catholic Medical Center, Manchester
- Dartmouth Hitchcock Medical Center, Lebanon
- Southern NH Medical Center, Nashua
- Speare Memorial Hospital, Plymouth

The task force would be comprised of representatives from each of the four hospitals that have volunteered for this pilot project, representatives from the court system, representatives from NH DHHS/NHH, and representatives from the NH Office of the Attorney General, and counsel appointed to represent the patients. The task force will develop the pilot project, monitor its progress and report on the outcome.

There is a dedicated courtroom at NHH equipped for the conduct of secure and confidential IEA probable cause hearings. Thus, there are many challenges to consider when implementing new procedures for the conduct of such hearings in a hospital emergency department setting, including but not limited to the following:

- Sufficient education for all participants;
- Patient/respondent condition;
- Patient/respondent safety and security (for the patient, court system, staff, and visitors);
- Unrelated patient/visitor security;
- Petitioner safety and security;
- Witness safety and security;
- Physician/patient confidentiality;
- Attorney/client confidentiality;
- Impact on ED function;
- Security and Privacy of the hearing;
- HIPAA considerations;
- Hospital staffing requirements;
- Scheduling for the court proceeding;
- Information technology needs (software and hardware);
- Physical space requirements;
- Paperwork and recording requirements for the court process; and
- Tracking of deadlines and time periods "on a schedule consistent with the statutorily required schedule for persons who have been admitted to a designed receiving facility." See HB 400, 112:3.

The pilot project will need to take all of these and other issues into consideration when the hospital, NH DHHS and the courts agree on the implementation process.

**ROLES & RESPONSIBILITIES**

**NH DHHS**

- In collaboration with the court system, establish a standardized schedule for each hospital for court hearings;
- Shall initiate contracts with compensation for local NH attorneys who shall be responsible for meeting and representing indigent patients in for IEA hearings in designated spaces in pilot hospitals.

2

- In collaboration with the court system, manage court hearing paperwork related to the patient's probable cause for an IEA;
- Be responsible for tracking patient dates for probable cause hearings and expirations of orders;
- Be responsible for certain technology requirements (hardware and software) to connect with the court system to conduct hearings;
- Facilitate education on court hearing process between NHH, DRFs, and pilot hospitals.

Court System

- Working with NH DHHS and the pilot hospitals, create a standardized court scheduling system for each hospital;
- Visit each pilot hospital to view space identified for the court proceedings and deem the spaces adequate for this purpose;
- Be responsible for all technology requirements (hardware and software) to connect with NH DHHS to conduct the hearings;
- Be responsible for managing all court hearing paperwork related to the patient's probable cause for an IEA;
- Communicate the outcome of the probable cause hearing to the hospital regarding the disposition of the patient and any follow up that is necessary as a result of the hearing related to discharge or ongoing care of the patient.
- Shall be responsible for appointing DHHS contracted attorneys to represent patients in the pilot hospitals for IEA hearings.

Hospitals

- Facilitate patient attendance at a scheduled hearing in a specific location in the hospital that can accommodate privacy and security for the patient, hospital staff, and attorneys;
- Make internet based connections (e.g. wifi) and telephone connections available to NH DHHS, patient's counsel, and the court system;
- Consider staffing needs depending on patient condition, location for hearing, and privacy and security concerns.

New Hampshire Hospital

- Provide education on process, paperwork, and deadlines

**EVALUATION OF PILOT PROJECT**

Ongoing evaluation of the pilot project will be essential as all parties adjust to a new legal proceeding that is being conducted in non-Designated Receiving Facility health care settings not accustomed to, or designed for, such an activity. It is recommended that weekly calls and/or meetings be conducted by the task force to monitor implementation and make adjustments as necessary to ensure that patient

care, safety, and security are not compromised while, at the same time, ensuring that the rights of IEA patients are being honored.

Following the completion of this 90-day pilot project, the stakeholders will convene to determine the outcome of this new approach, lessons learned and other modifications that must be made before this process could be implemented in all hospitals across the state.