# EXHIBIT J



# State of New Hampshire

DEPARTMENT OF HEALTH AND HUMAN SERVICES
129 PLEASANT STREET, CONCORD, NH 03301-3857
603-271-9200   FAX: 603-271-4912   TDD ACCESS: RELAY NH 1-800-735-2964

JEFFREY A. MEYERS
COMMISSIONER

December 21, 2017

The Honorable Frank Kotowski, Chairman
House Committee on Health, Human Services and
  Elderly Affairs
Legislative Office Building
Concord, New Hampshire 03301

The Honorable Jeb Bradley, Chairman
Senate Committee on Health & Human Services
State House Room 302
Concord, New Hampshire 03301

      Re:    *Supplemental Report on IEA Hearings in Non-Designated Receiving Facilities*

Dear Chairmen Kotowski and Bradley:

      On August 30, 2017, the Department submitted to the Governor, Senate President and Speaker of the House a report required under HB 400 pertaining to the feasibility of conducting involuntary emergency hearings in the state's acute care hospitals that are not presently a designated receiving facility (DRF). That report identified many issues regarding how such hearings could be conducted and an estimated budget of over $900,000 annually for the anticipated costs involved in expanding IEA hearings beyond the three hospitals and one non-hospital DRF that are certified to hold such hearings today. The report also made clear that the Department would explore a pilot program in four hospitals to help inform the feasibility and actual costs of an expanded IEA hearing program.

      Over the past several months, the Department working with the Circuit Court, Attorney General's Office, New Hampshire Hospital and Department of Information Technology Staff, as well as with Dartmouth-Hitchcock, Southern New Hampshire Medical Center, Spear Memorial Hospital and Catholic Medical Center explored how IEA hearings could be undertaken within hospitals that are not DRFs.

      Based on these extensive discussions, there was a consensus reached within the working group that there remain very significant barriers to undertaking IEA hearings in hospitals that are not certified as DRFs. A summary of the work group's findings are enclosed together with a draft summary of the technology considerations and a draft IEA process summary. I would be happy to appear before your committees in the coming weeks in order to further discuss the group's findings.

      With all regards and best holiday wishes.

                                                                Sincerely,

                                                              Jeffrey A. Meyers
                                                              Commissioner

Enclosures

The Honorable Frank Kotowski
The Honorable Jeb Bradley
December 21, 2017
Page 2 of 2

cc: Governor Christopher T. Sununu
    Senate President Chuck Morse
    Speaker of the House Gene Chandler
    Matthew Houde, Dartmouth Hitchcock Memorial Hospital
    Kathryn Skouteris, Southern NH Medical Center
    Michelle McEwen, Speare Memorial Hospital
    Alex Walker, Catholic Medical Center
    Judge Edwin Kelley
    Lori Shibinette, CEO, New Hampshire Hospital
    Ken Norton, NAMI NH
    Gils Bissonette, ACLU of New Hampshire
    Rebecca Ross, Esq., Attorney General's Office

## IEA Pilot Project Summary

**BACKGROUND:**

In accordance with 2017 Laws Chapter 112:3 (HB 400), the Department submitted a plan relative to the due process rights of patients subject to an involuntary emergency admission who are awaiting transfer to a designated receiving facility. Under the direction of the legislature, the Department and New Hampshire Hospital Association worked in partnership to develop a plan to provide a timely hearing for those persons waiting in hospital emergency rooms for inpatient treatment or discharge following such a hearing.

In order to ensure success of the plan and minimize potential problems with implementation, the Department requested and the New Hampshire Hospital Association agreed to develop a 90-day pilot program at four hospitals that would help identify of the measures that would have to be addressed if IEA hearings were to be implemented across the hospital system.

**PILOT PROCESS:**

**The Workgroup:**

A workgroup comprised of representatives of the four pilot hospitals (Dartmouth Hitchcock Medical Center; Speare Memorial Hospital; Southern N.H. Medical Center; Catholic Medical Center), the New Hampshire Hospital Association, the Court system, defense counsel, community mental health center staff, the Office of the Attorney General, New Hampshire Hospital (Medical Director, legal, & security), the State Police, the Department of Health and Human Services and the Department of Information Technology was assembled.

The workgroup met weekly (5 times) to discuss the proposed 10-Step Process (attached) and identify ways to operationalize the process while taking into account the following considerations:

1. Roles of NHH Legal Services, hospital IEA coordinator, attorney & court
2. Privacy standards to ensure doctor/patient and attorney/client confidentiality
3. Protocols related to technology including testimony provided through video and telephone and connectivity to court system
4. Protocols for communication between hospitals, courts, CMHCs, and DHHS
5. Security standards and clinical considerations to protect the patient, staff, witnesses, petitioner, and counsel
6. Legal considerations
7. Training Needs: for hospital staff on the IEA process; patient confidentiality rights and hospital privacy plans; treatment and management of persons with serious mental illness in the ED; de-escalation techniques for security and ED staff; attorney training around messaging.
8. On-going data collection, evaluation, adjustment, and troubleshooting of the program

Additionally, outside of the standing meetings, hospitals met with internal stakeholders and conducted independent safety assessments and a sub-group was formed to discuss technology needs and solutions.

**Technology Sub-group:**

In order to conduct IEA hearings, each hospital would need to be connected to the court via videoconferencing. Options to support the technology requirements of the IEA pilot process were developed by a sub-group. It was determined that DHHS could purchase a technology solution for approximately $8,000 per hospital that would meet their technology, space, safety, and privacy needs of all parties involved. This IT solution would use the IT vendor that currently provides video connectivity to the court system. Phone conferencing was identified as an alternative, back-up technology, if the video failed. Please see the attachment for a breakdown of the vendor's IEA technology summary.

### CONCLUSION:

All parties showed great commitment to work in partnership to launch the pilot. It became evident that the workgroup had reached a critical decision point and consequently each hospital was asked to consult with internal stakeholders and conduct a hospital assessment that covered the major topics discussed. Hospitals were asked to outline areas they were able to develop internal processes around and move forward on *and* identify any barriers and describe what it would take to make it work.

There was consensus that an IT solution could be reached and the 10-Step Process details could be finalized from an operational standpoint.

However, when the full workgroup reconvened, there was also a consensus that there remained very significant barriers for the implementation of even the pilot program that the workgroup believe to be "insurmountable" in light of the current structure of the hospital system in the state. These barriers fall into three groups.

Security Concerns:

- ✓ Safety concerns in physical environment for patient, attorney, staff, witness, court system and other visitors
- ✓ Patient behavior during process including reaction to court proceeding and notification of hearing outcome

Legal Considerations:

- ✓ Liability associated with plan to conduct hearings outside of statutory authority

Staffing Needs

- ✓ Additional burden on existing ED staff
- ✓ Hospital IEA coordinator
- ✓ Additional security staffing

IEA Pilot Program
Hospital IEA process- DRAFT FOR REVIEW 11/03/17
Drafted by NHH & DHHS

## Proposed 10-Step Process

| Step | Party Responsible | Description | Notes/Follow-up |
|---|---|---|---|
| 1 | | Patient arrives at local hospital ED and IEA petition is initiated by the CMHC, family, law enforcement, out other outside entity. | |
| 2 | Hospital | The completed hardcopy IEA petition (Pages 1-7) are filed with the court (along with a medication list if available) | Petitions can be submitted via email, fax or hand delivered to court. Review tech capabilities to transmit digitally – security & designated email accounts |
| 3 | Court | A hearing is scheduled, an attorney and judge is assigned to conduct the hearing via videoconference. | Petitions will be heard through the centralized court system – cases will be added to existing timeslots at set, standing times. |
| 4 | Court | A hearing notice is sent to the local hospital, the petitioner, and attorney. The hearing notice and IEA documents are sent to the NHH IEA Coordinator | Via secure email accounts & phone notifications |
| 5 | NHH IEA Coordinator | Calls are made to petitioners and witnesses to notify them of the IEA hearing and provides logistical details. The Court, local hospital, and attorney is notified that petitioners and witnesses have been contacted and confirms hearing logistics. | If telephone testimony is accepted the NHH IEA Coordinator will ask petitioners and witnesses for the telephone numbers at which they can be called from the hearing room |
| 6 | Attorney | A meeting is scheduled for the patient to meet with the attorney prior to the IEA hearing. The attorney schedules and informs the hospital. | Ensure private space is available for the patient to meet with their attorney |
| If Pt. is d/c prior to hearing | | | **Add content about what to do if the pt is d/c or admitted to NHH prior to the scheduled hearing** |
| 7 | Hospital provides private space to host hearing<br><br>Attendees: Hospital staff, patient, attorney, court, petitioners, security, | The IEA hearing takes place in the local hospital.<br>1. The local hospital coordinator sets up and logs into the videoconferencing equipment, and types in the access code for the presiding judge<br>2. When the connection is established, the District Court judge conducts the hearing via videoconference<br>3. The Judge calls the petitioner from a phone in the courtroom if telephone testimony is requested | *Use existing court IT vendor and offer mobile and stationary equipment options<br>The patient, the attorney, the local hospital coordinator (often, a social worker), and (if attending) the petitioner should be present in the room 5 minutes before the case is scheduled to convene. The local hospital security and/or additional local hospital staff may sometimes be called to help transport the patient to the court room and to remain in the court room during the hearing. |

IEA Pilot Program
Hospital IEA process- DRAFT FOR REVIEW 11/03/17
Drafted by NHH & DHHS

| 8 | Court | Within 1 business day after the hearing, the judge's written orders are emailed (or faxed) to the local hospital, the attorney, petitioner, and the NHH IEA Coordinator | |
|---|---|---|---|
| 9 | Attorney | The patient is notified of the hearing results by the attorney at the hospital | Q – there are concerns about the timing of notification to pt. - hospitals to create a notification processes in coordination w/ clinical staff, courts & attorney |
| 10 | Hospital | If no probable cause is found, or if the case is dismissed, *the local hospital shall return the patient, with their consent, to the place where they resided at the time the petition and physician's certificate were completed and signed.*<br>1. The person discharged or the person's guardian shall be given written notice of such action taken by the local hospital. The local hospital shall either arrange the transportation within 24 hours of such notice or shall be liable for the cost of such transportation | ** *This requires further exploration/clarification* **Create a stand-alone guidance doc that speaks to next-steps if probable cause is not found -** language about filing another IEA petition, coordination with the CMHC, engagement strategies w/ patient to explore voluntary admission options, etc.? |

\* If there is a disruption in the hearing process the local hospital coordinator should be immediately contacted so they can try to resolve any issues. The NHH IEA Coordinator is available to assist with troubleshooting.

Contacts: Each hospital to identify an internal coordinator & a back-up

### IEA Pilot: Video Conferencing Technology

DHHS worked with the court and their current vendor to explore technology solutions. The vendor provided a quote of $6,500 per hospital for the below offering. A budget of $8,000 per hospital is recommended in order to accommodate additional features not included in the basic package.

**VENDOR OFFERING INCLUDES**

- Video conferencing hardware, software, configuration and training
- Replacement of main control unit (Cisco Codec)
- 24x7 manufacturer's support for equipment
- 1-business day onsite response from vendor
- Cart for mobile use if desired. Cart comes from a manufacturer of medical carts
- HIPPA compliant encryption
- Directory of contacts for the hearings to easily facilitate initiating the conference

**DOES NOT INCLUDE:**

- Replacement of monitors. Monitors have 3-yr manufacturer's warranty
- Installation if hospital wants the equipment permanently mounted. This is typically done by facilities personnel where the unit will be located. Vendor will perform the physical install at an additional cost. The equipment is configured for wall mounting.
- Internet connections if one does not exist. If the hospital does not have adequate internet capacity, it is recommended that the hospital contract with Comcast for a commercial service install with drops being placed where the hospitals will need to conduct the hearings. That will be ~$100/month plus Comcast installation. Installation costs will vary.
- Wireless hardware adapters if the facility wants to conduct video conferencing wirelessly. There are many standard solutions available to solve this problem.
- Special safety modifications such as Plexiglas panels between patient and video, etc.
- $700 annual fee for renewing support per unit after first year

**NOTES**

- Equipment can be sanitized by wiping. The remote control unit will be handled during operation
- If placed today, the order could take up to 42 calendar days to fill because of current backlog. Supply might be replenished soon, which could reduce the time to fill down to ~10 days. The state will place orders once the hospitals move forward

11/27/17