UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>John Doe, et al.</u>

    v.

<u>Commissioner, New Hampshire</u>
<u>Department of Health and</u>
<u>Human Services, et al.[1]</u>

Civil No. 18-cv-1039-JD
Opinion No. 2020 DNH 070

O R D E R

    The individual plaintiffs filed a putative class action that challenges practices used by the Commissioner of the New Hampshire Department of Health and Human Services ("the Commissioner") and four New Hampshire hospitals to involuntarily detain persons who experience mental health crises and seek treatment in hospital emergency rooms.[2]  The Commissioner moves to dismiss the individual plaintiffs' claims.  The plaintiffs object.

---

[1] Jeffrey A. Meyers was named as the Commissioner of the New Hampshire Department of Health and Human Services ("DHHS") in the amended complaint, the motion to dismiss, and the objection. In the reply, Kerrin Rounds was identified as the Acting Commissioner of the New Hampshire Department of Health and Human Services.  The DHHS website, www.dhhs.nh.gov/ocom/index.htm, states that Lori Shibinette is now the DHHS Commissioner, and she has been automatically substituted as the defendant in this case.  Fed. R. Civ. P. 25(d).

[2] The New Hampshire Hospital Association and twenty hospitals intervened in the action as plaintiffs and bring claims against the Commissioner of DHHS.  The Commissioner's motion to dismiss those claims is addressed in a separate order.

## Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and construes reasonable inferences in the plaintiff's favor. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). "To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." Rios-Campbell v. U.S. Dept. of Commerce, 927 F.3d 21, 24 (1st Cir. 2019) (internal quotation marks omitted). The plausibility standard requires sufficient factual allegations "to remove the possibility of relief from the realm of mere conjecture." Dumont v. Reily Foods Co., 934 F.3d 35, 44 (1st Cir. 2019) (internal quotation marks omitted). The purpose of the plausibility standard is to "weed out cases that do not warrant either discovery or trial." Rios-Campbell, 927 F.3d at 24 (internal quotation marks omitted).

## Background

Four named plaintiffs bring this putative class action, challenging the practices of the Commissioner with respect to involuntary emergency admissions of persons with mental illness. Three of the plaintiffs, John Doe, Charles Coe, and Jane Roe, have been granted permission to proceed under pseudonyms. The

fourth plaintiff, Deborah A. Taylor, is proceeding as the
guardian for her son, Scott Stephen Johnstone.

A.   Practice of Psychiatric Boarding

Under New Hampshire law, persons, like the plaintiffs, who
experience mental health crises may be involuntarily admitted on
an emergency basis pursuant to RSA 135-C:27-33.  The plaintiffs
allege they and other persons who experience mental health
crises are involuntarily detained in hospital emergency rooms,
pursuant to an IEA petition and certificate, without counsel, a
hearing, or any process for challenging the detention.  They
allege that the hospitals are not equipped to provide treatment
while certified persons await admission to designated receiving
facilities.

The plaintiffs allege that on August 21, 2017, there were
seventy-one adults waiting for admission to designated receiving
facilities and that on May 25, 2017, there were twenty-seven
children waiting.  Some persons have experienced waiting times
lasting up to four weeks.  The plaintiffs further allege that
the Commissioner is aware of the problem but has failed to
correct it.

B.  Experiences of Individual Plaintiffs

1.  John Doe

John Doe was admitted to the emergency room at Southern New Hampshire Medical Center ("SNHMC") in Nashua, New Hampshire, on November 5, 2018, after attempting suicide.  SNHMC clinicians on staff believed that Doe was refusing treatment and, for that reason, completed a petition and a certificate for involuntary emergency admission under RSA 135-C:28.  Doe contends that the clinicians were mistaken and that he was willing to be treated for his mental health issues on an out-patient basis.

After the involuntary emergency admission ("IEA") certificate was completed, Doe was detained at SNHMC.  SNHMC renewed the IEA petition on November 8, 2018.  After this action was filed on Doe's behalf, SNHMC changed Doe's status to voluntary admission, and the IEA petition and certificate were rescinded.  He was discharged on November 15, 2018, ten days after the initial IEA petition and certificate were completed. Doe did not receive a probable cause hearing during the ten days of his detention at SNHMC.

2.  Charles Coe

Charles Coe's family brought him to the emergency room at Concord Hospital on July 20, 2018, because he was experiencing significant anxiety.  Although Coe thought he would be admitted

voluntarily, Concord Hospital personnel completed a petition and an IEA certificate.  Coe was placed in the psychiatric ward.

He asked to be released on July 25, but Concord Hospital refused.  Instead, hospital personnel completed another petition and IEA certificate.  Coe then was transferred to a wing of the hospital for behavioral health emergencies.  The hospital renewed the IEA certificate three times.  He was not provided a probable cause hearing during that time.

Coe hired an attorney who challenged his involuntary admission by filing a petition for a writ of habeas corpus on August 3.  The hospital released Coe on August 8.  Merrimack County Superior Court issued an order on the habeas petition on August 9.  The court ruled that that if a new IEA petition were filed as to Coe, he would have to be released or provided a probable cause hearing within three days pursuant to RSA 135-C:31, I.  Doe v. Concord Hospital, No. 217-2018-CV-00448 (Merrimack Cty. Sup. Ct. Aug. 9, 2018).[3]


    3.  Jane Roe

Jane Roe had a contentious interaction with her adult daughter on September 21, 2018.  Her daughter called the police

---

[3] In response to the hospital's motion for reconsideration, the superior court issued an order on September 5, 2018, holding that the August 9 order had no preclusive effect because Doe's petition had become moot.

and an ambulance.  When Roe declined to go with the EMTs, they injected her with a sedative and took her into custody.  She was taken to the emergency room at St. Joseph's Hospital and was involuntarily admitted pursuant to a petition and an IEA certificate.  The certificate was renewed six times through October 9.  Roe did not receive a probable cause hearing while she was detained at St. Joseph's Hospital.

Roe was transferred to New Hampshire Hospital on October 10, 2018.  A probable cause hearing was scheduled there.  When Roe's daughter was unavailable for the probable cause hearing, however, Roe was released.


### 4.   Deborah Taylor

Scott Stephen Johnstone was involuntarily admitted to the emergency room at Memorial Hospital in North Conway under an IEA petition and certificate on July 17, 2018.  This was his third involuntary emergency admission.  His mother and guardian, Deborah Taylor, completed the petition.  Johnstone was detained at Memorial Hospital for twenty-seven days while awaiting admission to a designated treatment facility.  The IEA certificate was renewed eleven times during that period.  Johnstone was not provided a probable cause hearing while detained at Memorial Hospital.

Taylor became concerned about the lack of treatment for Johnstone's mental illness and the conditions of his detention. After Taylor told her story to political leaders in New Hampshire and to the press, Johnstone was transferred to New Hampshire Hospital on August 13, 2018.  Following a hearing, probable cause was found to keep him there for a month.

### C.  Claims by Individual Plaintiffs against the Commissioner

The individual plaintiffs bring three counts against the Commissioner.  In Count I, brought pursuant to 42 U.S.C. § 1983, the plaintiffs allege that the Commissioner denied them procedural due process in violation of the Fourteenth Amendment to the United States Constitution.  In Count II, the plaintiffs allege that the Commissioner has violated their due process rights under the New Hampshire Constitution, Part I, Article 15. In Count III, the plaintiffs allege that the Commissioner violated RSA 135-C:31, I by failing to provide them probable cause hearings within three days after the IEA certificates were completed.

For relief, the plaintiffs seek a declaration that the Commissioner's practice of not providing a probable cause hearing to persons involuntarily detained in private hospitals within three days after an IEA certificate is completed violates

RSA 135-C:31, I and the Due Process Clause of the Fourteenth Amendment.  They also seek a declaration that the Commissioner's practice violates Part I, Article 15 of the New Hampshire Constitution.  They ask the court to impose a preliminary and a permanent injunction to require the Commissioner to provide procedural due process to IEA-certified persons who are detained in hospitals while waiting to be delivered to a designated receiving facility.

    D.  <u>Hearing</u>

The court held a hearing on the motions to dismiss, by videoconference, on April 2, 2020.  Counsel for the Commissioner, the Doe plaintiffs, and the hospital plaintiffs participated in the hearing.

One issue concerning whether or not <u>Monell v. Department of Social Services</u>, <u>436 U.S. 658 (1978)</u>, applies to the circumstances of this case required additional briefing.  That briefing has been submitted.

<u>Discussion</u>

The Commissioner moves to dismiss the claims brought against her on the grounds that the individual plaintiffs do not allege state action in support of their § 1983 claim, Count I, or comply with Federal Rule of Civil Procedure 8(a).  The

Commissioner asks the court to decline to exercise supplemental jurisdiction over the state law claims, Counts II and III. Alternatively, the Commissioner challenges the state law claims on the merits.  The plaintiffs contend that their amended complaint sufficiently alleges actionable claims.

I.   Proper Party as Defendant

The plaintiffs name the Commissioner of DHHS in her official capacity as the plaintiff in this case.  The parties, however, from time to time, also refer to DHHS and the state as the defendant.  It is understood by the parties that the Commissioner in her official capacity is the proper party defendant.

In their surreply, the plaintiffs argued that they "are attributing liability to the State—through the Commissioner in her official capacity—for an unconstitutional policy, practice, and custom under Monell v. Department of Social Services, 436 U.S. 658 (1978)."  Doc. no. 137, at *6.  At the hearing, the court questioned the plaintiffs' reliance on Monell and gave them an opportunity to brief the issue.  The plaintiffs now agree that Monell does not apply in § 1983 actions against a state official sued in her official capacity.  Therefore, the plaintiffs' argument based on Monell is considered withdrawn.

## II.   Rule 8(a)

The Commissioner asks the court to dismiss the individual plaintiffs' amended complaint on the ground that it violates the requirement under Rule 8(a)(2) that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Commissioner contends that the amended complaint is "unnecessarily lengthy, repetitive, and convoluted in light of the nature of this action and the relief requested."  Doc. No. 103, at *16.

In support, the Commissioner charges that the complaint is too long and has too many footnotes, that the paragraphs are too long, that there are advocacy arguments with citations to exhibits and hyperlinks to news articles, and that there are charts included in the complaint and too many exhibits appended to the complaint.  Despite the cited problems, the Commissioner states that the plaintiffs' claims are straightforward and summarizes them succinctly.  In short, the Commissioner seeks dismissal of the complaint not because it is difficult to comprehend but instead because it provides too much information and will take too long to answer.[4]

---

[4] The Commissioner also faults the plaintiffs for including allegations to show state action in support of their claim under § 1983.  She argues that the plaintiffs are impermissibly attempting to negate a possible defense, which is the lack of state action.  In the next section of the memorandum, however, the Commissioner argues that state action is an essential

The Commissioner has not provided sufficient grounds to dismiss the complaint based on Rule 8.  Cf. Currier v. Town of Gilmanton, 2019 DNH 129, 2019 WL 3779580, at *2 (D.N.H. Aug. 12, 2019).  That said, the complaint has 57 pages with 176 paragraphs and includes extraneous materials, which the Commissioner challenges.  In her answer under Rule 8(b)(1), a defendant must state her defenses to each claim and must admit or deny the allegations asserted against her.  Denials "must fairly respond to the substance of an allegation."  Fed. R. Civ. P. 8(b)(2).  On the other hand, if the defendant lacks knowledge or information sufficient to determine whether an allegation is true, she must so state, which has the effect of a denial.  Fed. R. Civ. P. 8(b)(5).

In this case, the Commissioner need not admit or deny advocacy arguments, but she must identify those paragraphs that she believes to be merely argumentative.  She also need not admit or deny specific exhibits attached to the complaint, citations to websites, referenced media pieces, state court proceedings, legislative history, charts that are reproduced in the complaint, or other referenced materials.  Where those matters are pertinent to the substance of an allegation, the

---

element of a § 1983 claim and that the plaintiffs have not alleged state action.  A complaint cannot be dismissed under Rule 8 for including allegations that are essential to state a cause of action under § 1983.

Commissioner must admit or deny the allegation but may note that
she takes no position on the truth or falsity of the cited
materials or information.

III.  Section 1983 Claim, Count I, State Action

     In Count I, the § 1983 claim, the plaintiffs allege that
the Commissioner's psychiatric boarding practice violates their
right to procedural due process under the Fourteenth Amendment.
They further allege that they, and putative class members, have
been and will be detained in private hospitals pursuant to IEA
certificates under RSA 135-C:27-33 without timely due process,
including probable cause hearings.  They seek a declaratory
judgment that the Commissioner's psychiatric boarding practice
violates their due process rights, and they seek a prospective
injunction to require the Commissioner to provide timely
process, including hearings.

     The two essential elements of a § 1983 claim are that "the
challenged conduct must be attributable to a person acting under
color of state law" and that "the conduct must have worked a
denial of rights secured by the Constitution or by federal law."
Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  The right
to due process under the Fourteenth Amendment requires that
"when a claim is proffered that threatens a person's life,
liberty, or property, that person is entitled to notice and an

12

opportunity to be heard." Vazquez-Robles v. CommoLoCo Inc., 757 F.3d 1, 2 (1st Cir. 2014).  The Commissioner moves to dismiss Count I on the ground that the plaintiffs have not alleged state action that resulted in the deprivation of their due process rights.

The Commissioner contends that, contrary to the plaintiffs' allegations, she does not have a psychiatric boarding practice. Instead, the Commissioner argues, the plaintiffs were detained by private hospitals that acted voluntarily and in the exercise of their discretion.  The Commissioner asserts that she took no action with respect to the plaintiffs and was not obligated to take any action until they were delivered to a designated receiving facility.

The plaintiffs dispute the Commissioner's view of the involuntary emergency admission process.  They argue that the Commissioner has a constitutional duty under the Fourteenth Amendment and a statutory duty under RSA 135-C:31, I to provide for probable cause hearings to IEA-certified persons detained in private hospitals and that, despite her duty to do so, the Commissioner does not provide for the required hearings.  In support, they argue that IEA-certified persons are admitted to the state mental health services system when an IEA certificate is completed.  The Commissioner's failure to provide the required process, including hearings, they contend, constitutes

13

state action that violates their rights to procedural due
process.

Even if it were assumed that the Commissioner's theory of
voluntary participation by the hospitals is correct, that theory
would not resolve the state action issue.  State action may be
found where a state actor has a duty to act but fails to do so.
Clark v. Taylor, 710 F.2d 4, 9 (1st Cir. 1983) ("Liability under
section 1983 may be imposed both for action that deprives a
plaintiff of a constitutional right and for failure to act, when
there is a duty to act, to prevent such a deprivation."); accord
Goodall v. Worcester School Comm., 405 F. Supp. 3d 253, 270-71
(D. Mass. 2019).  Therefore, if the Commissioner has a
constitutional and/or a statutory duty to provide for probable
cause hearings to IEA-certified persons who are detained in
private hospitals, but fails to do so, that failure to act would
constitute state action depriving the plaintiffs of due process.

For purposes of the motion to dismiss, the Commissioner
does not dispute that IEA-certified persons have both a
constitutional right and a statutory right to procedural due
process, including a probable cause hearing.  See RSA 135-C:30;
Zinermon v. Burch, 494 U.S. 113 (1990); Addington v. Texas, 441
U.S. 418, 425-32 (1979); State v. Ploof, 162 N.H. 609, 622-24
(2011); In re Richard A., 146 N.H. 295, 298 (2001); In re Scott
L., 124 N.H. 327, 331 (1983).  At the hearing, counsel for the

Commissioner agreed that if the statutory scheme were construed to mean that a person is admitted to the mental health services system when the IEA certificate is completed, a probable cause hearing would be required within three days.

The Commissioner, however, disputes that admission occurs when the IEA certificate is completed and disputes that an IEA-certified person is in the custody of the Commissioner at that time.  The Commissioner argues instead that admission does not occur until an IEA-certified person is physically delivered to a designated receiving facility.


A.  Statutory Framework

The "New Hampshire Public Health Mental Health Services System" was established under and is governed by RSA chapter 135-C.  The purpose of RSA chapter 135-C is

> to enable the department of health and human services to:
> (a)  Establish, maintain, and coordinate a comprehensive, effective, and efficient system of services for persons with mental illness.
> (b)  Reduce the occurrence, severity and duration of mental, emotional, and behavioral disabilities.
> (c)  Prevent mentally ill persons from harming themselves or others.

RSA 235-C:1, I; Petition of Sawyer, 170 N.H. 197, 200 (2017).

DHHS is required to "establish, maintain, implement, and coordinate a system of mental health services under [RSA chapter

135-C]."  RSA 135-C:3.  The mental health services system "shall
be supervised by the Commissioner" of DHHS.  Id.

     The chapter states that "[a]ny person seeking services from
the state mental health services system may apply to an approved
community mental health program or to a receiving facility."
RSA 135-C:12, I.  In the event of a mental health emergency or
crisis, however, the DHHS website instructs persons seeking
services to go to the emergency department of a private hospital
or to a community mental health center.  N.H.D.H.H.S.,
Involuntary Emergency Admissions (IEA), www.dhhs.nh.gov/dcbcs/
nhh/eligibility.htm (last visited April 9, 2020)
[http://perma.cc/PLG9-7ST9] ("DHHS website").  That directive is
necessary, according to the website, because DHHS does not
provide emergency services at New Hampshire Hospital or any
designated receiving facility.[5]  Id.  The website also states
that "[b]ecause [New Hampshire Hospital] has a limited bed
capacity, the person may have to wait at the Emergency
Department or [community mental health center] until a bed at
[New Hampshire Hospital] becomes available."  Id.

---

[5] Hospitals are required to be licensed under RSA chapter
151.  RSA 151:2, I(a).  With some exceptions, "[e]very facility
licensed as a hospital under RSA 151:2, I(a) shall operate an
emergency department offering emergency services to all persons
regardless of ability to pay 24 hours every day, 7 days a week."
RSA 151:2-g.

Once a person seeks services at the emergency department of a local hospital or a community mental health center, or services are sought on a person's behalf, the person is examined and a determination is made as to whether that person meets the criteria for involuntary emergency admission provided in RSA 135-C:27.  Alternatively, if a "peace officer" takes a person into protective custody because of his or her behavior, the officer is required to transport the person "directly to an emergency room of a licensed general hospital" or to another place designated by the community mental health program serving that area.  RSA 135-C:28, III.

"The involuntary emergency admission of a person shall be to the state mental health services system under the supervision of the Commissioner."  RSA 135-C:28, I (emphasis added). Admission to the mental health services system "may be ordered upon the certificate" of an approved medical care provider at a hospital emergency department or community mental health center when the person examined meets the criteria of RSA 135-C:27. RSA 135-C:28, I.  The Commissioner keeps a list of medical providers who are approved by her to administer IEA examinations and to complete IEA certificates.  RSA 135-C:28, I.

The "Petition and Certificate for Involuntary Emergency Admission (IEA)" is a form that is available on the website www.courts.state.nh.us and is designated "NHJB-2826-D".  Doc.

17

no. 103-2.  The form includes sections for a petitioner's statement about the person's dangerousness, for a witness's statement about the person's dangerous acts or behaviors, and for reports of the physical and mental examinations conducted by medical providers.

The last part of the form is entitled the "State of New Hampshire Certificate of Examining Physician or APRN for Involuntary Emergency Admission."  In the certificate, the approved medical provider certifies to the provider's qualifications, that the provider is not a relative of the mentally ill person, and that the required examinations have been performed.  The provider then certifies that, in his or her opinion, the criteria of RSA 135-C:27 are satisfied "as the person is in such mental condition as a result of mental illness that s/he poses a serious likelihood of danger to self or others."  Doc. no. 103-2, at *8.

Once an IEA certificate is completed, "a law enforcement officer shall, [unless an exception applies], take custody of the person and shall immediately deliver such person to the receiving facility."  RSA 135-C:29, I.  If certain specified situations arise "before custody of the person is accepted by a law enforcement officer pursuant to RSA 135-C:29, the certificate may be rescinded and the person who is the subject of the certificate released."  RSA 135-C:29-a, I. "New Hampshire

hospital and any other facility approved by the Commissioner shall be designated as receiving facilities for the care, custody, and treatment of persons subject to involuntary admissions." RSA 135-C:26, I.

Designated receiving facilities are authorized to accept "persons involuntarily admitted to the state mental health services system" for "care, custody, and treatment." RSA 135-C:2, XIV. As is noted above, however, the Commissioner acknowledges that designated receiving facilities may not be available to accept IEA-certified persons, in which case private hospitals are required to house those persons. [6]

An IEA-certified person is entitled to a probable cause hearing within three days after admission to the mental health services system. RSA 135-C:31, I. In connection with the

---

[6] The New Hampshire legislature is also aware of the problem of psychiatric boarding in private hospitals that is at issue in this case. The legislature has anticipated that DHHS may need to change its procedures in response to this case. Senate Bill 11, which became effective in July of 2019 and is codified in part at RSA 151:2-h, states:

> No later than 30 days following the first decision on the merits in *Doe v. NH Department of Health and Human Services, et al.* #1:18-CV-01039, or a court-approved agreement of all parties in the case, the commissioner of the department of health and human services shall initiate emergency rulemaking consistent with either the first decision on the merits or the court-approved agreement. The commissioner shall adopt such rules within 90 days of initiating rulemaking.

probable cause hearing, the person is entitled to notice of
certain rights, including the right to counsel and the right
"[t]o apply for admission on a voluntary basis."  RSA 135-C:30.
The person may also request a continuance of the hearing or
waive the hearing. RSA 135-C:31, II & III.  At the probable
cause hearing, the burden is on the petitioner to show that
probable cause existed for the involuntary emergency admission.
RSA 135-C:31, I.  The district court is required to render its
decision as soon as possible "but not later than the end of the
court's next regular business day."  Id.

B.  Admission to the Mental Health Services System

The Commissioner's duty to provide due process, including a
probable cause hearing as required under RSA 135-C:31, I, arises
when a person is admitted into the mental health services system
and into the custody of the Commissioner.  The plaintiffs
contend that admission occurs when an IEA certificate is
completed.  The Commissioner contends that admission does not
occur until an IEA-certified person is delivered to a designated
receiving facility.

The parties' dispute raises a legal issue about the meaning
of "admission" as used in RSA 135-C:31, I.  The New Hampshire
Supreme Court has not interpreted "admission" for purposes of

20

RSA 135-C:31, I.[7]  Both the plaintiffs and the Commissioner

contend that the pertinent statutory language is unambiguous,

although they urge different constructions.[8]


    1.  <u>Statutory Construction</u>

Because RSA chapter 135-C is New Hampshire law, this court

applies the rules of statutory construction used by the New

Hampshire Supreme Court.  See <u>United States v. Burghardt</u>, 939

F.3d 397, 407-08 (1st Cir. 2019).  The New Hampshire Supreme

---

    [7] In <u>Doe v. Concord Hospital</u>, No. 2018-CV-448, at *5 (Merr. Cty. Sup. Ct. Aug. 9, 2018), the court, in a thoughtful opinion, recognized the liberty interest of a person subject to involuntary emergency civil commitment procedures under RSA 135-C:28, which implicated federal and state due process requirements.  The court found that RSA 135-C:31 was the procedure provided to address those due process concerns.  <u>Id.</u> at *6.  The court concluded that the petitioner's due process rights were being violated by detaining IEA-certified persons without providing a hearing within three days after the first IEA certificate was completed.  <u>Id.</u> at *1.

    That decision, however, is not a binding interpretation of RSA 135-C:31.  <u>O'Connor v. Oakhurst Dairy</u>, 851 F.3d 69, 72 (1st Cir. 2017).  Further, the Merrimack County Superior Court held, on reconsideration, that the August 9 decision would have no preclusive or binding effect.  <u>Doe v. Concord Hospital</u>, No. 2018-CV-00448, at *7-*8 (Merrimack County Sup. Ct. Sept. 5, 2018).  On the other hand, while the decision is not binding or preclusive, this court can consider its reasoning in addressing the issues in this case.

    [8] During the hearing, counsel for the Commissioner raised the possibility of certifying a question of statutory construction to the New Hampshire Supreme Court.  The court directed counsel to confer on the issue and held a telephone conference.  No party requested certification.  After considering the matter, the court has concluded that certification is not necessary.

Court "first look[s] to the language of the statute itself, and,
if possible, construe[s] that language according to its plain
and ordinary meaning." State v. Folley, --- A.3d ---, 2020 WL
122727, at *7 (N.H. Jan. 10, 2020).  The court construes "all
parts of a statute together to effectuate its overall purpose
and to avoid absurd or unjust results." State v. Salimullah, --
- A.3d ---, 2020 WL 122712, at *2 (N.H. Jan. 10, 2020).  In
addition, the court construes statutory language "in light of
the policy sought to be advanced by the entire statutory
scheme." State v. Mfataneza, 172 N.H. 166, 169 (2019).
Whenever it is reasonably possible, statutory language must be
construed "to avoid bringing it into conflict with the
constitution." State v. Paul, 167 N.H. 39, 44-45 (2014).


     a.  <u>Purpose</u>

RSA chapter 135-C ("the chapter") was enacted by the New
Hampshire legislature to enable DHHS to "[e]stablish, maintain,
and coordinate a comprehensive, effective, and efficient system
of services for persons with mental illness."  RSA 135-C:1,
I(a).  The policies, practices, and procedures laid out in the
chapter are intended to create a comprehensive and efficient
system for addressing mental health issues and treatment needs
and for accomplishing the purposes and goals of the chapter.
One of the important purposes of the mental health system is to

"[p]revent mentally ill persons from harming themselves or others." Id. at I(c).

      b. Procedures

The chapter's statutory purpose is effectuated through the procedures set forth at RSA 135-C:27-33, which provide for involuntary emergency admissions to the mental health services system. Involuntary emergency admission is a progressive process involving several steps that affect a person's status in the mental health services system.

A person experiencing a mental health crisis is first examined and evaluated at a hospital emergency room or at a community mental health center to determine whether s/he poses "a likelihood of danger to himself [herself] or others." RSA 135-C:27, I. The approved medical care providers conduct physical and mental evaluations. If the person is found to meet the criteria provided in RSA 135-C:27, the provider completes an IEA certificate.

Completion of the IEA certificate carries with it immediate significant consequences. Certification establishes at the outset that the person is likely to be a danger to himself, herself, or others. Because of that determination, the person is admitted to "the state mental health services system under

the supervision of the Commissioner" and is at that point placed in the custody and control of the Commissioner.  RSA 135-C:28, I.

Following certification, the statute requires that an IEA-certified person be delivered immediately to a designated receiving facility.[9]  The statute does not provide any procedure for holding a person indefinitely pending delivery to a designated receiving facility.  There is also no statutory requirement for re-examination, re-evaluation, or re-certification of the person when that person is delivered to a designated receiving facility, which underscores the conclusion that admission to the mental health services system has already occurred before delivery, that is, at the time of certification.

The statute also provides for another critically important procedure, a probable cause hearing, which "shall" be held within three days of certification.[10]  As the statutory procedures are designed to work, the probable cause hearing is

---

[9] The parties dispute the meaning and implications of the phrase "immediately deliver such person to the receiving facility" and whether that would allow for long-term detention by a hospital.  RSA 135-C:29, I.  Because admission into the mental health system triggers the probable cause hearing requirement, it is not necessary to address that dispute.

[10] An IEA-certified person must be notified of certain rights and procedures that precede a probable cause hearing. RSA 135-C:30.

to be held after the IEA-certified person has been delivered to a designated receiving facility.  RSA 135-C:31, I.

At the probable cause hearing, the district court determines whether "there was probable cause for involuntary emergency admission."  RSA 135-C:31, I (emphasis added).  The petitioner bears the burden of showing that probable cause existed.  Id.  The court determines whether there was probable cause to involuntarily admit the certified person on an emergency basis because that person "posed a likelihood of danger to himself or others."  In other words, at the probable cause hearing the court evaluates whether probable cause existed at the time of certification.

The statutory procedure described above establishes a process that is intended to progress logically through a series of steps:  1) admission to the state mental health services system occurs upon completion of the IEA certificate at which point the certified person is placed in the custody of the Commissioner; 2) the person is immediately delivered to a designated receiving facility; and 3) within three days of admission, a probable cause hearing is to be held and the district court determines whether there was probable cause for the involuntary emergency admission.

### c. Commissioner's Construction

The Commissioner argues that admission does not occur until an IEA-certified person is delivered to a designated receiving facility. Based on that construction, the Commissioner contends that she has no duty to provide for probable cause hearings until three days after a person is delivered to a designated receiving facility.[11]

The Commissioner has proposed a construction of the statutory procedure for involuntary emergency admission that ignores the significance of the certification process and the logical progression of events provided by RSA 135-C:27-33. Certification is the mandatory first step in the admission

---

[11] The Commissioner also argues that IEA-certified persons are not in custody but are at liberty and may be released until delivery to a designated receiving facility. In support, she relies on RSA 135-C:39, I. RSA 135-C:39, however, applies only to procedures for involuntary admissions that do not involve an emergency.

A person subject to admission to the mental health services system under the involuntary admission procedures, RSA 135-C:34-54, is not subject to an IEA certificate and has not been found to be a likely danger to himself or others. Instead, a petition for involuntary admission, which is not an emergency, is filed with the probate court, which then conducts a hearing. It is pending this hearing that the person is "at liberty."

Therefore, RSA 135-C:39, on its face, when viewed in its statutory context (RSA 135-C:34-54), provides no support for the Commissioner's theory that IEA-certified persons are at liberty and may be released. Furthermore, it would make neither common nor medical sense to allow the release of a person, certified to pose a likely danger to himself or others, pending delivery to a designated receiving facility.

process, which changes the legal status of the IEA-certified

person.  An IEA-certified person could not be taken into custody

and delivered to a designated receiving facility without first

being admitted to the mental health services system.  The

Commissioner's construction apparently views certification as an

independent event, detached from the rest of the statutory

procedure, that does not carry with it any consequences

requiring the Commissioner's involvement.[12]

    When construing the meaning of statutory language, the

court must look at RSA chapter 135-C as a whole because there is

---

[12] The Commissioner asserts that she has no duty to an IEA-
certified person because private hospitals voluntarily
participate in the IEA-certification process and the approved
medical care providers have discretion not to complete IEA
certificates.  She argues that hospitals are free to turn away
persons experiencing mental health crises, without conducting an
evaluation under RSA 135-C:28.  She further argues that if
hospitals want to avoid the rigors of psychiatric boarding,
their providers should exercise their discretion not to complete
IEA certificates.  This is an unusual position to take given the
purpose and goals of RSA chapter 135-C.
    For many reasons, hospitals and medical care providers are
not at liberty to refuse to examine persons who come to hospital
emergency departments.  Indeed, as the DHHS website shows, the
Commissioner relies on private hospitals to provide those
emergency services.  The Commissioner does not argue that the
hospitals and medical care providers have improperly completed
certificates or that the completed certificates are invalid.
Even if the hospitals and medical care providers were acting as
volunteers, which the Commissioner has not shown, once an IEA
certificate is properly completed, the certified person is
admitted into the state's mental health services system and is
in the custody of the Commissioner.  Therefore, the Commissioner
cannot escape her statutory duty by arguing that the hospitals
and medical care providers are merely volunteers.

a presumption that the legislature intended to create a harmonious plan or system to address a particular issue, in this case, the medical needs of those experiencing a mental health crisis.  Contrary to the Commissioner's construction, certification is, significantly, the first step in the process by which persons in need of emergency mental health services are involuntarily admitted into the mental health services system and are placed in the custody and control of the Commissioner. For the reasons explained above, the statutory procedure provided in RSA 135-C:27-33 on its face does not support the Commissioner's construction of when admission occurs and when probable cause hearings are to be held.  Instead, the plain and ordinary meaning of RSA 135-C:31, I, read in light of RSA chapter 135-C's purpose and in the context of the involuntary emergency admission procedure as a whole, is that "an involuntary emergency admission," for purposes of triggering the time for a probable cause hearing, occurs when an IEA certificate is completed.

     The court rules that involuntary emergency admission into the mental health services system, as provided by RSA 135-C:27-33, occurs when an IEA certificate is completed.  Following certification, the statutory procedures require immediate delivery of the certified person to a designated receiving

facility and a probable cause hearing within three days after certification.

2.  Application

As alleged by the plaintiffs in this case, the statutory procedures are not working properly.  The designated receiving facilities do not have space to accommodate all of the IEA-certified persons who should be delivered to those facilities. As a result, IEA-certified persons are boarded in private hospitals while waiting for space in designated receiving facilities.  While they wait, those persons are not provided treatment or probable cause hearings.

Irrespective of the facilities problem, the Commissioner has a duty mandated by statute to provide for probable cause hearings within three days of when an IEA certificate is completed.  A failure to comply with this statutory duty constitutes state action.  Clark, 710 F.2d at 9.

B.  Result

In support of Count I, the plaintiffs allege that the Commissioner has not provided for probable cause hearings to IEA-certified persons housed in private hospitals.  They further allege that the Commissioner's failure to comply with her statutory duty has resulted in prolonged detentions in violation

of the IEA-certified persons' due process rights.  In light of the court's construction of the procedures set forth in RSA 135-C:27-33, the plaintiffs' allegations are sufficient to allege state action for purposes of Count I.  The court need not consider the other theories of state action.

IV.  <u>State Law Claims, Counts II and III</u>

Because the court has not dismissed the plaintiffs' § 1983 claim, the Commissioner's request that the court decline to exercise supplemental jurisdiction over the state law claims fails.  In addition, the Commissioner moves to dismiss Count II, which alleges violation of the plaintiffs' rights to due process under the New Hampshire Constitution, on the ground that state action is lacking.  As is explained above, the plaintiffs' allegations that the Commissioner has failed to provide for probable cause hearings within three days after the completion of an IEA certificate allege state action for purposes of this case.

The Commissioner moves to dismiss Count III, which alleges violation of RSA 135-C:31, I, on the ground that the statute does not require a hearing until after a person is delivered to a designated receiving facility.  The court has construed RSA 135-C:31, I to require a probable cause hearing within three

days after completion of an IEA certificate.   Therefore, the
Commissioner's motion as to Count III fails.


V.   Summary

- The Commissioner did not show grounds to dismiss the
  amended complaint based on Federal Rule of Civil
  Procedure 8(a).

- In accordance with RSA 135-C:27-33, involuntary
  emergency admission to the state mental health services
  system occurs when an IEA certificate is completed.

- The Commissioner has a statutory duty to provide IEA-
  certified persons with probable cause hearings within
  three days after an IEA certificate is completed.

- The plaintiffs allege that the Commissioner has failed
  to provide for probable cause hearings to IEA-certified
  persons while they are boarded in hospital emergency
  rooms.

- As alleged, the Commissioner's failure to provide for
  statutorily required hearings is state action for
  purposes of the plaintiffs' claims in Counts I and II.

- Because the court rejects the Commissioner's
  construction of the statutory procedure, the

Commissioner's grounds for dismissing Count III also fail.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 103) is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge


April 30, 2020

cc:  Counsel of record