UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe, et al.

    v.

Commissioner, New Hampshire
Department of Health and
Human Services[1]

Civil No. 18-cv-1039-JD
Opinion No. 2020 DNH 071

O R D E R

John Doe, Jane Roe, Charles Coe, and Deborah Taylor filed a putative class action that challenges practices used by the Commissioner of the New Hampshire Department of Health and Human Services ("the Commissioner") and four New Hampshire hospitals to involuntarily detain individuals who experience mental health crises and seek treatment in hospital emergency rooms. The New Hampshire Hospital Association and twenty hospitals ("the hospitals") were granted leave to intervene in the action as plaintiffs and bring claims against the Commissioner of DHHS. The Commissioner moves to dismiss the hospitals' claims. The hospitals object.

---

[1]Jeffrey A. Meyers was named as the Commissioner of the New Hampshire Department of Health and Human Services ("DHHS") in the amended complaint, the motion to dismiss, and the objection. In the reply, Kerrin Rounds was identified as the Acting Commissioner of the New Hampshire Department of Health and Human Services. The DHHS website, www.dhhs.nh.gov/ocom/index.htm, states that Lori Shibinette is now the DHHS Commissioner, and she has been automatically substituted as the defendant in this case. Fed. R. Civ. P. 25(d).

Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and construes reasonable inferences in the plaintiff's favor. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019).  "To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." Rios-Campbell v. U.S. Dept. of Commerce, 927 F.3d 21, 24 (1st Cir. 2019) (internal quotation marks omitted).  The plausibility standard requires sufficient factual allegations "to remove the possibility of relief from the realm of mere conjecture." Dumont v. Reily Foods Co., 934 F.3d 35, 44 (1st Cir. 2019) (internal quotation marks omitted). The purpose of the plausibility standard is to "weed out cases that do not warrant either discovery or trial." Rios-Campbell, 927 F.3d at 24 (internal quotation marks omitted).


Parties

The hospital plaintiffs are the New Hampshire Hospital Association, Alice Peck Day Memorial Hospital, Androscoggin Valley Hospital, Catholic Medical Center, Cheshire Medical Center, Concord Hospital, Cottage Hospital, Elliot Hospital,

2

Frisbie Memorial Hospital, HCA Health Services of New Hampshire
(Parkland Medical Center and Portsmouth Regional Hospital),
Huggins Hospital, Littleton Hospital Association (Littleton
Regional Healthcare), LRGHealthcare (Franklin Regional Hospital
and Lakes Region General Hospital), Mary Hitchcock Memorial
Hospital, Monadnock Community Hospital, New London Hospital,
Southern New Hampshire Medical Center, Speare Memorial Hospital,
Upper Connecticut Valley Hospital, Valley Regional Hospital, and
Weeks Medical Center.

The individual plaintiffs and the hospitals name the
Commissioner of DHHS in her official capacity as the plaintiff
in this case.  The parties, however, from time to time, also
refer to DHHS and the state as the defendant.  It is understood
by the parties that the Commissioner in her official capacity is
the proper party defendant.

### Statutory Framework

The hospitals' claims in this case arise from the
Commissioner's practices with respect to persons experiencing
mental health crises who are examined and evaluated in hospital
emergency departments.  The hospitals contend that the
Commissioner is not fulfilling her statutory obligations to
those persons, which results in violations of the hospitals'

constitutional rights.  The statutory framework for New

Hampshire's mental health services system follows.

The "New Hampshire Public Health Mental Health Services

System" was established under and is governed by RSA chapter

135-C.  The purpose of RSA chapter 135-C is

> to enable the department of health and human services
> to:
> (a)  Establish, maintain, and coordinate a
> comprehensive, effective, and efficient system of
> services for persons with mental illness.
> (b)  Reduce the occurrence, severity and duration of
> mental, emotional, and behavioral disabilities.
> (c)  Prevent mentally ill persons from harming
> themselves or others.

RSA 135-C:1, I; Petition of Sawyer, 170 N.H. 197, 200 (2017).

DHHS is required to "establish, maintain, implement, and

coordinate a system of mental health services under [RSA chapter

135-C]."  RSA 135-C:3.  The mental health services system "shall

be supervised by the Commissioner" of DHHS.  Id.

The chapter states that "[a]ny person seeking services from

the state mental health services system may apply to an approved

community mental health program or to a receiving facility."

RSA 135-C:12, I.

Once a person seeks services at the emergency department of

a local hospital or a community mental health center, or

services are sought on a person's behalf, the person is examined

and a determination is made as to whether that person meets the
criteria for involuntary emergency admission provided in RSA
135-C:27.  Alternatively, if a "peace officer" takes a person
into protective custody because of his or her behavior, the
officer is required to transport the person "directly to an
emergency room of a licensed general hospital" or to another
place designated by the community mental health program serving
that area.  RSA 135-C:28, III.

"The involuntary emergency admission of a person shall be
to the state mental health services system under the supervision
of the Commissioner."  RSA 135-C:28, I (emphasis added).
Admission to the mental health services system "may be ordered
upon the certificate" of an approved medical care provider at a
hospital emergency department or community mental health center
when the person examined meets the criteria of RSA 135-C:27.
RSA 135-C:28, I.  The Commissioner keeps a list of medical
providers who are approved by her to administer IEA examinations
and to complete IEA certificates.  RSA 135-C:28, I.

The "Petition and Certificate for Involuntary Emergency
Admission (IEA)" is a form that is available on the website
www.courts.state.nh.us and is designated "NHJB-2826-D".  Doc.
no. 103-2.  The form includes sections for a petitioner's
statement about the person's dangerousness, for a witness's

5

statement about the person's dangerous acts or behaviors, and for reports of the physical and mental examinations done by medical providers.

The last part of the form is entitled the "State of New Hampshire Certificate of Examining Physician or APRN for Involuntary Emergency Admission."  In the certificate, the approved medical provider certifies to the provider's qualifications, that the provider is not a relative of the mentally ill person, and that the required examinations have been conducted.  The provider then certifies that, in his or her opinion, the criteria of RSA 135-C:27 are satisfied "as the person is in such mental condition as a result of mental illness that s/he poses a serious likelihood of danger to self or others."  Doc. no. 103-2, at *8.

Once an IEA certificate is completed, "a law enforcement officer shall, [unless an exception applies], take custody of the person and shall immediately deliver such person to the receiving facility."  RSA 135-C:29, I.  If certain specified situations arise "before custody of the person is accepted by a law enforcement officer pursuant to RSA 135-C:29, the certificate may be rescinded and the person who is the subject of the certificate released."  RSA 135-C:29-a, I. "New Hampshire hospital and any other facility approved by the Commissioner

6

shall be designated as receiving facilities for the care, custody, and treatment of persons subject to involuntary admissions." RSA 135-C:26, I.

Designated receiving facilities are authorized to accept "persons involuntarily admitted to the state mental health services system" for "care, custody, and treatment." RSA 135-C:2, XIV. As is noted above, however, the Commissioner acknowledges that designated receiving facilities may not be available to accept IEA-certified persons, which then requires private hospitals to house those persons.[2]

An IEA-certified person is entitled to a probable cause hearing within three days after admission to the mental health services system. RSA 135-C:31, I. For purposes of the probable

---

[2] The New Hampshire legislature is also aware of the problem of psychiatric boarding in private hospitals that is at issue in this case. The legislature has anticipated that DHHS may need to change its procedures in response to this case. Senate Bill 11, which became effective in July of 2019 and is codified in part at RSA 151:2-h, states:

> No later than 30 days following the first decision on the merits in *Doe v. NH Department of Health and Human Services, et al.* #1:18-CV-01039, or a court-approved agreement of all parties in the case, the Commissioner of the department of health and human services shall initiate emergency rulemaking consistent with either the first decision on the merits or the court-approved agreement. The Commissioner shall adopt such rules within 90 days of initiating rulemaking.

cause hearing, the person is entitled to notice of certain
rights, including the right to counsel and the right "[t]o apply
for admission on a voluntary basis." RSA 135-C:30. The person
may also request a continuance of the hearing or waive the
hearing. RSA 135-C:31, II & III. At the probable cause hearing,
the burden is on the petitioner to show that probable cause
existed for the involuntary emergency admission. RSA 135-C:31,
I. The district court is required to render its decision as
soon as possible "but not later than the end of the court's next
regular business day." Id.

## Background Information

The following background information is summarized from the
allegations in the hospitals' amended complaint (document no.
77) and from documents provided with or cited in the amended
complaint. For purposes of a motion to dismiss, the properly
pleaded allegations in the complaint are taken as true.

In the complaint, the hospitals allege that the
Commissioner engages in practices, together known as psychiatric
boarding, through which the hospitals are required to house
psychiatric patients who are subject to IEA certificates. The
hospitals cite the DHHS website which describes the involuntary
emergency admission ("IEA") process used by DHHS. N.H.D.H.H.S.,

8

Involuntary Emergency Admissions (IEA), www.dhhs.nh.gov/dcbcs/
nhh/eligibility.htm (last visited April 9, 2020)
[http://perma.cc/PLG9-7ST9] ("DHHS website").  The DHHS website
states that "[t]he IEA process begins with a visit to a local
hospital Emergency Department or CMHC [community mental health
center], and the completion of an IEA Petition requesting
admission to New Hampshire Hospital."

As DHHS explains, New Hampshire Hospital does not provide
"walk-in emergency or crisis services."  For that reason, the
website directs a person in need of emergency psychiatric
services to "[c]ontact your local hospital Emergency Department
or the local Community Mental Health Center (CMHC)."  Id.  The
website also directs people who are seeking involuntary
emergency admission of another person for psychiatric reasons to
take that person to the emergency department of a local hospital
or to a CMHC for evaluation or ask the local police for help.

New Hampshire law requires hospitals in the state to
"operate an emergency department offering emergency services to
all individuals regardless of ability to pay 24 hours every day,
7 days a week."  RSA 151:2-g.  Once a person is at the hospital
emergency department, an approved medical care provider conducts
physical and mental health examinations and evaluations.  The
website states that if involuntary emergency inpatient admission

to New Hampshire Hospital is appropriate, the hospital emergency department will make those arrangements, although the person may have to wait at the hospital emergency department until a bed becomes available.

When no bed is available at New Hampshire Hospital or another designated receiving facility, the Commissioner directs the hospitals not to deliver an IEA-certified person to the facility.  Instead, the Commissioner requires the hospitals to provide services to the IEA-certified person until a bed in a designated receiving facility becomes available.

The Commissioner also does not provide probable cause hearings within three days of when an IEA certificate is completed.  To avoid that statutory obligation, the Commissioner requires hospital personnel to complete new IEA certificates every three days, along with the required examinations and evaluations.  The Commissioner's psychiatric boarding practice causes IEA-certified persons to spend days and sometimes weeks in hospital emergency departments instead of receiving treatment in a designated receiving facility.

The Commissioner's psychiatric boarding practice, requiring hospitals to house IEA-certified persons indefinitely, has continued for years.  The hospitals provide statistics about the numbers of IEA-certified persons that have been and are being

boarded in hospital emergency rooms.  They also provide statistics of their own recent experiences with psychiatric boarding.  Psychiatric boarding causes IEA-certified persons not to receive the mental health treatment that they need and that would be provided at a designated receiving facility. Psychiatric boarding also deprives hospitals of the use of space in their facilities and requires hospital staff to provide services, including repeated IEA certification services.

In 2017, the legislature passed House Bill 400 that the hospitals allege was intended to address the lack of probable cause hearings for IEA patients.  The bill directed the Commissioner to develop a plan with recommendations to provide due process for IEA-certified persons who are waiting for delivery to a designated receiving facility.  Representatives from several hospitals, DHHS, the Attorney General's Office, New Hampshire Hospital, and the Department of Information Technology met between August and December of 2017 to fulfill that directive.  They were unable, however, to formulate a plan to provide probable cause hearings to IEA-certified persons who were being held in hospital emergency rooms.

In its "10-Year Mental Health Plan" dated January of 2019, DHHS recognized that the practice of boarding IEA-certified persons in hospital emergency departments requires alternative

measures.  Doc. 77-4, at 2.  DHHS also acknowledged that "[t]he
number of NH residents waiting in hospital EDs for admission to
inpatient psychiatric treatment fluctuates significantly, but
has increased steadily over the past several years."  Id. at 9.
DHHS explained in the Plan:

> In many cases, adults and children remain in hospital
> examination cubicles in hectic ED environments for a
> week or more before they are transferred to specialty
> psychiatric treatment or are discharged.  EDs are not
> intended to serve as long-term waiting spaces.  More
> importantly, these waits delay comprehensive
> therapeutic treatment.

Id.  DHHS recommended a list of changes "to materially impact
the current boarding crisis."  Id. at 3.

The financial costs of psychiatric boarding are
significant.  The hospitals have had to undertake new
construction and renovations to make secure space for IEA
patients that have cost larger hospitals more than $1,000,000
and have cost smaller hospitals hundreds of thousands of
dollars.  The hospitals have also incurred unreimbursed costs
for boarding IEA-certified persons.  They allege the most
significant costs are due to increased staffing needs.

The legislature enacted Senate Bill 11 in the 2019 session
which appropriated funds to DHHS for purposes that include
additional beds in designated receiving facilities. Doc. 77-5.
Senate Bill 11 also requires insurers to pay a per diem rate for

IEA patients boarded in hospitals that are not designated receiving facilities.  The bill took effect on July 1, 2019.

### The Hospitals' Claims

The hospitals bring five claims against the Commissioner. Counts I, II, and III are brought pursuant to 42 U.S.C. § 1983. In Count I, the hospitals allege that the Commissioner's psychiatric boarding practice constitutes an unlawful taking of their property for public use in violation of the Fifth and Fourteenth Amendments.  In Count II, they allege that the practice interferes with their possessory rights in their emergency departments which constitutes an unreasonable seizure in violation of the Fourth Amendment.  In Count III, they allege that the practice violates their rights to procedural and substantive due process by seizing and taking their property and denying them their fundamental right to use their emergency departments.  Count IV alleges an unlawful taking in violation of the New Hampshire Constitution, and Count V alleges violations of RSA 135-C:29, I; RSA 135-C:30, V; and RSA 135-C:31, I.

The hospitals seek a declaration that the Commissioner's practice violates their federal constitutional rights, state constitutional rights, and statutory rights.  They also seek a

permanent injunction against the practice, nominal damages, and
attorneys' fees and costs.

## Discussion

The Commissioner moves to dismiss all of the hospitals'
claims.  She contends that the claims under § 1983, Counts I,
II, and III, fail because there is no state action alleged.  She
also contends that Count I does not allege a taking in violation
of the Fifth Amendment, Count II does not allege an unreasonable
seizure under the Fourth Amendment, and Count III does not
allege a Fourteenth Amendment substantive due process claim.
Presuming that the federal claims will be dismissed, the
Commissioner asks the court to decline to exercise supplemental
jurisdiction over the state claims, Counts IV and V, or
alternatively, to dismiss those claims on the merits.  The
hospitals defend their claims on all grounds raised in the
motion.

## I.  State Action

In Counts I, II, and III, the hospitals allege claims
pursuant to § 1983. "To state a claim for relief in an action
brought under § 1983, [plaintiffs] must establish that they were
deprived of a right secured by the Constitution or law of the

14

United States, and that the alleged deprivation was committed
under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan,
526 U.S. 40, 49-50 (1999).  The state action requirement
"excludes from its reach merely private conduct, no matter how
discriminatory or wrongful."  Id. (internal quotation marks
omitted).  A failure to act, despite a duty to do so, however,
is state action for purposes of liability under § 1983.  Clark
v. Taylor, 710 F.2d 4, 9 (1st Cir. 1983) ("Liability under
section 1983 may be imposed both for action that deprives a
plaintiff of a constitutional right and for failure to act, when
there is a duty to act, to prevent such a deprivation.").

     The hospitals allege that the Commissioner directs persons
experiencing mental health crises to emergency departments in
private hospitals.  Then, after the person is admitted to the
state mental health services system pursuant to an IEA
certificate, the Commissioner will not allow delivery of the
IEA-certified person to a designated receiving facility when a
bed is not available.  In addition, the hospitals allege the
Commissioner does not provide for probable cause hearings for
IEA-certified persons while they are housed in hospital
emergency departments and that practice further necessitates the
use of their staff because the Commissioner requires that the
certification process be completed again every three days.

As a result, IEA-certified persons are forced to remain at
the private hospitals indefinitely while they wait for a bed to
become available.  The hospitals contend that the Commissioner's
practice, known as psychiatric boarding, is a taking of their
property, in violation of the Fifth Amendment, an unreasonable
seizure of their property in violation of the Fourth Amendment,
and a violation of their procedural and substantive due process
rights under the Fourteenth Amendment.

The Commissioner contends that the hospitals do not allege
any state action because they made private and discretionary
decisions to admit IEA-certified persons when there are no
designated receiving facilities available.[3]  She argues that IEA-
certified persons are not admitted to the state's mental health
services system under RSA chapter 135-C until they are delivered
to a designated receiving facility.  For that reason, the
Commissioner contends, she has no duty to the hospitals to
provide beds in designated receiving facilities for delivery of
IEA-certified persons or to provide probable cause hearings for

---

[3] The Commissioner also contends that the hospitals failed
to allege state action to support their claim under the New
Hampshire Constitution in Count IV and relies on the same
standard used for state action in § 1983 cases.  Therefore, for
purposes of the motion to dismiss Count IV, state action is
considered in the context of Counts I, II, and III.

IEA-certified persons who are boarded in hospital emergency
departments.

### A.  Admission

In the order denying the Commissioner's motion to dismiss
the individual plaintiffs' claims, the court construed RSA 135-
C:27-33 to mean that once an IEA certificate is completed, the
certified person is admitted to the state mental health services
system and is in the custody and control of the Commissioner.
Certification requires the Commissioner to provide a designated
receiving facility where the IEA-certified person can be
delivered and also requires the Commissioner to provide for
probable cause hearings within three days.  Therefore, at the
time an IEA certificate is completed, the Commissioner has a
duty to provide beds in a designated receiving facility and to
provide probable cause hearings for IEA-certified persons within
three days.

### B.  Voluntary and Discretionary Actions

To avoid those obligations, the Commissioner contends that
the hospitals and approved medical care providers are acting
voluntarily when they examine and evaluate persons who seek

services at private hospital emergency departments.  She further
contends that the approved medical care providers could exercise
their discretion not to complete IEA certificates if the
hospitals wanted to avoid housing certified persons.  Instead,
she argues, the hospitals could simply turn away persons who are
experiencing mental health crises and are seeking services.
This is an unusual position to take given the purposes and goals
of RSA chapter 135-C.

As the court explained in the order denying the
Commissioner's motion to dismiss the individual plaintiffs'
amended complaint, the Commissioner's argument fails for a
variety of legal and ethical reasons.  The Commissioner does not
dispute that the IEA certificates completed by approved medical
care providers are valid and effective.  Once an IEA certificate
is completed, the certified person is admitted to the state
mental health services system and is in the custody and control
of the Commissioner.  Therefore, even if the hospitals and their
approved medical care providers were acting as mere volunteers
and could turn away patients seeking services, the Commissioner
cannot avoid her obligations once an IEA certificate is
completed.

C.  Result

Upon completion of an IEA certificate, the Commissioner has
a duty to provide a bed in a designated receiving facility where
a certified person can be delivered.  Irrespective of the
facilities problem, the Commissioner has a duty mandated by
statute to provide for probable cause hearings within three days
of when an IEA certificate is completed.  A failure to comply
with these statutory duties constitutes state action.  Clark,
710 F.2d at 9.  Therefore, the hospitals have sufficiently
alleged state action to support their claims under § 1983.

II.  Counts I, II, and III – Violation of a Constitutional Right

In addition to state action to support a § 1983 claim,
plaintiffs must allege "that they were deprived of a right
secured by the Constitution or law of the United States."  Am.
Mfrs. Mut. Ins. Co., 526 U.S. at 49–50.  The Commissioner
contends that the hospitals have not alleged a taking to support
Count I, an unreasonable seizure of property to support Count
II, or a substantive due process violation to support Count III.

A.  Count I – Taking

"The Takings Clause of the Fifth Amendment states that
'private property [shall not] be taken for public use, without

19

just compensation.'" Knick v. Township of Scott, Penn., 139 S.
Ct. 2162, 2167 (2019).  The Takings Clause applies to the states
through the Fourteenth Amendment.  Murr v. Wisconsin, 137 S. Ct.
1933, 1942 (2017).  A prohibited taking may occur through
"direct appropriation of property, or the functional equivalent
of a practical ouster of the owner's possession" or through
regulation that is so burdensome it becomes a taking.  Id.

     The Commissioner contends that Senate Bill 11 makes the
takings claim moot because it provides for just compensation.
The Commissioner also argues that no taking occurred because the
hospitals voluntarily board IEA-certified persons and that the
hospitals have not alleged facts to support a regulatory taking.


          1.  Senate Bill 11

     The Commissioner argues that Senate Bill 11, which became
effective in July of 2019, provides for "just compensation"
because it requires insurers to pay a per diem rate for IEA-
certified persons who are waiting in hospital emergency
departments.  Relying on Horne v. Dep't of Agric., 569 U.S. 513,
525 (2013), the Commissioner argues that "'if the government has
provided an adequate process for obtaining compensation, and if

resort to that process yields just compensation, then the property owner has no claim against the Government for a taking.'" (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985)).

In Horne, the Supreme Court considered a takings claim by California raisin growers that was asserted as an affirmative defense to the Department of Agriculture's actions under the Agricultural Marketing Agreement Act ("AMAA") to limit the supply of raisins on the market. Horne, 569 U.S. at 516. The Department challenged the ripeness of the defense under Williamson. Id. at 526. The Supreme Court applied the Williamson ripeness standard but decided that, under the AMAA, Tucker Act jurisdiction was withdrawn so that the takings claim defense was not premature. Id. at 527-28.

After Horne was decided, the Supreme Court overruled that part of the ripeness standard established in Williamson County that required a plaintiff to first seek compensation under state law. Knick, 139 S. Ct. at 2167. Instead, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." Id. The Commissioner has not cited Knick or explained how her reliance on Horne applies here or survives the holding in Knick.

Therefore, the Commissioner has not shown that Senate Bill 11 renders the hospitals' takings claim moot.[4]

### 2.   Merits of Takings Claim

The Commissioner contends that the hospitals have not alleged an actionable regulatory takings claim because the hospitals voluntarily participate in the IEA-certification process and choose to keep IEA-certified persons in their emergency rooms when they are free to release them from the hospital.  The Commissioner argues that there is no regulatory taking because no state law requires the hospitals to provide services to IEA-certified persons.  The hospitals object and argue that they have alleged facts that show the Commissioner's psychiatric boarding practice under RSA chapter 135-C, along with the hospitals' statutory obligation to provide emergency services and medical providers' obligations to provide competent medical care, constitute a regulatory taking.

"[T]he plain language of the Takings Clause requires the payment of compensation whenever the government acquires private

---

[4] In addition, the hospitals allege that potential payments from insurers would not cover even half of the IEA-certified persons that have been subject to psychiatric boarding.  For that reason, they argue, the availability of some insurance payments would not render the hospitals' takings claim moot.

property for a public purpose." Murr, 137 S. Ct. at 1942
(internal quotation marks omitted).  Government regulation "can
be so burdensome as to become a taking."  Id.  Regulatory taking
is "characterized by ad hoc, factual inquiries, designed to
allow careful examination and weighing of all the relevant
circumstances."  Id.

Two types of regulation are recognized as takings.
Generally, "a regulation which denies all economically
beneficial or productive use of land will require compensation
under the Takings Clause."  Id. (internal quotation marks
omitted).  Alternatively, "when a regulation impedes the use of
property without depriving the owner of all economically
beneficial use, a taking still may be found based on a complex
of factors."  Id. at 1943 (internal quotation marks omitted).
Those factors include "(1) the economic impact of the regulation
on the claimant, (2) the extent to which the regulation has
interfered with distinct investment-backed expectations, and (3)
the character of the governmental action."  Id.  "A central
dynamic of the Court's regulatory takings jurisprudence, then,
is its flexibility."  Id.

As alleged by the hospitals, the Commissioner's psychiatric
boarding practice under RSA chapter 135-C impedes their use of
their emergency departments and staff.  The hospitals are

23

obligated to house and care for IEA-certified persons who have been admitted to the state mental health services system but have not been delivered to a designated receiving facility because of a lack of beds.  The hospital staff is required to complete examinations and evaluations to re-certify those persons every three days.  The Commissioner has not shown that the hospitals voluntarily undertake the IEA certification process or that they voluntarily house IEA-certified persons when the Commissioner fails to provide a designated receiving facility for that patient.[5]

The circumstances alleged suggest a taking.  The Commissioner's challenges, if properly supported, would refute that showing.  The takings claim may be challenged, if appropriate, after further factual development through a motion for summary judgment.

---

[5] The Commissioner mistakenly cites RSA 135-C:39 to show that hospitals could release IEA certified patients.  As is thoroughly explained in the order denying the Commissioner's motion to dismiss the individual plaintiffs' amended complaint (see footnote 11 in that order), RSA 135-C:39 applies to the involuntary admission process, not the involuntary emergency admission process.  The Commissioner has not shown that RSA 135-C:39 applies to IEA-certified persons.

B.   Count II – Unreasonable Seizure

The Fourth Amendment protects against unreasonable seizures of property.  U.S. Const. amend. IV.  Under the Fourth Amendment, "[a] seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  Soldal v. Cook County, 506 U.S. 56, 61 (1992).

The Commissioner contends that the hospitals have not alleged a Fourth Amendment claim of a seizure of their property because their allegations are insufficient to state a Fifth Amendment takings claim.  As is explained above, however, the hospitals' allegations in support of their Fifth Amendment takings claim in Count I are sufficient to avoid dismissal. Therefore, the Commissioner has not shown that Count II must be dismissed.

C.   Count III – Substantive Due Process

In Count III, the hospitals allege that the Commissioner's psychiatric boarding practice violates their rights to procedural and substantive due process.  The Commissioner moves to dismiss the substantive due process part of the claim on the ground that the allegations do not show conscience-shocking

25

behavior.[6]  The hospitals assert that the Commissioner's use of their facilities and her indifference over many years to the harm that has caused constitute conscience-shocking behavior.

Under the First Circuit standard, to state a viable substantive due process claim, a plaintiff must allege facts that show "the deprivation of an established life, liberty, or property interest, <u>and</u> that such deprivation occurred through governmental action that shocks the conscience." Lambert v. Fiorentini, --- F.3d ---, 2020 WL 401499, at *4 (1st Cir. Jan. 24, 2020).  To constitute a substantive due process violation, the challenged governmental action must be "egregiously unacceptable, outrageous, or conscience-shocking." Id.  Stated in other terms, "[t]o establish a substantive due process claim, a plaintiff must demonstrate an abuse of government power that shocks the conscience or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001).

The hospitals allege that, through the psychiatric boarding practice, the Commissioner required them to hold IEA-certified

_____

[6] The Commissioner challenged the procedural due process claim only on the ground that state action was lacking.  Because the hospitals have alleged sufficient state action to support their § 1983 claims, that ground for dismissal fails.

persons in their emergency departments for days and sometimes even weeks without help or payment from the state and without treatment for the IEA-certified persons.  Based on the IEA certification, those persons were found to pose a likelihood of danger to themselves or others.  The hospitals allege that hospital emergency departments are not equipped or staffed to deal with psychiatric patients with those criteria.

The hospitals claim that the Commissioner is aware of and requires the psychiatric boarding practice.  On the DHHS website, DHHS instructs those experiencing mental health crises to go to local hospital emergency departments and warns that they may have to wait in a local hospital emergency department until a bed becomes available in a designated receiving facility.[7]  The hospitals allege that the psychiatric boarding practice has existed for years, despite the concerns and complaints of IEA-certified persons and the hospitals, and that the Commissioner has continued her reliance on the psychiatric boarding practice despite her acknowledgment of the harm it causes.

---

[7] Because of a lack of facilities and services, as DHHS has acknowledged in its "10-Year Mental Health Plan," hospitals have had to hold IEA-certified persons in inappropriate conditions, such as cubicles in emergency departments or a small and windowless room without any plan or schedule for release and without treatment.

The broader context in which psychiatric boarding occurs, and has occurred, and the full extent of the consequences to patients, hospitals, and hospital staff are relevant to determine the viability of the substantive due process claim. Whether the psychiatric boarding practice shocks the conscience or is legally irrational without any legitimate governmental interest are issues that should be factually developed through discovery. If appropriate, the claim may be challenged through summary judgment.

III.  Supplemental Jurisdiction

Based on the presumption that the hospitals' federal claims, Counts I, II, and III, would be dismissed, the Commissioner asks the court to decline to exercise jurisdiction over the state law claims, Counts IV and V. See 28 U.S.C. § 1367(c)(3). Counts I, II, and III, however, have not been dismissed. Therefore, the Commissioner does not provide grounds to decline to exercise supplemental jurisdiction under § 1367.

IV.  State Law Claims – Counts IV and V

The Commissioner also moves to dismiss Counts IV and V on the merits. She argues that the hospitals' claims under the New Hampshire Constitution in Count IV should be dismissed for the

same reasons she raised to dismiss the federal claims in Counts
I, II, and III.  Because the Commissioner's arguments were not
successful, Count IV also survives the motion to dismiss.

In Count V, the hospitals seek a declaration that the
Commissioner's psychiatric boarding practice violates RSA 135-
C:29, I; 30, V; and 31, I and a permanent injunction against
future violations.  The Commissioner moves to dismiss Count V on
the grounds that the hospitals do not have a private cause of
action under RSA chapter 135-C and that she is not violating the
cited statutes.


A.   Private Cause of Action

The hospitals are seeking a declaratory judgment under 28
U.S.C. § 2201 and injunctive relief.[8]  The cases cited by the
Commissioner in support of her assertion that the hospitals lack
a private cause of action under RSA chapter 135-C pertain to
claims for compensatory damages and the preclusive effect of
sovereign immunity.  See, e.g., Noyes v. Moyer, 829 F. Supp. 9,
14-15 (D.N.H. 1993).  The Commissioner has not shown that the
hospitals lack a cause of action under § 2201 or that they are
precluded from seeking prospective injunctive relief.

---

[8] The hospitals are also seeking nominal damages but not
compensatory damages.

B.  <u>Violation of RSA 135-C:29, I; 30, V; and 31, I 31, I</u>

The Commissioner also argues that the cited statutes do not require her to deliver an IEA-certified person to a designated receiving facility immediately after certification or to provide for a probable cause hearing until after the patient arrives at a facility.  Based on her construction of the cited statutes, she contends that no violation of the statutory procedure occurs when an IEA-certified person is required to stay in a hospital emergency room indefinitely without a probable cause hearing.

As is explained above and in the order denying the Commissioner's motion to dismiss the individual plaintiffs' claims, the court construes those statutes differently. Contrary to the Commissioner's view, a person is admitted to the mental health services system upon completion of an IEA certificate.  Completion of an IEA certificate, therefore, requires immediate delivery of the certified person to a designated receiving facility and a probable cause hearing within three days of certification.  Therefore, the hospitals have stated a claim for a declaratory judgment and for permanent injunctive relief, as alleged in Count V.

V.   <u>Summary</u>

- In accordance with RSA 135-C:27-33, involuntary emergency admission to the state mental health services system occurs when an IEA certificate is completed.

- The Commissioner has a statutory duty to provide beds in designated receiving facilities for delivery of IEA-certified persons immediately after an IEA certificate is completed.

- The Commissioner also has a statutory duty to provide IEA-certified persons with probable cause hearings within three days of when an IEA certificate is completed.

- The hospitals allege that the Commissioner has failed to provide beds in designated receiving facilities for delivery of IEA-certified persons immediately after IEA certificates are completed.

- The hospitals also allege that the Commissioner has failed to provide probable cause hearings for IEA-certified persons while they are boarded in hospital emergency rooms.

- As alleged, the Commissioner's failure to comply with her statutory duties is state action for purposes of the plaintiffs' claims in Counts I, II, and III.

- The hospitals' allegations in support of Counts I, II, and III are sufficient to state claims of violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

- The Commissioner did not provide grounds to dismiss the hospitals' claim in Count IV under the New Hampshire Constitution or their claim in Count V seeking a declaratory judgment and injunctive relief to stop the Commissioner's alleged violations of RSA 135-C:29, I; 30, V; and 31, I 31, I.

## Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss the hospitals' amended complaint (document no. 105) is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

May 1, 2020
cc:  Counsel of record.

32