UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>John Doe, et al.</u>

    v.                                    Civil No. 18-cv-1039-JD
                                      Opinion No. 2020 DNH 219
<u>Commissioner, New Hampshire</u>
<u>Department of Health and Human</u>
<u>Services, et al.</u>


<u>O R D E R</u>

The plaintiff class, represented by the individual
plaintiffs ("the plaintiffs"), challenges policies and practices
used by the Commissioner of the New Hampshire Department of
Health and Human Services ("the Commissioner") in detaining
persons who are involuntarily admitted on an emergency basis to
the state's mental health system.  The plaintiffs contend that
the Commissioner's practice of detaining those persons without
probable cause hearings violates the due process clause of the
Fourteenth Amendment.  The Commissioner moves to dismiss on the
grounds that the claim is barred by the Eleventh Amendment and
that the plaintiffs lack standing to pursue the claim.  The
plaintiffs object, and the Commissioner filed a reply.


<u>Background</u>

The detailed factual background in this case, as alleged in
the plaintiffs' amended complaint, was provided in the court's

order denying the Commissioner's previous motion to dismiss,
document number 147, and will not be repeated here.

The plaintiffs have one remaining claim against the
Commissioner (Count I) brought pursuant to 42 U.S.C. § 1983.[1]
That claim arises from the Commissioner's policies and practices
with respect to involuntary emergency admission ("IEA") to the
state's mental health services system and the detention of
persons experiencing mental health crises who are certified for
IEA.  In Count I, the plaintiffs allege that the Commissioner is
denying them procedural due process in violation of the
Fourteenth Amendment by having them detained, while waiting for
space in a designated receiving facility, without being provided
a probable cause hearing.  They seek an injunction against the
Commissioner to stop that practice and to require the
Commissioner to provide procedural due process under the
Fourteenth Amendment.


## Discussion

The Commissioner moves to dismiss Count I as barred by the
Eleventh Amendment and for lack of standing under Article III.
The plaintiffs object, arguing that their claim is within the

---

[1] The plaintiffs have voluntarily dismissed their state law
claims against the Commissioner (Counts II and III).

exception to Eleventh Amendment immunity provided under Ex Parte Young, 209 U.S. 123 (1908).  They contend that they have Article III standing to bring their federal claim because the denial of their procedural due process rights is an injury in fact that is fairly traceable to the Commissioner and could be redressed by the relief they seek.

I.   Standard of Review

     The Commissioner's motion to dismiss challenges the court's subject matter jurisdiction and is brought pursuant to Federal Rule of Civil Procedure 12(b)(1).  Under Rule 12(b)(1), the court construes the allegations in the complaint liberally, treats all well-pleaded facts as true, and resolves inferences in the plaintiffs' favor. Jalbert v. U.S. Securities & Exchange Comm'n, 945 F.3d 587, 590-91 (1st Cir. 2019).  In addition to the complaint, the court may consider other evidence submitted by the parties without objection. Hajdusek v. United States, 895 F.3d 146, 148 (1st Cir. 2018).  The plaintiff, as the party invoking federal jurisdiction, bears the burden of showing that subject matter jurisdiction exists when challenged by a motion to dismiss on that ground. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

II.  Eleventh Amendment

The Commissioner contends that the plaintiffs' claim in Count I does not come within the exception to sovereign immunity provided by Ex Parte Young because the plaintiffs allege only a violation of state law and because the state, rather than the Commissioner, is the real party in interest.  The plaintiffs contend that that they allege a violation of procedural due process protected by the Fourteenth Amendment and that the Commissioner is the proper defendant.

In the absence of consent by the state, the Eleventh Amendment provides the state immunity from suit brought in federal court by citizens of that state or another state. Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  When a state official is sued, the suit is barred if "the state is the real, substantial party in interest." Id. at 101.  Congress's enactment of 42 U.S.C. § 1983 did not waive states' sovereign immunity to suit in federal court.  Spencer v. N.H. St. Police, 2019 WL 1546995, at *1 (D.N.H. Apr. 9, 2019).  Any waiver of sovereign immunity must be express. Blanchette v. Tretyakov, 2020 WL 4219787, at *3 (D. Mass. July 23, 2020).

"[A] suit challenging the constitutionality of a state official's action is not one against the State." Pennhurst, 465

U.S. at 102.  For that reason, claims for prospective injunctive
relief and declaratory judgments to stop an ongoing violation of
federal law by a state official may be brought against the state
official, sued in her official capacity.  Va. Office for
Protection & Advocacy v. Stewart, 563 U.S. 247, 255-56 (2011)
("VOPA"); Ex Parte Young, 209 U.S. at 156.  While federal courts
are authorized to require state officials to conform to federal
law, they are not authorized to require state officials to
conform to state law.  Pennhurst, 465 U.S. at 101-02.


        A.   Federal or State Law Claim

     The Commissioner contends that the plaintiffs' claim in
Count I only alleges a violation of New Hampshire law.  In her
reply, the Commissioner states: "It remains unclear to the
Commissioner how precisely the class plaintiffs believe Count I
asserts a Fourteenth Amendment violation."  Doc. no. 196, at *7.
The Commissioner further asserts that the complaint seeks relief
based on the requirements of RSA 135-C:31 and not based on the
Fourteenth Amendment.

     As the court stated in the order denying the Commissioner's
previous motion to dismiss, the plaintiffs' claim in Count I is
"that the Commissioner's psychiatric boarding practice violates
their right to procedural due process under the Fourteenth

Amendment."[2]  Doc. no. 147, at *12.  Under the Fourteenth
Amendment, "the fundamental requirement of due process is the
opportunity to be heard at a meaningful time and in a meaningful
manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  The
Supreme Court "repeatedly has recognized that civil commitment
for any purpose constitutes a significant deprivation of liberty
that requires due process protection."  Addington v. Texas, 441
U.S. 418, 425 (1979).  Individuals suffering from mental illness
have due process rights and cannot be deprived of their liberty
without procedural safeguards.  Zinermon v. Burch, 494 U.S. 113,
136-139 (1990); see also Foucha v. Louisiana, 504 U.S. 71, 86
(1992); Vitek v. Jones, 445 U.S. 480, 491-92 (1980).  "[T]o
determine whether a constitutional violation has occurred, it is
necessary to ask what process the State provided, and whether it
was constitutionally adequate."  Zinermon, 494 U.S. at 125-126.

The plaintiffs seek a declaratory judgment and a
prospective injunction to stop the Commissioner's practice of
failing to provide probable cause hearings within a reasonable
time.  The plaintiffs are challenging that practice as a
violation of the due process clause of the Fourteenth Amendment,
whether or not that practice also violates RSA chapter 135-C.

---

[2] The Commissioner did not move to reconsider that order,
and reconsideration is now untimely.

The plaintiffs' references in the amended complaint to the
three-day period for providing a probable cause hearing under
RSA 135-C:31 is their suggestion as to a reasonable amount of
time within which to provide a hearing, for purposes of
providing due process.  See, e.g., Addington, 441 U.S. at 431-32
(considering burdens of proof adopted by states in deciding the
constitutional minimum for civil commitment proceedings).  Those
references to the statute as a benchmark do not convert their
federal constitutional claim into a state law claim.

The Commissioner also argues that the claim is based on
state law because admission of an IEA-certified person to the
state's mental health services system is governed by RSA chapter
135-C.[3]  The court previously construed the applicable sections
of RSA chapter 135-C to mean that an IEA-certified person is
admitted into the state's mental health services system when the
IEA certificate is complete.  Although the Commissioner disputes
that result and will argue for a different interpretation before

---

[3] The Commissioner further argues, in her reply, that a
claim under the Fourteenth Amendment is not ripe because it is a
theoretical claim based on state law that has not been resolved
by the New Hampshire Supreme Court.  The court understands the
claim differently.

the New Hampshire Supreme Court, for purposes of this motion, that is the law of the case, at this point.[4]

Therefore, the plaintiffs' claim is a federal claim brought against a state official, seeking declaratory and prospective injunctive relief to stop alleged violations of the Fourteenth Amendment.

B.  Real Party in Interest

The Commissioner also contends that the State of New Hampshire is the real party in interest, making the claim subject to sovereign immunity under the Eleventh Amendment. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."  Pennhurst, 465 U.S. at 101.  As explained above, however, Ex Parte Young provides an exception

---

[4] In her reply, the Commissioner proposes that the court abstain from making a decision and stay the case under the Pullman abstention doctrine (Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941)) until the New Hampshire Supreme Court decides a pending case that raises issues about the interpretation of provisions in RSA chapter 135-C.  Eight months ago, before the court construed RSA chapter 135-C for purposes of the issues in this case, the court gave the parties an opportunity to certify questions of state law to the New Hampshire Supreme Court, and the parties declined that opportunity.  Now that the state law issues have been resolved against the Commissioner, she is seeking Pullman abstention. The question of abstention or a stay is more appropriately considered in the context of the Commissioner's motion to stay discovery and will be addressed there.

to that rule when a suit challenges the constitutionality of a
state official's action and seeks to enjoin an official's
unconstitutional future conduct. Pennhurst, 465 U.S. at 102.

The Ex Parte Young exception does not apply when the state
is the real and substantial party in interest, based on the
effect of the relief sought. VOPA, 563 U.S. at 255-56. A suit
is against the state, and not the official, "when the judgment
sought would expend itself on the public treasury or domain, or
interfere with public administration." Id. at 255. For that
reason, the Eleventh Amendment bars suits that seek damages or
payments from the state's treasury, seek specific performance of
a state contract, or raise the functional equivalent of a quiet
title action against the state. VOPA, 563 U.S. at 256-57; see
also Waterfront Comm'n of N.Y. Harbor v. Governor of New Jersey,
961 F.3d 234, 240-41 (3d Cir. 2020) (commission's suit to
reinstate its assessment authority deemed to be a claim for
specific performance and an action against the state not the
governor).

On the other hand, however, not all suits that may affect
state interests fall outside the Ex Parte Young exception.
Edelman v. Jordan, 415 U.S. 651, 668 (1974). When the terms of
the relief sought are prospective and the "consequences to state
treasuries . . . [are] the necessary result of compliance" with

constitutional requirements, "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in Ex parte Young." Id. Based on that principle, suits that require state officials to take actions with ancillary effects on state treasuries are not barred by the Eleventh Amendment.  See, e.g., Milliken v. Bradley, 433 U.S. 267, 289 (1977) (affirming court order requiring state officials, along with the school board, to implement remedial programs for school desegregation and share future costs ancillary to those programs); Hutto v. Finney, 437 U.S. 678, 691 (1978) (holding that court's enforcement power may include fines and an award of attorneys' fees as an ancillary effect of the prospective relief ordered); Boler v. Earley, 865 F.3d 391, 413-14 (6th Cir. 2017) (allowing claim for prospective injunctive relief against governor of Michigan to require services be provided to plaintiffs who were affected by the Flint water crisis despite ancillary financial effects); Lane v. Central Ala. Community College, 772 F.3d 1349, 1351 (11th Cir. 2014) (holding that suit claiming right to reinstatement to teaching position at state college did not violate Eleventh Amendment because payment of salary was a permissible ancillary effect); Curtis v. Oliver, --- F. Supp. 3d ---, 2020 WL 4734980 (D.N.M. Aug. 14, 2020) (ordering an account of ballots and

counting votes despite ancillary costs to the state); J.S.X.
Through D.S.X. v. Foxhoven, 361 F. Supp. 3d 822, 838-39 (S.D.
Iowa 2019) (finding no Eleventh Amendment protection for
director of state department of health and human services and
other state officials for claim seeking prospective injunctive
relief to improve care of civilly committed delinquent youths
despite ancillary costs to the state); Hunter v. Beshear, 2018
WL 564856, at *13 (M.D. Ala. Jan. 25, 2018) ("[I]t is well-
established that inadequate funding does not preclude a court
from holding state officers liable for constitutional
violations."); Doe v. Sylvester, 2001 WL 1064810, at *4 (D. Del.
Sept. 11, 2001) ("[A] suit for prospective relief against state
officials can be maintained under the Ex Parte Young doctrine
even when the necessary result of compliance with the injunction
will, as defendants assert here, cause the state to directly
expend substantial amounts of money.").


    1.  Terminology

The Commissioner argues that because the plaintiffs allege
actions by the state and DHHS, in addition to actions by the
Commissioner, the claim is against the state, not the
Commissioner.  The terminology issue was discussed at the
hearing on the Commissioner's previous motion to dismiss, held

on April 2, 2020.  Having noticed the various references in the amended complaint, the court asked the plaintiffs' counsel whether he intended to name the Commissioner as the defendant when he alleged actions by the state, and counsel responded that he did.  Counsel confirmed that the Commissioner, in her official capacity, was the real party defendant in the case.

The court then addressed the terminology issue in the order denying the Commissioner's previous motion to dismiss.  The court held that the plaintiffs' references to the state and DHHS, rather than the Commissioner, were intended as references to the Commissioner in her official capacity.  The Commissioner is the named defendant and is understood to be the defendant in this case.  Doc. no. 147, at *9.  The Commissioner did not move for reconsideration of that decision and has not shown any grounds to reconsider the decision now.

Therefore, the Commissioner's reliance on the plaintiffs' use of "state" and "DHHS" when they intended to refer to the Commissioner, which was addressed previously, is meritless.

2. Shared Responsibility

The Commissioner argues that the plaintiffs' claim seeks relief from the state because others are responsible for the circumstances that the plaintiffs are challenging and because

she cannot, acting alone, provide the relief the plaintiffs are
seeking.  In support of her motion, the Commissioner submitted
her affidavit in which she acknowledges that she is responsible
for supervising the mental health services system.  She asserts,
however, that her authority is not "absolute" because she must
rely on others to perform necessary actions and functions in the
system.

More specifically, the Commissioner contends that private
hospitals, law enforcement, and state courts are responsible for
providing hearings.  She contends the hospitals are responsible
because individuals experiencing mental health crises seek help
in hospital emergency departments, where the IEA-certification
process is administered when necessary, and she asserts that the
hospitals operate that process independently.[5]  The Commissioner
asserts that because law enforcement officers are tasked with
transporting IEA-certified persons to designated receiving
facilities, she cannot control that part of the process.  She

---

[5] Contrary to the Commissioner's arguments, the hospitals
have alleged that the Commissioner exerts considerable control
over their handling of the IEA-certification process.  For
example, the hospitals allege that the Commissioner directs them
not to transport IEA-certified persons when no bed is available
at a designated receiving facility, requires the hospitals to
board IEA-certified persons, and directs hospital personnel to
complete new IEA certificates every three days to avoid the
statutory obligation to provide probable cause hearings.  In
addition, the DHHS website directs persons experiencing mental
health crises to go to a hospital emergency department.

also asserts that she does not control the procedures through
which hearings are conducted by the courts.

By statute, DHHS is required to "establish, maintain,
implement, and coordinate a system of mental health services
under [RSA chapter 135-C]." RSA 135-C:3. The mental health
services system "shall be supervised by the Commissioner" of
DHHS. Id. Under her authority, the Commissioner may have DHHS
"directly operate and administer any program or facility which
provides, or which may be established to provide, services to
mentally ill . . . persons or may enter into a contract with any
individual, partnership, association, public or private, for
profit or nonprofit, agency or corporation for the operation
administration of any such program or facility." Id.

Therefore, as she acknowledges, the Commissioner is
responsible for supervising and administering New Hampshire's
mental health services system.[6] Although the Commissioner may
rely on others to perform certain actions and functions for
purposes of operating the mental health system, that reliance

---

[6] The legislature has also recognized that it is the
Commissioner's responsibility and authority to address the
issues raised in this case. The legislature has directed her to
"initiate emergency rulemaking consistent with either the first
decision on the merits [in this case] or the court-approved
agreement. The commissioner shall adopt such rules within 90
days of initiating rulemaking." RSA 151:2-h.

does not relieve her of her statutory authority and
responsibility to supervise and administer the mental health
system.  As the responsible state actor, the Commissioner is
bound by the due process requirements of the Fourteenth
Amendment, including the requirement that persons deprived of a
liberty interest be afforded a hearing within a reasonable
amount of time.

The plaintiffs challenge the Commissioner's practice of not
providing probable cause hearings to IEA-certified persons
detained in hospital emergency departments within a reasonable
amount of time.  That practice is the Commissioner's
responsibility.  The plaintiffs are seeking an injunction to
stop the Commissioner from continuing that practice, which is
relief that falls within the exception to sovereign immunity
under Ex Parte Young.

### 3.  Claims against Circuit Court

The Commissioner also contends that the claim is barred
because the plaintiffs sought relief in Count I against the
circuit court and, therefore, the claim is really against other
branches of government.  For that reason, the Commissioner
argues that she cannot provide complete relief.

The plaintiffs named the Administrative Judge of the New Hampshire Circuit Court as a necessary party in order to facilitate a resolution of the issues they were raising.  They did not seek any relief from the Administrative Judge or the circuit court.  In any event, the Administrative Judge has been dismissed as a party.  See Doc. no. 100.

To the extent the Commissioner argues that she cannot provide probable cause hearings because the circuit court controls its docket, that is not at issue in this case. Contrary to the Commissioner's argument, the specific procedures and mechanisms through which hearings are scheduled and held is not being challenged.  What is being challenged is the Commissioner's practice of detaining IEA-certified persons in private hospitals without providing probable cause hearings within a reasonable period of time.  The plaintiffs seek an injunction to stop that practice.  Therefore, the plaintiffs' allegations that refer to the circuit court do not cause the claim to be against the state rather than the Commissioner.

### 4.   Interference in Administration

The Commissioner also contends that an injunction would interfere with her administration of the mental health services system, which is a violation of sovereign immunity.  She argues

that since the court's order on her previous motion to dismiss, which ruled that involuntary emergency admission into the mental health system occurs when an IEA-certificate is complete, a schism has developed in state court orders on the interpretation of RSA chapter 135-C.  That schism, the Commissioner asserts, "has destabilized the state mental health services system by causing similarly situated individuals in the midst of acute mental health crises to be treated differently based solely on the construction of the statute a particular judge adopts." Doc. no. 185-1, at *14.

The Commissioner contends that the injunction the plaintiffs seek would further the schism and argues that it is necessary to preserve her current practice to avoid inconsistency and uncertainty in the mental health services system.  She also contends that the court's interpretation of state law is contrary to applicable DHHS regulations and that if the plaintiffs were granted the relief they seek, she would have to overhaul her regulations.  For those reason, she contends that the Eleventh Amendment precludes an injunction that would require her to comply with federal law if that would conflict with her current practice, the decisions of some state court judges, and DHHS's existing regulations.  The court disagrees.

As is noted above, the legislature has directed the
Commissioner to promulgate rules on an emergency basis, if
necessary to conform to a final decision in this case.  RSA
151:2-h.  Further, the Commissioner must conform her policies
and practices to the requirements of the constitution and cannot
continue a practice that violates the Fourteenth Amendment, even
if maintaining the practice would, as she asserts, promote
consistency, certainty, and other official policies.  The
exception provided under Ex Parte Young includes relief that
would block official efforts to implement policies "when those
efforts violate or imminently threaten to violate the
plaintiff's constitutional rights and the plaintiff confines its
request to the proper form of relief."  Town of Barnstable v.
O'Connor, 786 F.3d 130, 140 (1st Cir. 2015); see also Williams
on behalf of J.E. v. Reeves, 954 F.3d 729, 739 (5th Cir. 2020).

To the extent the Commissioner is concerned about
additional costs ancillary to providing hearings, that does not
necessarily convert the claim to one against the state.  Any
additional effort or expense would be ancillary to the necessity
of providing probable cause hearings in order to comply with the
requirements of the Fourteenth Amendment.  To the extent the
Commissioner argues that she will be required to provide
additional beds in designated receiving facilities or new

18

facilities in order to accommodate IEA-certified persons, that
is beyond the scope of the plaintiffs' claim in this case.  The
plaintiffs are seeking probable cause hearings while they are
detained in hospital emergency departments and have not sought
an order to require the Commissioner to expand DHHS's
facilities.

Therefore, the plaintiffs' claim is within the exception to
sovereign immunity provided by Ex Parte Young.


III.  Standing

The Commissioner argues that Count I must be dismissed
because the plaintiffs lack Article III standing to maintain the
claim.  Under Article III of the Constitution, federal courts
are limited to deciding "'cases and controversies of the sort
traditionally amenable to, and resolved by, the judicial
process.'"  Amrhein v. eClinical Works, LLC, 954 F.3d 328, 330
(1st Cir. 2020) (quoting Steel Co. v. Citizens for a Better
Env't, 523 U.S. 83, 102 (1998)).  To qualify under that
requirement, plaintiffs must show that they have standing.  Id.

"To have standing, a plaintiff must present an injury that
is concrete, particularized, and actual or imminent; fairly
traceable to the defendant's challenged action; and redressable
by a favorable ruling."  Dept. of Commerce v. New York, 139 S.

Ct. 2551, 2565 (2019).  In particular, the Commissioner contends
that the plaintiffs failed to allege an injury that is fairly
traceable to her actions or that the injury is likely to be
redressed by the injunction they seek.

A.  Fairly Traceable

The Commissioner contends that because others are involved
in the IEA certification process, and in detaining IEA-certified
persons, and would be involved in providing hearings, the
plaintiffs' injuries are not fairly traceable to her.  When a
plaintiff's injury depends on a causal chain of events that
includes the independent actions of third parties along with the
defendant, the resulting injury may not be fairly traceable to
the defendant.  Dantzler, Inc. v. Empresas Berrios Inventory &
Operations, Inc., 958 F.3d 38, 48 (1st Cir. 2020).  The causal
chain is broken when actions or decisions by independent third
parties might or might not occur, so that the cause of the
anticipated injury to the plaintiff is merely speculative.[7]

---

[7] The injury alleged in Dantzler was that the plaintiffs,
shippers who used ocean freight carriers to import goods, were
losing money because of fees charged by the freight carriers
that were imposed to pay the fees collected from the freight
carriers for the Puerto Rico Ports Authority's scanning program.
Dantzler, 958 F.3d at 42.  The court found the injury was not
fairly traceable to the Ports Authority because the plaintiffs'
allegations were only that the freight carriers might pass the
cost along, not that they were required to do so.  Id. at 48-49.

Id.  For that reason, when an injury is indirect, the plaintiff may have a difficult time showing a causal chain.  Id.

The Commissioner argues that the injuries the plaintiffs allege are "attributable to a collective of state and private actors."  Doc. no. 185-1, at *24.  In support, she cites that part of the plaintiffs' amended complaint in which they describe an unsuccessful pilot program to provide probable cause hearings and other efforts to remedy the problems caused by the Commissioner's practice of having IEA-certified persons detained in hospital emergency departments without probable cause hearings.

As is explained above in the context of sovereign immunity, the Commissioner, by statute, is responsible for supervising and administering the New Hampshire mental health services system. To the extent others participate in that process and their assistance may be necessary to the process, the ultimate responsibility falls to the Commissioner.  As the plaintiffs allege, it is the Commissioner's failure to provide probable cause hearings that is at issue in this case.[8]

---

[8] The plaintiffs allege in the amended complaint that the Commissioner "abandons [IEA-certified] patients and compels them to detention in [private hospital] emergency rooms . . . often for weeks at a time without providing them with a lawyer or ability to contest their detention."  Doc. no. 78, Am. Comp., ¶ 71.

The Commissioner does not challenge the plaintiffs' injury in fact.  The injury alleged by the plaintiffs, the lack of probable cause hearings within a reasonable amount of time for IEA-certified persons detained in hospital emergency departments, is fairly traceable to the Commissioner.

B.   Redressable by a Favorable Decision

To satisfy the redressability requirement, the plaintiffs must allege facts to show "that the court can fashion a remedy that will at least lessen [their] injury."  Dantzler, 958 F.3d at 49.  If the remedy sought depends mostly or entirely on the actions of third parties, who are not parties in the case, the court probably cannot provide a remedy to lessen the injury. Id.  When the plaintiff challenges a practice as unconstitutional, a court can redress the injury by an injunction without ordering any particular system or means by which to change the challenged practice.  Lyman v. Baker, 954 F.3d 351, 362 (1st Cir. 2020).

The Commissioner argues that the plaintiffs have not alleged redressability because a chain of public and private actors would be involved in providing probable cause hearings for IEA-certified persons held in hospital emergency departments.  As is addressed above, to the extent others may be

involved in the procedures necessary to provide probable cause hearings to IEA-certified persons who are detained in hospital emergency rooms, the Commissioner bears the ultimate responsibility for supervising and administering the mental health services system, including the procedures necessary to provide due process to IEA-certified persons.  The court can redress a constitutional injury through an injunction without ordering a specific process.  For that reason, the relief the plaintiffs seek, an injunction to stop the Commissioner's practice of detaining IEA-certified persons without providing hearings, will redress their injury.

The plaintiffs have standing to maintain their claim in Count I.


### Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss Count I (document no. 185) is denied.

SO ORDERED.


Joseph A. DiClerico, Jr.
United States District Judge

December 18, 2020

cc:  Counsel of record.