UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe, et al.

    v.            Civil No. 18-cv-1039-JD
                    Opinion No. 2021 DNH 001
Commissioner, New Hampshire
Department of Health and Human
Services

O R D E R

Four individual plaintiffs brought suit, challenging practices used by the Commissioner of the New Hampshire Department of Health and Human Services ("the Commissioner") and four New Hampshire hospitals to involuntarily detain individuals who experience mental health crises and seek treatment in hospital emergency rooms.[1]  The New Hampshire Hospital Association and twenty hospitals ("the hospitals") were granted leave to intervene in the action to bring claims against the Commissioner.[2]  The Commissioner moves to dismiss the hospitals' remaining claims for lack of subject matter jurisdiction, asserting sovereign immunity under the Eleventh Amendment and a lack of standing.  The hospitals object.

---

[1] The plaintiffs' action was filed as a putative class action against the Commissioner, and a plaintiff class has now been certified for purposes of the plaintiffs' federal claim against the Commissioner, Count I.

[2] The hospitals have voluntarily dismissed their state law claims, Counts IV and V, without prejudice.

Background

The detailed factual background in this case, as alleged in the hospitals' amended complaint, was provided in the court's order denying the Commissioner's previous motion to dismiss, document number 148, and will not be repeated here.

The hospital plaintiffs are the New Hampshire Hospital Association, Alice Peck Day Memorial Hospital, Androscoggin Valley Hospital, Catholic Medical Center, Cheshire Medical Center, Concord Hospital, Cottage Hospital, Elliot Hospital, Frisbie Memorial Hospital, HCA Health Services of New Hampshire (Parkland Medical Center and Portsmouth Regional Hospital), Huggins Hospital, Littleton Hospital Association (Littleton Regional Healthcare), LRGHealthcare (Franklin Regional Hospital and Lakes Region General Hospital), Mary Hitchcock Memorial Hospital, Monadnock Community Hospital, New London Hospital, Southern New Hampshire Medical Center, Speare Memorial Hospital, Upper Connecticut Valley Hospital, Valley Regional Hospital, and Weeks Medical Center.  The hospitals name the Commissioner in her official capacity as the defendant in this case.

The hospitals' allege that the Commissioner requires the hospitals to examine, evaluate, and board psychiatric patients, who are subject to involuntary emergency admission ("IEA") certification, until such time as they are transported to a

designated receiving facility. The hospitals bring three federal claims against the Commissioner, pursuant to 42 U.S.C. § 1983, alleging that the Commissioner's practice of boarding IEA-certified persons in their emergency departments is violating their constitutional rights.

In Count I, the hospitals allege that the Commissioner's boarding practice constitutes an unlawful taking of their property for public use in violation of the Fifth and Fourteenth Amendments. In Count II, they allege that the practice interferes with their possessory rights in their emergency departments which constitutes an unreasonable seizure of their property in violation of the Fourth Amendment. In Count III, they allege that the practice violates their rights to procedural and substantive due process under the Fourteenth Amendment by seizing and taking their property and denying them their fundamental right to use their emergency departments. The hospital plaintiffs seek a declaration that the Commissioner's practice violates their federal constitutional rights and a permanent injunction against the practice. They also are requesting nominal damages and attorneys' fees and costs.

## Discussion

The Commissioner moves to dismiss the hospitals' claims on the grounds that the claims are barred by sovereign immunity

under the Eleventh Amendment and that the hospitals lack standing to bring the claims. The hospitals object, arguing that the exception to sovereign immunity provided under Ex Parte Young, 209 U.S. 123 (1908), applies to their claims. They also argue that they have standing to bring their claims.

I. Standard of Review

The Commissioner's motion to dismiss challenges the court's subject matter jurisdiction and is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), the court construes the allegations in the complaint liberally, treats all well-pleaded facts as true, and resolves inferences in the plaintiffs' favor. Jalbert v. U.S. Securities & Exchange Comm'n, 945 F.3d 587, 590-91 (1st Cir. 2019). In addition to the complaint, the court may consider other evidence submitted by the parties without objection. Hajdusek v. United States, 895 F>3d 146, 148 (1st Cir. 2018). The plaintiff, as the party invoking federal jurisdiction, bears the burden of showing that subject matter jurisdiction exists when challenged by a motion to dismiss on that ground. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

4

II. Eleventh Amendment

The Commissioner contends that sovereign immunity under the Eleventh Amendment bars the hospitals' claims and that the exception under Ex Parte Young does not apply. Specifically, the Commissioner argues that the state is the real party in interest. She also argues that Count III, which alleges a violation of procedural and substantive due process, is based solely on allegations that she is violating New Hampshire law. Further, the Commissioner argues that the Eleventh Amendment bars the hospital's claim for nominal damages.

In the absence of consent by the state, the Eleventh Amendment provides the state immunity from suit brought in federal court by citizens of that state or another state. Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). When a state official is sued, the suit is barred if "the state is the real, substantial party in interest." Id. at 101. Congress's enactment of 42 U.S.C. § 1983 did not waive states' sovereign immunity to suit in federal court. Spencer v. N.H. St. Police, 2019 WL 1546995, at *1 (D.N.H. Apr. 9, 2019). Any waiver of sovereign immunity must be express. Blanchette v. Tretyakov, 2020 WL 4219787, at *3 (D. Mass. July 23, 2020).

"[A] suit challenging the constitutionality of a state official's action is not one against the State." Pennhurst, 465 U.S. at 102. For that reason, claims for prospective injunctive

5

relief and declaratory judgments to stop an ongoing violation of federal law by a state official may be brought against the state official, sued in her official capacity. Va. Office for Protection & Advocacy v. Stewart, 563 U.S. 247, 255-56 (2011) ("VOPA"); Ex Parte Young, 209 U.S. at 156. While federal courts are authorized to require state officials to conform to federal law, they are not authorized to require state officials to conform to state law. Pennhurst, 465 U.S. at 101-02.

    A.   Real Party in Interest

The Commissioner contends that the state is the real party in interest for purposes of the hospitals' claims. In support, the Commissioner relies on the same arguments that she made in her memorandum in support of her motion to dismiss the class plaintiffs' federal due process claim (Count I in their amended complaint). See doc no. 186, at *8; compare doc. no. 186, at *7-*16 with doc. no. 185, at *8-*17; see also doc. no. 197, ¶ 1. The Commissioner argues that others are responsible for providing actions and functions necessary to transfer IEA-certified persons to designated receiving facilities and to hold probable cause hearings. She contends that because she cannot control all of the pertinent actors, the claims are brought against the state and not against her in her official capacity.

6

1. <u>Shared Responsibility</u>

As the hospitals state in their amended complaint, under New Hampshire law, "[t]he involuntary emergency admission of a person **shall be to the state mental health services system under the supervision of the [DHHS] commissioner**." Am. Compl., doc. no. 77, at *2 (quoting RSA 135-C:28, I). However, the state does not provide emergency services for persons experiencing mental health crises. Instead, as the hospitals allege, the Commissioner directs such persons to the emergency departments of private hospitals, where approved hospital personnel are tasked with examining them and completing an IEA certificate if necessary.³ When the Commissioner lacks space in a designated receiving facility for an IEA-certified person, the Commissioner requires the hospitals to board the person until space becomes available. The hospitals further allege that the Commissioner requires their personnel to conduct IEA examinations every three days during the boarding period in order to issue new IEA certificates. In addition, they allege that the Commissioner's failure to provide probable cause hearings for the IEA-certified persons while they are boarded in hospital emergency rooms contributes to the length of the boarding period.

---

³ As a condition of their licenses, hospitals in New Hampshire are required to operate emergency departments seven days a week and twenty-four hours per day. RSA 151:2-g.

The hospitals allege that the Commissioner, in her official capacity, is violating their Fourth, Fifth, and Fourteenth Amendment rights through her policies and practices with respect to persons who are experiencing mental health crises and are certified for involuntary emergency admission to the mental health services system. They allege that the Commissioner's boarding practice is a taking without just compensation in violation of the Fifth Amendment, constitutes unreasonable interference with their possessory interest in their emergency departments in violation of the Fourth Amendment, and violates their procedural and substantive due process rights protected under the Fourteenth Amendment.

The Commissioner is responsible for supervising and administering the state's mental health services system and the participation of others in the process does not relieve her of that responsibility. See discussion in doc. no. 201, at *12-*15.

### 2. Other Arguments

Similarly, the Commissioner's other arguments in support of her position that the state is the real party defendant were addressed in the prior order and were decided against her. See doc. no. 201, at *15-*19. Her argument that the circuit court is responsible for providing hearings does not implicate the state as the real party in interest. See id. at *15-*16. Any

purported disruption in the Commissioner's boarding practice in order to conform her policies and practices to constitutional requirements does not convert the hospitals' claims into claims against the state. See id. at *16-*18. Further, funding that is ancillary to an injunction to stop violations of plaintiffs' constitutional rights does not make the claims fall outside the exception to sovereign immunity provided by Ex Parte Young. See id. at *18-*19.

Therefore, the Commissioner in her official capacity is the defendant in this case.

B. State Law or Federal Law

As is noted above, the exception provided by Ex Parte Young does not apply to claims seeking enforcement of state law. Pennhurst, 465 U.S. at 106. The Commissioner argues that the hospitals' due process claim in Count III alleges only a violation of state law, RSA chapter 135-C.[4] In support, she cites one part of the hospitals' requests for relief in their amended complaint and states in her reply that the claim is based solely on allegations of state law violations.

---

[4] The Commissioner does not challenge Counts I or II on the ground that the hospitals allege only a violation of state law.

9

1. Relief Requested

In Count III of their amended complaint, the hospitals state that they "seek a declaration that [the Commissioner's] conduct, policy and practice violate the Hospitals' Fourteenth Amendment substantive and procedural due process rights." Doc. 77, ¶ 112. They also "seek a permanent injunction enjoining [the Commissioner] from continuing [her] policy, and practice." Id. As part of the final section of the amended complaint in the request for relief, which the Commissioner cites, the hospitals ask the court to declare violations of their constitutional rights and seek an injunction to stop the Commissioner's alleged violations of state law. Doc. 77, at *32-*33.

Although the request at the end of the amended complaint is limited to an injunction to stop violations of state law, in Count III, the hospitals have requested an injunction to stop the Commissioner's continuing violation of their Fourteenth Amendment due process rights and ask for a declaratory judgment that the Commissioner is violating their Fourteenth Amendment rights. Therefore, the Commissioner is mistaken that the hospitals failed to request relief based on federal law. As previously stated, although a federal court cannot enjoin violations of state law, under Ex Parte Young, a federal court

10

can enjoin a state official sued in her official capacity from continuing to violate the federal constitution.

### 2. Violations of State Law

To the extent the Commissioner challenges Count III as alleging only a violation of state law, that is not the claim the hospitals allege. In Count III, the hospitals allege that the Commissioner's boarding practice is violating their substantive and procedural due process rights protected by the Fourteenth Amendment.

Although the hospitals refer to the state statutory requirement that the Commissioner immediately transport IEA-certified persons to designated receiving facilities, that reference is not the basis of the hospitals' claim but rather refers to the Commissioner's responsibilities under state law. The constitutional violation they allege is that IEA-certified persons are not transported to designated receiving facilities in a timely fashion and instead the Commissioner requires the hospitals to board those persons in hospital emergency departments indefinitely without any state procedure to allow the hospitals to challenge that boarding practice. As such, the hospitals allege a federal claim that the Commissioner's boarding practice violates the due process clause of the Fourteenth Amendment.

C.  Nominal Damages

In addition to declaratory and injunctive relief, the hospitals seek an award of nominal damages in their federal claims (Counts I, II, and III).  The Commissioner moves to dismiss the claims for nominal damages as barred by sovereign immunity.  The hospitals did not object or even address that part of the motion to dismiss.

The Commissioner, when sued in her official capacity, is entitled to sovereign immunity from suit brought in federal court by citizens of New Hampshire.  Pennhurst, 465 U.S. at 100.  That immunity includes a bar against nominal damages.  Am. Civil Liberties Union of Mass. V. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 n.7 (1st Cir. 2013).  The hospitals cite no exception to sovereign immunity that would permit that relief here.

Therefore, the hospitals' claims for nominal damages are dismissed.

II. Standing

The Commissioner contends that the hospitals lack Article III standing to maintain their federal claims.  Under Article III of the Constitution, federal courts are limited to deciding "'cases and controversies of the sort traditionally amenable to,

and resolved by, the judicial process.'" Amrhein v. eClinical Works, LLC, 954 F.3d 328, 330 (1st Cir. 2020) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998)).  Part of the case or controversy requirement is that plaintiffs must have standing to maintain the claims alleged.  Id.

"To have standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling."  Dept. of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019).  The Commissioner does not challenge the existence of the hospitals' injury.  She contends that the hospitals failed to allege an injury that is fairly traceable to her actions or that the injury is likely to be redressed by the injunction she seeks.

A.  Fairly Traceable

The Commissioner contends that the hospitals' injuries are not fairly traceable to her because they allege that a number of third parties, rather than the Commissioner, caused them.  When a plaintiff's injury depends on a causal chain of events that includes the independent actions of third parties along with the defendant, the resulting injury may not be fairly traceable to the defendant.  Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 48 (1st Cir. 2020).  The causal

chain is broken when actions or decisions by independent third parties might or might not occur, so that the cause of the anticipated injury to the plaintiff is merely speculative.[5] Id.  For that reason, when an injury is indirect, the plaintiff may have a difficult time showing a causal chain.  Id.

In support, the Commissioner points to paragraphs in the hospitals' amended complaint which she contends show that the injuries were caused by third parties.  In the referenced paragraphs, the hospitals cite a 2017 report about the numbers of psychiatric patients waiting in hospital emergency departments, discuss a failed pilot program to provide probable cause hearings, and allege that DHHS's ten year plan proposes that the hospitals provide probable cause hearings for IEA-certified persons.  Those allegations do not establish, as the Commissioner represents, that the hospitals allege injury caused by others' actions.

The hospitals' position is that the Commissioner's failure to remove IEA-certified persons immediately after the

---

[5] The injury alleged in Dantzler was that the plaintiffs, shippers who used ocean freight carriers to import goods, were losing money because of fees charged by the freight carriers that were imposed to pay the fees collected from the freight carriers for the Puerto Rico Ports Authority's scanning program. Dantzler, 958 F.3d at 42.  The court found the injury was not fairly traceable to the Ports Authority because the plaintiffs' allegations were only that the freight carriers might pass the cost along, not that they were required to do so.  Id. at 48-49.

certificate is completed is an injury fairly traceable to her. In response, the Commissioner focuses narrowly on the transportation of IEA-certified persons. She argues that transportation is not her responsibility and that instead transport of IEA-certified persons is up to law enforcement, which the hospitals could arrange themselves under RSA 135-C:63.[6]

The Commissioner's theory misconstrues the hospitals' allegations. Rather, the hospitals do not allege any failure on the part of law enforcement to transport patients. The hospitals are alleging that the Commissioner's boarding practice, which requires them to board IEA-certified persons because they cannot be immediately transferred to designated receiving facilities, violates their federal constitutional rights.

To the extent others participate in the IEA-certification process and in providing other actions and functions necessary for mental health services, the ultimate responsibility for the mental health services system falls on the Commissioner. The hospitals allege that their injury is directly caused by the Commissioner's practice of directing persons experiencing mental

---

[6] RSA 135-C:62 and :63 give authority to law enforcement officers to take custody of and transport IEA-certified persons "[e]xcept as provided in RSA 135-C:29." The Commissioner has not shown how those statutes affect the hospitals' claims in this suit.

15

health crises to private hospitals and then requiring the hospitals to board IEA-certified patients indefinitely and to renew the certificates every three days without providing probable cause hearings.  The injury as alleged by the hospitals is fairly traceable to the Commissioner's boarding practice.

    B.    Redressable by a Favorable Decision

To satisfy the redressability requirement, the hospitals must allege facts to show "that the court can fashion a remedy that will at least lessen [their] injury." Dantzler, 958 F.3d at 49.  If the remedy sought depends mostly or entirely on the actions of third parties, who are not parties in the case, the court probably cannot provide a remedy to lessen the injury. Id.  When the plaintiff challenges a practice as unconstitutional, a court can redress the injury by an injunction without ordering any particular system or means by which to change the challenged practice. Lyman v. Baker, 954 F.3d 351, 362 (1st Cir. 2020).

The Commissioner argues that the hospitals have not alleged redressability because others would be involved in resolving the issues raised by the hospitals' claims.  As is addressed above, to the extent others may be involved in the procedures necessary to eliminate the Commissioner's boarding practice, the Commissioner bears the ultimate responsibility for supervising

and administering the mental health services system and for correcting any constitutional deficiencies that may be found to exist. An injunction need not specify a specific means to change the challenged practice, if it is found to violate the constitution.

Further, as the hospitals point out, to be redressable, they need only show that the relief they request would at least lessen their injury. They contend that "[i]f a favorable ruling only resulted in the Commissioner directing persons to commence the IEA process with a visit to [New Hampshire Hospital], a [designated receiving facility], or a local hospital emergency department, the Hospitals' injuries could be ameliorated." Doc. 199, at *4. They also contend that a favorable ruling could require the Commissioner to fill the available beds in designated receiving facilities. In either event, the hospitals argue, the result would reduce the number of IEA-certified persons subject to boarding in their emergency departments. The hospitals, therefore, have alleged a redressable injury.

The hospitals have standing to maintain their claims in Counts I, II, and III.

Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss (document no. 186) is granted as to the hospitals' claims for nominal damages and is otherwise denied.

SO ORDERED.

*Joseph A. DiClerico, Jr.* (signature)
Joseph A. DiClerico, Jr.
United States District Judge

January 4, 2021

cc: Counsel of record.