## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

<u>John Doe, et al.</u>

v.

Civil No. 18-cv-1039-LM
Opinion No. 2023 DNH 020 P

<u>Commissioner, New Hampshire</u>
<u>Department of Health and</u>
<u>Human Services</u>

# O R D E R

Four individual plaintiffs brought a putative class action against the

Commissioner of the New Hampshire Department of Health and Human Services,

challenging the Commissioner's practice of boarding individuals experiencing

mental health crises in hospital emergency rooms without timely probable cause

hearings.  A group of New Hampshire hospitals ("Hospitals") intervened in the

action to bring claims against the Commissioner that challenge the Commissioner's

boarding practice, because of its effect on the Hospitals.[1]  Currently before the court

---

[1] In the Hospitals' amended complaint, they name the New Hampshire
Hospital Association as a plaintiff along with twenty hospitals, two of which were
healthcare groups comprised of two hospitals each.  Doc. no. 77 at 1.  One of the
healthcare groups, LRGHealthcare, which included Franklin Regional Hospital and
Lakes Region General Hospital, was voluntarily dismissed on April 6, 2022, and
that change left one healthcare group, eighteen individual hospitals, and the New
Hampshire Hospital Association.  For purposes of the current motion for summary
judgment, however, the Hospitals now omit the New Hampshire Hospital
Association and list as plaintiffs fifteen individual hospitals along with HCA Health
Services of New Hampshire (Frisbie Memorial Hospital, Parkland Medical Center,
and Portsmouth Regional Healthcare, although Frisbie Memorial Hospital was
listed separately in the Amended Complaint).  Doc. no. 77 at 1; Doc. no. 228-1 at 1.
In the motion and memorandum, the hospitals state: "The Hospitals are **eighteen**
not-for-profit, acute-care hospitals licensed by Defendant Commissioner Shibinette

is the Hospitals' motion for summary judgment on Count II of their amended complaint in which they allege that the Commissioner's boarding practice violates the Fourth Amendment.  The Commissioner opposes summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "'carries with it the potential to affect the outcome of the suit.'"  French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)).  A genuine factual dispute exists if "a reasonable jury could resolve the point in the favor of the non-moving party."  Id.

The court construes the summary judgment record in the light most favorable to the nonmoving party.  Benson v. Wal-Mart Stores East, L.P., 14 F.4th 13, 17 (1st Cir. 2021). In addition, when the moving party also bears the burden of proof on the issue, that party must provide conclusive evidence showing that "no reasonable fact-finder could find other than in its favor."  Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009); see also Photographic Illustrators Corp. v. Orgill, Inc., 953 F.3d 56, 65 (1st Cir. 2020).

---

('Commissioner'), and members of the New Hampshire Hospital Association."  Doc. no. 228, at 1 n.1 & doc. no. 228-1 at 1, n.1.

## BACKGROUND

The class plaintiffs in this case bring a claim against the Commissioner under the Fourteenth Amendment, alleging that her practice of boarding the state's mental health patients in hospital emergency rooms without probable cause hearings violates their rights to due process.  The Hospitals intervened in the action and bring three claims that challenge the Commissioner's boarding practice as violations of their rights under the Fifth, Fourth, and Fourteenth Amendments.  The Hospitals seek summary judgment on their Fourth Amendment claim, Count II.

Private hospitals in New Hampshire, including the Hospitals who brought this suit, are required to operate an emergency department 24 hours per day and 7 days per week.  See RSA 151:2-g.  Under Department of Health and Human Services ("DHHS") regulations, hospital emergency departments are required to provide emergency treatment for behavioral health issues, which include mental health issues.  N.H. Admin. R. He-P 802.03(af).  The Hospitals are licensed and have the requisite emergency departments.  Doc. no. 241-2 ¶¶ 3-9.

Persons who are experiencing mental health emergencies or crises present in the Hospitals' emergency departments for help.  In that situation, members of the Hospitals' emergency department staff examine those persons to determine, among other things, whether they should be certified for involuntary emergency admission ("IEA") to the state's mental health services system.  The Hospital's claim in Count II arises from the Commissioner's failure to immediately receive IEA-certified patients into the state's facilities, which causes IEA-certified patients to be boarded

in the Hospitals' emergency departments.  The Hospitals contend that the Commissioner's practice of boarding her IEA-certified patients in their emergency departments constitutes an unreasonable seizure of their property in violation of the Fourth Amendment.

A. Legal Framework of IEA Certification

This court, the New Hampshire Supreme Court, and the First Circuit Court of Appeals have all addressed the statutory scheme applicable to IEA certification. See Doe v. Commissioner, No. 18-cv-1039-JD, 2020 DNH 070, 2020 WL 2079310, at *6-*11  (D.N.H. Apr. 30, 2020); Doe v. Commissioner, 174 N.H. 239, 248-51 (2021); Doe v. Shibinette, 16 F.4th 894, 897-98  (1st Cir. 2021).  A summary of that framework follows.

**State mental health system.**  RSA chapter 135-C is entitled: "New Hampshire Mental Health Services System."  RSA 135-C (2015).  Under that chapter, DHHS is authorized to "[e]stablish, maintain, and coordinate a comprehensive, effective, and efficient system of services for persons with mental illness."  RSA 135-C:1,I(a) & 135-C:3.  The Commissioner supervises and DHHS maintains and administers the state mental health services system.  RSA 135-C:3.

**Involuntary emergency admissions.**  The state system provides for voluntary and involuntary and emergency and nonemergency admissions under RSA 135-C.  Doe, 174 N.H. at 248.  Only IEAs are at issue in this case.  IEAs are governed by RSA 135-C:27-:33.

**IEA Eligibility.**  A person is eligible for IEA if his mental condition poses "a likelihood of danger to himself or others."  RSA 135-C:27.  The statute defines "danger to himself" to include attempting or threatening suicide, and "danger to others" if within a certain number of days the person "has inflicted, attempted to inflict, or threatened to inflict serious bodily harm on another."  RSA 135-C:27, I-II. Upon completion of the IEA certificate, the person is deemed by law to be admitted into "the state mental health services system under the supervision of the Commissioner."  Doe, 174 N.H. at 252.  The IEA certificate must identify the receiving facility in the state mental health services system where the IEA-certified patient "shall be admitted."  RSA 135-C:28, I.

**Approved medical providers.**  The individual responsible for making the IEA determination (and issuing the IEA certificate) is called an "approved medical provider."  That medical provider can be an "approved physician, approved PA, or approved APRN."  RSA 135-C:28, I.  One must qualify to be an approved medical provider, and the Commissioner is required to maintain a list of approved medical providers.  N.H. Admin. R. He-M 614.06(a).  Approved medical providers are acting as part of the state system when conducting the IEA-certification process.  Doe, 174 N.H. at 258; see also Doe v. Shibinette, 16 F.4th at 900.

**Immediate delivery of patient to receiving facility.**  The IEA certificate must identify the receiving facility and the patient "must be delivered immediately to the facility identified in the certificate."  Doe, 174 N.H. at 252 (citing RSA 135-C:29, II).  Indeed, the patient's "admission to the state mental health services

system and delivery to a receiving facility are to take place nearly simultaneously." Id.; see also N.H. Admin. R. He-M 614.08(a). A receiving facility includes the New Hampshire State Hospital and other facilities approved by the Commissioner "for the care, custody, and treatment" of IEA certified patients. RSA 135-C:26, I. These are known as "designated receiving facilities." Id. Although approved medical providers conduct the IEA-certification process in a private hospital, they do so as part of the state mental health system and do not admit IEA-certified patients into the private hospitals. Doe, 174 N.H. at 252.[2]

**Probable cause hearing within 3 days of IEA certificate.** A probable cause hearing must be held "within 3 days" after an IEA certificate is completed "in the [circuit court] having jurisdiction to determine if there was probable cause for involuntary emergency admission." RSA 135-C:31, I.[3] The IEA-certified patient is entitled to notice of his or her right to be represented by counsel and to appointed counsel if indigent. RSA 135-C:30, I-IV. The patient must be given written notice of these rights within 12 hours of certification. Id.

**Boarding IEA-certified patients indefinitely is not permitted.** "Nothing in the statutory scheme allows a person to be held indefinitely pending delivery to a receiving facility." Doe, 174 N.H. at 252. Nevertheless, an IEA-

---

[2] It is undisputed that private hospitals in New Hampshire, including the Hospitals that are plaintiffs in this case, are not state facilities.

[3] The New Hampshire Supreme Court clarified that "although RSA chapter 135-C refers to the 'district court' and the 'probate court,' those references are 'deemed to be to the New Hampshire circuit court' pursuant to RSA 490-F:18." Doe, 174 N.H. at 250, n.1.

certified patient is not free to leave.  Id.  Instead, that person "is deemed to be in the custody of DHHS" and "may be released only if the certificate is rescinded . . . ." Id. at 253 (quoting RSA 135-C:29-a).  In summary, a person who is subject to an IEA certificate "'is admitted to the state mental health services system under the supervision of the commissioner and is at that point placed in the custody and control of the commissioner.'"  Id. (quoting Doe, 2020 WL 2079310, at *11).[4]

B. The Undisputed Record of How the IEA Process is Broken

The DHHS website provides direction to those seeking emergency mental health services from the state.[5]  Through the website, DHHS advises that New Hampshire Hospital provides inpatient psychiatric treatment but does not provide walk-in emergency or crisis services.  Id.  DHHS directs persons seeking emergency or crisis mental health services to contact their local hospital's emergency

---

[4] In response to the New Hampshire Supreme Court's decision in Doe v. Commissioner, "the Governor of New Hampshire issued Executive Order 2021-09 (the "Order"), which directed 'the State of New Hampshire [to] take immediate, targeted, and direct action to ensure there is a system in place to help individuals in mental health crisis have timely and appropriate medical care.'" Doe v. Shibinette, 16 F. 4th at 900.  The Governor "authorized and directed the New Hampshire Department of Health and Human Services to use emergency administrative rules to increase access to mental health services and to 'clarify the roles New Hampshire hospitals have in caring for those patients who present at a hospital with mental health concerns.'"  Id.  The Governor also required DHHS to review the state's mental health services in order to determine whether the current providers are meeting the need for mental health services and to identify new providers and expand the number of beds in designated receiving facilities if necessary.  Id. DHHS issued rules in January 2022 (Part He-M 614 titled "Process for Involuntary Emergency Admission"), which were adopted on an emergency basis on March 16, 2022, and were later "readopt[ed]" on September 29, 2022.  Doc. no. 241-4.

[5] www.dhhs.nh.gov/ab-about-dhhs/locations-facilities/new-hampshire-hospital/nhh-involuntary-admissions (last visited Jan. 24, 2023).

department or a community mental health center for an in-person evaluation.  Id.
The website states that most admissions to New Hampshire Hospital are through
the IEA process that is laid out in RSA 135-C:27-33.

The record shows that persons seeking emergency services because of mental
health crises present at the Hospitals' emergency departments where they are
examined, and approved medical providers complete an IEA certificate when that is
appropriate.  Once an IEA certificate is completed, the law requires IEA-certified
patients to be immediately transported to a designated receiving facility.  The
process breaks down at this point because immediate transfer is not occurring in
most cases.  Doe, 174 N.H. at 261; Doe, 2020 WL 2079310, at *11.  As described by
the New Hampshire Supreme Court: "the statutory process is not working as the
legislature intended because of the lack of beds in receiving facilities."  Doe, 174
N.H. at 261.

The lack of an adequate number of beds in designated receiving facilities
prevents the Commissioner from immediately receiving IEA-certified patients from
the Hospitals' emergency departments.  Doc. no. 241-2 ¶¶ 12, 23; doc. no. 228-9.
And, the number of beds available at New Hampshire Hospital has recently
decreased, which has increased the wait time for IEA-certified patients.  Of the 187
existing beds at New Hampshire Hospital, only about 145 are operational due to a
"workforce shortage."  Doc. no. 241-1 ¶ 26.  The Hospitals are not paid by the state
for the costs of boarding uninsured IEA-certified patients in hospital emergency
departments.  As a result, the state's IEA-certified patients remain in private

hospitals' emergency departments, waiting until space becomes available in a designated receiving facility, for days and even weeks, during which time the Hospitals provide the space, facilities, board, and services needed by the Commissioner's patients.  See, e.g., doc. no. 228-9.

Since March 2022, the Hospitals have also been expected to and have facilitated probable cause hearings by telephone when IEA-certified patients remain in the emergency departments for three days or longer.  Doc. no. 248-1 at ¶ 6. Administrative Judge David King stated that 1,773 probable cause hearings for IEA-certified patients were held between March and September 2022. Doc. no. 233-1 ¶ 16; doc. no. 241-1 ¶ 3. In October 2022, Judge King notified the private hospitals that the 6th Circuit Court would handle all of the hearings for IEA certificates issued after October 28, 2022, and provided the court's hearing schedule to give "acute care hospitals greater assistance in their efforts to facilitate IEA probable cause hearings for patients/petitionees."  See doc. no. 248-1 at ¶¶ 5 & 6.

## DISCUSSION

The Hospitals move for summary judgment on their Fourth Amendment claim.  They contend there is no material factual dispute that the Commissioner's failure to immediately receive IEA-certified patients into designated receiving facilities causes the patients to be boarded in the Hospitals' emergency departments.  They further contend that the only reasonable conclusion on this record is that the Commissioner's boarding practice constitutes an unreasonable seizure in violation of the Fourth Amendment.  The court agrees.

9

A. <u>Fourth Amendment Claim</u>

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, protects against unreasonable seizures of property by the government.  U.S. Const. amend. IV; <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 61 (1992).  The government seizes property, within the purview of the Fourth Amendment, when "there is some meaningful interference with an individual's possessory interests in that property."  <u>Id.</u> (internal quotation marks omitted).  A Fourth Amendment violation may occur in a civil context as well as a criminal context.  <u>Id.</u> at 66-67.

A party claiming a Fourth Amendment violation must establish both that a seizure occurred and that the seizure was unreasonable.  <u>Soldal, 506 U.S. at 71</u>.  A seizure is unreasonable if a balance of public and private interests implicated by the seizure favors the asserted private interest.  <u>Id.</u>  A governmental seizure of private property may also be unreasonable when it is unjustified by state law.  <u>Severance v. Patterson</u>, 566 F.3d 490, 502 (5th Cir. 2009).  An unreasonable seizure violates the Fourth Amendment although it is only temporary or a partial seizure of property.  <u>Presley v. City of Charlottesville</u>, 464 F.3d 480, 487 (4th Cir. 2006).

1. <u>Seizure</u>

The Hospitals' asserted Fourth Amendment possessory property interest is each Hospital's interest in the space, facilities, and resources in its emergency department.  Each hospital is required to maintain and operate an emergency department to provide services to the public.  The Hospitals in this case are all

licensed, all maintain and operate emergency departments, and all have approved medical providers on staff to examine persons who are experiencing mental health emergencies and to complete IEA certificates when appropriate.[6]

"Completion of the IEA certificate carries with it immediate significant consequences." Doe, 2020 WL 2079310, at *9. Once the IEA certificate is complete, by operation of law, the IEA-certified patient becomes the Commissioner's patient in the state's mental health services system. The Hospitals are not part of the state's mental health services system.[7] The Hospitals have shown that there is no material factual dispute that the Commissioner's conduct (failing to receive IEA-certified patients into designated receiving facilities) results in IEA-certified

---

[6] The Commissioner argues that the statutory and regulatory requirements for Hospitals diminish their property interests in their emergency departments to the point that there are no interests to be protected under the Fourth Amendment. In support, the Commissioner cites Franklin Mem. Hosp. v. Harvey, 575 F.3d 121, 128 (1st Cir. 2009). In Harvey, the court addressed a regulatory taking not an unlawful physical seizure. It is undisputed in this case that the Hospitals are complying with all applicable regulatory requirements, and yet also maintain and operate their emergency departments as part of each Hospital's private facility and property. For these reasons, the court is not persuaded that Harvey negatively impacts the Hospitals' Fourth Amendment claim.

[7] The Commissioner argues, as she has previously, that her boarding practice does not constitute state action because hospital staff, not state actors, complete the IEA certificates based on their voluntary and discretionary decisions. The Commissioner is mistaken. The Commissioner's failure to receive IEA-certified patients into designated receiving facilities immediately after certification, as the law requires, is state action. Doe, 2020 WL 2079310, at *5. In addition, the New Hampshire Supreme Court held that the approved medical providers (who conduct the examination for purposes of IEA certification and then complete the certificate) perform those actions are acting as part of the state's mental health services system. Doe, 174 N.H. at 258.

patients remaining in and occupying space and resources in the Hospitals' emergency departments.[8]

The record reveals that there have been waitlists for IEA-certified patients for at least the past 10 years.  Doc. no. 241-2 ¶ 17; doc. no. 228-10 through doc. no. 228-14.  One of the individual plaintiffs in this case, Charles Coe, was IEA certified and held at Concord Hospital.  Doc. no. 78-1.  After 9 days without a probable cause hearing, he filed a petition in Merrimack County Superior Court seeking a writ of habeas corpus to be released from Concord Hospital.[9]  Doc. no. 78-1.  His petition was denied as moot after the IEA certificate expired, but the court noted that Coe was held at the hospital because "there is no space available in facilities which are for those individuals who have been found by a court to meet the criteria for involuntary commitment."  Doc no. 78-2 at 5.  At that time, there were 60 patients waiting for beds in designated receiving facilities.  Id. at 6.

In the case decided by the New Hampshire Supreme Court, Doe, 174 N.H. at 244-45, the petitioner was examined at Dartmouth Hitchcock Medical Center

---

[8]  The Commissioner raises an issue about who is obligated to transport IEA-certified patients from hospital emergency departments to designated receiving facilities. Doc. no. 241-1 at 2. The Commissioner asserts that it is not her duty to transport or arrange for transportation of IEA-certified patients and that under the statutory and regulatory framework applicable to IEA certification the Hospitals are required to provide transportation. Doc. no. 241-1 at 5-7, 13-14. Transportation is not a material issue in this case. The problem is not a lack of transportation but instead is a lack of available beds in designated receiving facilities. The Commissioner's focus on transportation for purposes of the motion before the court is a red herring.

[9] The petitioner is identified as "John Doe" in the petition.

("DHMC") on August 25, 2020, where an IEA certificate was completed for her.  She
remained at DHMC for more than two weeks because of a lack of space at a
designated receiving facility.  Id. at 245.  Doe's attorney was informed during her
wait that there were then 60 IEA-certified patients waiting for space in a
designated receiving facility and that Doe was 10th on the list.  Id.  Doe was
transported to New Hampshire Hospital on September 11, 2020.  Id.

In support of their motion for summary judgment, the Hospitals submitted
the affidavits of three hospital administrators to show examples of IEA-certified
patients waiting in their emergency departments.  In May 2020, there were 6 IEA
certificates completed at Mary Hitchcock Memorial Hospital, and 5 of the IEA-
certified patients waited in the emergency department for more than 3 days, with
one patient waiting for 10 days.  Doc. no. 228-9 at 3.  During the same time period,
13 patients waited for up to 6 days at Cheshire Medical Center.  Id. at 5-6.  Elliott
Hospital had two IEA-certified patients who each waited for a day for space to open
in a designated receiving facility in late May and early June of 2020.  Id. at 8-9.
Southern New Hampshire Medical Center had 20 IEA-certified patients between
April 29, 2020, and May 26, 2020, who waited for space to open in a designated
receiving facility for up to 8 days.  Id. at 12-13.  During that time, the Hospitals
provided space, resources, and board for the Commissioner's patients and for
patients who remained for more than three days, the approved providers
reexamined those patients and completed a new IEA certification.

The executive vice president of the New Hampshire Hospital Association submitted an affidavit and copies of New Hampshire Hospital's waitlists covering the period between June 2020 and March 2022, and the DHHS website also provides waitlist information.[10]  Docs. nos. 228-10, 11, 12, 13, & 14.  The waitlists show that every one of the Hospitals has had IEA-certified patients waiting for days in their emergency departments for space to open in a designated receiving facility. The following numbers and dates in 2021-2022 provide an exemplar of the numbers of IEA-certified patients in the Hospitals' emergency departments awaiting transport to designated receiving facilities:

- September 10, 2021 (17 patients)

- October 22, 2021 (22 patients)

- February 16, 2022 (19 patients)

- March 16, 2022 (13 patients)

- December 21, 2022 (24 patients)

The numbers of IEA-certified patients being boarded in the Hospitals' emergency departments is confirmed by Judge King.  In his declarations, Judge King states that 1,773 probable cause hearings for IEA-certified patients were held between March and September 2022 and that "the vast majority" of those hearings were conducted telephonically "due to patients/petitionees being located primarily

---

[10]  Designated Receiving Facility (DRF) Data | New Hampshire Department of Health and Human Services (nh.gov).

at acute care hospitals at the time the IEA petition is filed with the court." Doc. no.
233-1 ¶¶ 16- 17; doc. no. 248-1 ¶ 3.

While the IEA-certified patients are being boarded by the Hospitals, the
Hospitals must allocate space for the patients, staff to care for the patients, and
other resources such as food and treatment as may be necessary for the duration of
the stay.  This necessarily interferes with the Hospitals use of their departments,
staff, and facilities for other purposes.  Because of the three-day time limit on IEA-
certificates, Hospital staff must renew the IEA certificates every three days while a
certified patient remains in the Hospital's emergency department.  In addition, in
2022, the Commissioner has undertaken to provide probable cause hearings to her
IEA-certified patients in the Hospitals' emergency departments through a
cooperative process with the circuit court, and she expects the Hospitals to facilitate
the hearings—requiring additional space, facilities, and staff.

The Commissioner argues that there is no seizure of the Hospitals' property
because the Hospitals have voluntarily created the boarding situation by making
private and discretionary decisions to complete IEA certificates when space is not
available in designated receiving facilities and by cooperating with the state to
facilitate hearings for IEA-certified patients.[11]  Variations of this same argument
have been raised and rejected previously, and the Commissioner provides no

_____

[11] To the extent the Commissioner also argues that the Hospitals are
required to act as receiving facilities or are deemed to be part of the state mental
health services system for purposes of boarding IEA-certified patients, she is
mistaken.  It is established that "[p]rivate hospitals in New Hampshire are not
themselves 'receiving facilities.'" Doe, 16 F.4th at 898.

grounds to support a different result here.  See Doe v. Commissioner, 2020 WL 2104826, at *6 & *8 (D.N.H. May 1, 2020); Doe, 2020 WL 2079310, at *10, n.12.  It is clear under state law that the Hospitals are required to provide emergency services to persons suffering from mental illness, including an examination to determine whether an IEA-certificate is appropriate.  The approved medical providers who conduct IEA examinations are acting as part of the state mental health system while conducting that process.  Doe, 174 N.H. at 258.  The Hospitals' actions and obligations are governed by statute, as outlined in the background section.  The Commissioner has failed in her attempts to persuade the court that there exists a dispute of material fact on whether her boarding practice is the result of voluntary and private actions by the Hospitals.

It is now well established that it is the Commissioner's responsibility to provide services to IEA-certified patients.  The record demonstrates that the Commissioner is not meeting her responsibilities under RSA 135-C:27-33 to provide a functioning state mental health services system for her IEA-certified patients. The result is that the Commissioner is seizing the Hospitals' emergency departments by boarding her patients there without the permission of the Hospitals.

### 2. Unreasonable Seizure

To determine whether a seizure of property is reasonable, the court "'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged

to justify the intrusion.'" United States v. Jacobsen, 466 U.S. 109, 125 (1984)

(quoting United States v. Place, 462 U.S. 696, 703 (1983)).  When a state actor

interferes with a possessory property interest under the authority of a valid court

order, that seizure will likely be reasonable.  Soldal, 506 U.S. at 71.  On the other

hand, however, if the seizure is illegal or not supported by state law, the balance of

interests is more likely to favor the plaintiff.  See, e.g., Severance v. Patterson, 566

F.3d 490, 502 (5th Cir. 2009); Presley v. City of Charlottesville, 464 F.3d 480, 487

(4th Cir. 2006); Guidry v. JP Morgan Chase Bank, N.A., 2021 WL 3860961, at *5

(N.D. Ala. Aug. 30, 2021).

     The Hospitals have a strong possessory property interest in their emergency

departments.  The emergency departments allow the Hospitals to fulfill their

mission and obligation to provide emergency medical care in the communities where

they are located.  Even after viewing the record favorably to the Commissioner, the

Hospitals have shown that the Commissioner's current practice of boarding her

patients in private facilities stems from her failure to receive her IEA-certified

patients into designated receiving facilities.[12]  The record is clear; the

---

[12] The Commissioner contends that the holding in Denault v. Ahern, 857 F.3d 76 (1st Cir. 2017), precludes a finding that an unreasonable seizure occurred in this case because Fourth Amendment violations cannot be "based on a failure to return property after it was lawfully obtained."  Id.  The problem with the Commissioner's argument is that the seizure at issue here began when the Commissioner failed to immediately receive her IEA-certified patient into a designated receiving facility, leaving the patient in the Hospital's emergency department.  The seizure was unlawful from its inception. For that reason, there is no lawful seizure that later becomes unlawful, and Denault does not apply here.

Commissioner's boarding practice commandeers space, staff, and resources in the Hospitals' emergency departments that is needed for other patients and services. In light of the statutory obligations imposed on the Commissioner under RSA 135-C:27-33, the Commissioner has no governmental interest in failing to receive IEA-certified patients in designated receiving facilities. The record establishes that the seizure is illegal under state law and lacks any legitimate governmental interest that justifies it. There is an absence of any material factual dispute on either question.

In contrast, the Hospitals have a weighty interest in operating their emergency departments and using both the space and the resources in the emergency departments to their fullest extent and for their intended purposes. The Hospitals' interest is not just a private possessory property interest; the Hospitals also have a legal obligation to operate functioning and available emergency departments.

On this record, there is no dispute of material fact that the Commissioner's unlawful boarding practice is an unreasonable seizure of the Hospitals' emergency departments.

B. Result and Relief

In Count II of their amended complaint, "[t]he Hospitals seek a declaration that DHHS's conduct, policy and practice violate the Hospitals' Fourth and Fourteenth Amendment rights. The Hospitals also seek a permanent injunction

enjoining DHHS from continuing its conduct, policy, and practice."  Doc. no. 77
¶ 103.

### 1. Declaratory Judgment

The Declaratory Judgment Act, provides that "any court of the United States
. . . may declare the rights and other legal relations of any interested party seeking
such declaration, whether or not further relief is or could be sought."  28 U.S.C.
§ 2201(a).  The Hospitals have established that the Commissioner's practice of
boarding IEA-certified patients in the Hospitals' emergency departments has
violated and continues to violate their Fourth Amendment right to be free from
unreasonable seizures of their emergency departments.  The Hospitals are entitled
to a declaratory judgment on that point.[13]  The Hospitals have demonstrated
success on the merits of their claim in Count II, and a declaratory judgment will
issue.

### 2. Permanent Injunction

To be entitled to a permanent injunction, the Hospitals must establish:

> (1) that [they have] suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the balance of the
> hardships between the [parties], a remedy in equity is warranted; and
> (4) that the public interest will not be disserved by a permanent
> injunction.

---

[13] Importantly, under the jurisdictional restrictions imposed by the Eleventh
Amendment, the Hospitals' claim in Count II is limited to whether the
Commissioner's official actions in enforcing state law are in violation of the Fourth
Amendment.  See Doe, 16 F.4th at 903-04.  For that reason, the declaratory
judgment is limited to the Commissioner's violation of the Fourth Amendment.

Esso Standard Oil Co. v. Lopez-Freytes, 522 F.3d 136, 148 (1st Cir. 2008) (quoting

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390 (2006)); accord Taylor v.

Grunigen, No. CV 19-11947-MBB, 2022 WL 1239955, at *30 (D. Mass. Apr. 26,

2022).

<blockquote>a. <u>Irreparable injury</u></blockquote>

The first prong (irreparable injury) weighs in favor of an injunction.  The

Hospitals contend that the "presence of irreparable injury is manifest" because of

the Commissioner's practice over the past 10 years of boarding IEA-certified

patients in the Hospitals' emergency departments.  As explained previously, the

Hospitals must use its space, staff, and resources for IEA-certified patients.  This

injury is ongoing so long as no injunction issues.  And, there is no dispute that

money damages are not available for this injury.  See Doe, 16 F.4th at 899.  The

Commissioner's arguments to the contrary are unavailing.[14]

---

[14] The Commissioner argues that the Hospitals cannot show an irreparable injury, for purposes of a permanent injunction, because they could avoid boarding IEA-certified patients by taking different actions.  For example, the Commissioner suggests that the Hospitals could "instruct all hospital providers and staff authorized to complete IEA certificates under RSA 135-C:28 that they cannot complete an IEA certificate until they know a DRF bed is available for a patient and enact an emergency rule to that effect."  Doc. no. 241-1 at 43.  The Commissioner also suggests that the hospitals could simply decide to treat the Commissioner's IEA-certified patients themselves or they could transfer the Commissioner's IEA-certified patients to another hospital.  Doc. no. 247 at 4.  In so arguing, the Commissioner ignores the import of IEA certification.  Once certified, the patient is in the state's mental health system, not in the private hospital's system, and is the Commissioner's patient.  The Commissioner's arguments on this point are unpersuasive.

b. Inadequate remedy at law

The second prong (inadequate remedy at law) also weighs in favor of an injunction.  The Commissioner suggests that the Hospitals' injury may be redressed by a claim for damages under the Takings Clause of the Fifth Amendment.  Doc. no. 247 at 5, n.2.  As cited above, sovereign immunity under the Eleventh Amendment precludes a claim for damages against the Commissioner, and the Hospitals are not seeking damages.  See Doe, 16 F.4th at 899; Doe v. Commissioner, No. 18-cv-1039-JD, 2021 DNH 001, 2021 WL 27009, at *4 (D.N.H. Jan. 4, 2021).

c. Remedy is warranted and public interest served

When the defendant is a government entity, the third and fourth prongs are considered together.[15]  Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).  The third prong (balancing the hardships) and the fourth prong (the public interest will not be harmed) weigh in favor of an injunction.  The combined analysis asks what hardships will be imposed with or without an injunction and where the public interest lies.  See Mass. Fair Housing Ctr. v. U.S. Dept. of Housing & Urban Dev., 496 F. Supp. 3d 600, 611 (D. Mass. 2020).  The hardship to the Hospitals if the boarding practice is not enjoined is the continued seizure by the Commissioner of the Hospitals' emergency departments.  An order requiring the Commissioner to stop violating the Fourth Amendment

---

[15] Although the Commissioner relies on the combined standard under Nken, the court is aware of the Commissioner's jurisdictional status in this case under Ex parte Young.  Doe, 16 F.4th at 903-04; Doe, 2021 WL 27009, at *2-*4.

through the boarding practice would allow Hospitals to use their emergency departments for their intended purpose, serving the emergency medical needs of their communities.  An added public interest is that IEA-certified patients would receive the immediate and specialized care to which they are entitled within the state's mental health services system.

In sum, the Hospitals have made the necessary showing under all four prongs to support a permanent injunction.

### d. Proposed Injunction

Although entitled to injunctive relief, the proponent must still cross an important hurtle. The injunction proposed must have specific terms and "must describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1); see also AcryliCon USA, LLC v. Silikal GMBH & Co., 46 F.4th 1317, 1327 (11th Cir. 2022); SiOnyx, LLC v. Hamamatsu Photonics K.K.SiOnyx, LLC v. Hamamatsu Photonics K.K, 2019 WL 3358599, at *2 (D. Mass. July 25, 2019).  Specificity and detail are required because injunctions cannot place those enjoined at risk of the court's contempt powers if the injunction is "too vague to be understood."  Schmidt v. Lessard, 414 U.S. 473, 476 (1974).

The Hospitals seek an injunction that enjoins the Commissioner from continuing the "conduct, policies, and practice that violate the Hospitals' Fourth and Fourteenth Amendment rights."  Doc. no. 228-1 at 24; doc. no. 246 at 20.  The proposed injunction contains no specificity; it does not describe in detail "the

22

conduct, policies, and practice" that would be enjoined.  The proposed language is not sufficiently specific and detailed to put the Commissioner on notice of what conduct, policies, and practice are enjoined.  Therefore, the Hospitals have not sought a permanent injunction that may be enforced, and for that reason, no permanent injunction will issue at this time.

## CONCLUSION

For the foregoing reasons, the Hospitals' motion for summary judgment on Count II of the amended complaint (document no. 228) is granted in part and denied in part.

The motion for summary judgment is granted as to a declaratory judgment on Count II, as follows:

> The Commissioner has violated and continues to violate the Hospitals' Fourth Amendment right (made applicable to the states through the Fourteenth Amendment) to be free from unreasonable seizures of their emergency departments though her conduct, policies, and practices that fail to allow IEA-certified patients to be immediately transported from the Hospitals' emergency departments to designated receiving facilities.

The motion for summary judgment is denied without prejudice as to a permanent injunction.

 In light of the declaratory judgment, **within 30 days of the date of this order,** counsel shall meet, confer, and jointly file a proposed schedule in which they: will draft agreeable terms of a permanent injunction for Count II, OR, if necessary, will file separate proposed permanent injunctions for the court's consideration and determination.

The Hospitals shall file an appropriate motion **within 14 days of the date of this order** to clarify the status of the Hospital parties and seek dismissal or amendment as may be necessary.  <u>See</u> <u>supra</u> fn. 1.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

February 23,  2023

cc: Counsel of record.