UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe, et al.

     v.

Lori Weaver, Commissioner of the
New Hampshire Department of
Health and Human Services and
Hon. David D. King, Administrative
Judge of the New Hampshire Circuit
Court

Civil No. 18-cv-1039-LM
Opinion No. 2024 DNH 024 P

# O R D E R

Six representative plaintiffs bring this class action against Lori Weaver in her official capacity as Commissioner of the New Hampshire Department of Health and Human Services ("the Commissioner") and the Honorable David D. King in his official capacity as Administrative Judge of the New Hampshire Circuit Court ("the Administrative Judge"). Proceeding under 42 U.S.C. § 1983, plaintiffs allege that defendants' procedures for conducting probable cause hearings for persons detained on "involuntary emergency admission" ("IEA") certificates under RSA chapter 135-C violate Fourteenth Amendment due process requirements. Defendants move to dismiss based on standing, Younger abstention, Eleventh Amendment immunity, and for failure to state a claim. See doc. nos. 289 & 290. For the following reasons, the court finds that it is required to abstain from resolving plaintiffs' claim and grants defendants' motions to dismiss.

## STANDARD OF REVIEW

"The courts in this circuit differ as to whether <u>Younger</u> abstention is a ground for dismissal under Rule 12(b)(6), 12(b)(1), or neither, and the First Circuit Court of Appeals has not resolved this issue." Jafri v. N.H. Sup. Ct. Comm. on Character & Fitness, Civ. No. 1:22-cv-0039-JL, 2022 WL 10600019, at *1 n.1 (D.N.H. Oct. 18, 2022) (citing Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 39 n.6 (1st Cir. 2012)). Here, the parties proceed from the assumption that the standard of review applicable to 12(b)(6) motions applies; therefore, the court will do the same. The court takes the complaint's well-pleaded facts as true and draws all reasonable inferences in plaintiffs' favor. Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014).

## BACKGROUND

This case has a lengthy history, which the court has discussed in depth in other orders. <u>See, e.g.</u>, Doe v. Comm'r, 344 F.R.D. 57 (D.N.H. 2023); Doe v. Comm'r, 657 F. Supp. 3d 206 (D.N.H. 2023); Doe v. Comm'r, 2021 WL 27009 (D.N.H. Jan. 4, 2021); Doe v. Comm'r, 2020 WL 7481735 (D.N.H. Dec. 18, 2020); Doe v. Comm'r, 2020 WL 2129717 (D.N.H. May 4, 2020); Doe v. Comm'r, 2020 WL 2104826 (D.N.H. May 1, 2020); Doe v. Comm'r, 2020 WL 2079310 (D.N.H. Apr. 30, 2020); <u>see also</u> Doe v. Shibinette, 16 F.4th 894 (1st Cir. 2021). As such, the court will not repeat that lengthy history here.

By way of brief summary, plaintiffs originally challenged the Commissioner's practice of delaying probable cause hearings for IEA-certified patients until the

2

patients were brought to a "designated receiving facility" ("DRF") as a violation of RSA 135-C:27 through :33 and their due process rights. See doc. nos. 1, 78. Both this court and the New Hampshire Supreme Court (in an unrelated habeas case) construed RSA 135-C:27 through :33 to require a probable cause hearing within three days of the completion of a certificate for admission, not within three days of arriving at a DRF. See Doe v. Comm'r, 174 N.H. 239, 252 (2021); Doe, 2020 WL 2079310, at *11. That is, both courts concluded that the Commissioner's practice of "boarding" IEA-certified patients within non-DRF hospitals was not permitted by RSA chapter 135-C.

The Commissioner and the Administrative Judge thereafter modified the procedures for probable cause hearings. See doc. no. 281-19. Under the modified procedures, a telephonic probable cause hearing occurs within three days of the completion of the certificate for admission. The patient appears telephonically from the location where he or she is detained, regardless of whether that facility is a DRF. After that procedure was implemented, the Commissioner moved to dismiss plaintiffs' claims as moot. The court permitted plaintiffs to file a second amended complaint to address the procedural changes and denied the Commissioner's motion to dismiss. See Doe, 344 F.R.D. at 68.

In the second amended complaint, plaintiffs bring a single claim against the Commissioner and the Administrative Judge. They allege that the modified procedures for probable cause hearings violate their procedural due process rights under the Fourteenth Amendment. More specifically, they challenge procedures for:

(1) holding probable cause hearings by telephone; (2) holding the hearings at a centralized Circuit Court location in Concord, which they contend denies them access to counsel; and (3) failing to provide patients with timely notice of their rights, notice of the grounds for initiating IEA proceedings against them, and a copy of the IEA petition. They seek a declaratory judgment that the modified procedures violate the Fourteenth Amendment, and a prospective injunction that will "[p]ermanently enjoin the Commissioner and Administrative Judge from failing to provide prompt and meaningful procedural due process to individuals who are involuntarily detained under RSA 135-C:27-33" and "[r]equire the Commissioner and Administrative Judge to provide prompt and meaningful procedural due process to individuals who are involuntarily detained under RSA 135-C:27-33." Doc. no. 281 at 63.

## DISCUSSION

The Commissioner and the Administrative Judge move to dismiss the second amended complaint on <u>Younger</u> abstention grounds. Although they also raise other grounds for dismissal, because the court finds that <u>Younger</u> abstention is required, it does not reach those other grounds.[1]

---

[1] As noted, lack of standing is one of the grounds upon which dismissal is sought. Standing is an issue of subject-matter jurisdiction, and the court must assure itself of its jurisdiction before addressing a case's merits. <u>See, e.g.</u>, <u>Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-95 (1998)</u>. <u>Younger</u> also implicates the court's jurisdiction, though not in the same manner standing does. <u>See</u> <u>Wassef v. Tibben, 68 F.4th 1083, 1086 n.3 (8th Cir. 2023)</u> (explaining that, where <u>Younger</u> abstention applies, "the district court is required not to <u>exercise</u> its jurisdiction," but

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Co. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). "Nevertheless, this obligation is not absolute—and the Supreme Court has developed a small cluster of doctrines that either require or allow federal courts to defer to state proceedings in particular circumstances." Sirva Relocation, LLC v. Richie, 794 F.3d 185, 191 (1st Cir. 2015). In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held, based on principles of equity and comity, that federal courts must abstain from enjoining an ongoing state criminal prosecution absent exceptional circumstances.[2] See 401 U.S. at 43-46. Younger was subsequently extended to "state civil proceedings that are akin to criminal prosecutions" as well as state proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013).

---

the applicability of Younger "does not mean the court lacks jurisdiction"); SBA Towers II, LLC v. Town of Atkinson, Civ. No. 09-cv-447-LM, 2010 WL 5185108, at *1 (D.N.H. Dec. 15, 2010). Because standing and Younger are both issues of jurisdiction, the court can consider Younger without first addressing defendants' standing challenge. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("[D]istrict courts do not overstep Article III limits when they . . . abstain under Younger . . . without deciding whether the parties present a case or controversy." (citations omitted)); Steel Co., 523 U.S. at 100 n.3 (approving prior case in which court resolved Younger abstention "in lieu of determining whether there was a case or controversy" because "we have treated [Younger] as jurisdictional").

[2] In a companion case to Younger, the Supreme Court held that federal courts are also barred from issuing declaratory relief with respect to ongoing state criminal proceedings. See Samuels v. Mackell, 401 U.S. 66, 69-70 (1971).

To determine whether <u>Younger</u> requires abstention, the court must first determine whether the state proceeding at issue is "within the <u>Younger</u> taxonomy"; i.e., whether it is a criminal proceeding, a quasi-criminal proceeding, or a proceeding which implicates the state's interest in enforcing its own orders. <u>Sirva, 794 F.3d at 192-93</u>. If the state proceeding is one to which <u>Younger</u> may be applied, the court must next consider whether the factors set forth in <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982)</u>, support abstention. <u>See</u> <u>id. at 193</u>. If those factors support abstention, the third and final step in the analysis is to determine whether any "exceptions to the <u>Younger</u> doctrine apply." <u>Id.</u> Where all three of these steps are resolved in favor of abstention, "abstention is mandatory." <u>Rio Grande Cmty. Mental Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005)</u>.

I.     <u>Plaintiffs Do Not Dispute That *Younger* Applies to IEA Proceedings</u>

As noted, <u>Younger</u> applies not only to state criminal proceedings, but also certain civil proceedings that are "coercive" in nature in a manner that is akin to criminal proceedings. <u>Id. at 69</u>; <u>see</u> <u>Sprint, 571 U.S. at 79-80</u> (discussing common characteristics of quasi-criminal proceedings). Courts have held that civil commitment proceedings are sufficiently analogous to state criminal proceedings to come within <u>Younger</u>'s scope. <u>See, e.g.</u>, <u>James v. Harris, No. 19-CIV-21836-WILLIAMS, 2022 WL 1686494, at *4-5 (S.D. Fla. May 26, 2022)</u>. Moreover, plaintiffs do not dispute that civil commitment proceedings under RSA chapter 135-C fall within the <u>Younger</u> taxonomy. <u>See</u> doc. no. 295 at 8-13. Given the lack of

dispute on this issue, the court finds that IEA proceedings under RSA chapter 135-C are sufficiently analogous to criminal proceedings to come within Younger's scope.

II.   The *Middlesex* Factors Favor Abstention

Under Middlesex, for abstention to be justified the court must find: (1) "there is an ongoing state proceeding that is judicial in nature"; (2) "the proceeding implicates important state interests"; and (3) the state proceeding provides an adequate opportunity to raise federal defenses. Sirva, 794 F.3d at 196. The court will consider each factor in turn.

A.   IEA Proceedings Are Ongoing State Proceedings That Are Judicial in Nature

Plaintiffs do not dispute that IEA proceedings under RSA chapter 135-C are state proceedings that are judicial in nature. Plaintiffs do contend, however, that abstention is not warranted because they do not seek to "stop or nullify" any ongoing IEA proceeding. Doc. no. 295 at 10 (quotation omitted). Rather, they contend that they seek to enjoin "policies and procedures" applicable to all IEA proceedings in New Hampshire. Id. at 11. Therefore, plaintiffs contend that Younger does not apply.

The Eighth Circuit considered a closely analogous argument in Oglala Sioux Tribe v. Fleming, 904 F.3d 603 (8th Cir. 2018). At issue there was South Dakota's statutory scheme providing for the removal of children from their homes in exigent circumstances. 904 F.3d at 606; see S.D. Codified Laws § 26-7A-1 et seq. The statutes allowed state officials and social workers to temporarily remove children

from their homes but required a custody hearing within 48 hours of the child's removal and the completion of a petition for temporary removal within that same timeframe. See 904 F.3d at 607. If the court does not return the child to the parent's custody at the conclusion of that hearing, the court must review the child's placement every sixty days. Id.

Two Indian tribes and two individual plaintiffs brought a class action alleging that South Dakota had a "policy, practice, and custom . . . to wait at least sixty days (and more often ninety days) before providing parents whose children have been removed from their custody with adequate notice, an opportunity to present evidence on their behalf, an opportunity to contest the allegations, and a written decision based on competent evidence." Id. at 608. The individual class plaintiffs, whose children had been removed from their homes pursuant to the challenged South Dakota laws but subsequently returned, disclaimed that they were "seeking to interfere with, or overturn decisions in, their own cases but rather are seeking to expose and challenge systemic policies, practices, and customs . . . that violate federal law." Id. Alleging that these policies violated the Due Process Clause and the Indian Child Welfare Act, the plaintiffs sought declaratory and injunctive relief that would require South Dakota to give "adequate notice and a meaningful hearing at a meaningful time following the removal of Indian children from their homes by State officials." Id. The defendants moved to dismiss on Younger grounds. Id. The district court denied the motion, finding that the

requested relief would not interfere with ongoing state proceedings. See id. at 608, 611.

The Eighth Circuit reversed and concluded that Younger mandated abstention. See id. at 610. Although the plaintiffs argued that Younger was inapplicable because "they sought only prospective relief aimed at future 48-hour proceedings," and the federal proceeding "would not interfere with a pending state proceeding," the Court of Appeals disagreed. Id. "Younger may apply even if a 48-hour hearing is not in session at the precise moment the district court grants relief." Id. The court reasoned that, even though the plaintiffs did not seek to enjoin any particular custody proceeding, "they pray for relief that will 'be operative only where permissible state [proceedings] are pending against one or more of the beneficiaries of the injunction.'" Id. at 612 (quoting O'Shea v. Littleton, 414 U.S. 488, 500 (1974)) (alteration in Oglala Sioux). The grant of such relief would "place the district court in the position of conducting an ongoing 'federal audit' of South Dakota temporary custody proceedings," and "'disrupt[] the normal course of proceedings in state courts' . . . just as would a request for injunctive relief from an ongoing state proceeding." Id. (quoting O'Shea, 414 U.S. at 500-01).

The Eighth Circuit is not alone in holding that Younger applies to suits seeking to enjoin state policies applicable to judicial proceedings even when the suit does not seek to enjoin any particular proceeding. In O'Shea v. Littleton, which the Eighth Circuit relied on in Oglala Sioux, the Supreme Court held that Younger was designed to prevent this sort of ongoing oversight of state court proceedings. O'Shea,

414 U.S. at 500-01. In Luckey v. Miller, 976 F.2d 673 (11th Cir. 1992), the Eleventh Circuit held that Younger applied to a class action challenging the constitutional adequacy of Georgia's indigent criminal defense system, even though the action did not seek to enjoin any particular proceeding, reasoning that, under O'Shea, abstention was required insofar as the requested relief "would, inevitably, interfere with every state criminal proceeding." 976 F.2d at 677. And in Kaufman v. Kaye, 466 F.3d 83 (2d Cir. 2006), the Second Circuit ruled that Younger required the court to abstain from a case alleging that that New York's procedure for assigning cases among panels of judges in the state appellate courts was unconstitutional. See 466 F.3d at 86-87 (collecting numerous additional authorities in agreement).

For these reasons, plaintiffs' arguments that they do not seek to enjoin an "ongoing" proceeding are not persuasive. While it may be true, as plaintiffs argue, that they do not seek to "stop or nullify" any particular judicial decision in any particular judicial proceeding, they seek declaratory and injunctive relief that would require all IEA proceedings in New Hampshire to conform to a federal court's injunction. As the Eighth Circuit reasoned in Oglala Sioux, they seek relief that will apply to each discrete IEA proceeding at the moment the proceeding is instituted, and subject state officials to a contempt proceeding for failure to comply with a federal court's determination as to how the state court's proceeding must be conducted. See Oglala Sioux, 904 F.3d at 612. This is the sort of "ongoing federal audit" of state judicial proceedings that Younger was designed to avoid. Id. (quotation omitted).

Plaintiffs attempt to escape this conclusion by pointing to the First Circuit's opinion in Rio Grande. There, a federally qualified health center sued the Secretary of Health in Puerto Rico, seeking an injunction to require payment of certain Medicaid funds when due. 397 F.3d at 60. The plaintiff also brought a parallel action in state court, seeking damages and other relief because of past overdue payments. Id. The First Circuit—in addition to holding that the state court proceeding was not the type of civil enforcement action to which Younger could be extended, id. at 70—found that the requested injunction would not interfere with the state court proceeding because it was "an injunction to make the state Medicaid agency perform certain acts required by federal law; it is not an injunction that would stop the state court from proceeding independently against the state Medicaid agency as well, nor is it inconsistent with any of the [state] court orders," id. at 71 (emphasis added). While the First Circuit noted that the federal court's decision might have "res judicata effects" on the state proceeding, such effects "are of course not enough to trigger Younger." Id.

Rio Grande does not support plaintiffs' position. In that case, the First Circuit merely held that a federal court's injunction requiring a state agency to prospectively comply with certain Medicaid requirements would not operate to enjoin a state court proceeding for damages based on prior alleged illegalities. That is a far cry from the circumstances in this case, where plaintiffs seek to enjoin both the Commissioner and the Administrative Judge and contend that policies and procedures promulgated by the Administrative Judge for the conducting of IEA

proceedings fail to comport with due process. Unlike in <u>Rio Grande</u>, the federal proceedings would not merely have the potential for preclusive effect; by the second amended complaint's own prayer for relief, an injunction in this case would "permanently enjoin the Commissioner and Administrative Judge" and "[r]equire" them to provide greater protections to persons subject to IEA proceedings. Doc. no. 281 at 63.

For these reasons, the court concludes that the requested relief would interfere with ongoing state proceedings that are judicial in nature, such that the first <u>Middlesex</u> factor favors abstention. The court next turns to the second <u>Middlesex</u> factor.

B.    IEA Proceedings Implicate Important State Interests

RSA 135-C:27 provides: "A person shall be eligible for involuntary emergency admission if he is in such mental condition as a result of mental illness to pose a likelihood of danger to himself or others." As this court has previously noted in the context of involuntary civil commitment proceedings, "the proper care of mentally ill person[s] who may be dangerous to themselves or others as a result of their mental illness, or who are sufficiently incapacitated by mental illness so as not to be able to provide for their own personal needs or safety, is undoubtedly an important matter of state interest." <u>Weber v. New Hampshire</u>, No. 09-cv-449-PB, 2010 WL 148368, at *5 (D.N.H. Jan. 13, 2010). Courts in other jurisdictions are in accord. <u>See, e.g.</u>, <u>Dorliae v. Minnesota</u>, No. 18-cv-2162 (JRT/LIB), 2018 WL 4691591, at *1 (D. Minn. Sept. 7, 2018) (finding that "this ongoing civil commitment proceeding implicates

the State of Minnesota's important interests in detaining and apportioning medical care to citizens believed to be a danger to themselves or others" (quotation omitted)), report and recommendation approved, 2018 WL 4688359 (D. Minn. Sept. 28, 2018). And "the Supreme Court has recognized that states 'have important interests in administering certain aspects of their judicial systems.'" Rossi v. Gemma, 489 F.3d 26, 35 (1st Cir. 2007) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-13 (1987)).

Plaintiffs nevertheless argue that the involuntary emergency admission of persons whose mental illness has rendered them dangerous to themselves or others does not implicate important state interests under Younger. According to plaintiffs, Younger requires that the state's interest be "peculiar to the State of New Hampshire." Doc. no. 295 at 12 (emphasis omitted). Because the procedures by which IEA proceedings are conducted "is a universal judicial interest common to the individuals whose lives are affected and liberty deprived," plaintiffs contend that abstention is not warranted. Id. (quotation and emphasis omitted).

The court is not persuaded. The only case plaintiffs cite in support of their understanding of this Middlesex factor is AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1150 (9th Cir. 2007). But that case does not support plaintiffs' contention. In Roden, the Ninth Circuit rejected an argument that "California's interest in adjudicating conflicts in a timely fashion" weighed in favor of abstention under the second Middlesex factor. 495 F.3d at 1150. The Ninth Circuit explained that "[t]he goal of Younger abstention is to avoid federal court interference with

<u>uniquely</u> state interests such as preservation of those states' peculiar statutes, schemes, and procedures." Id. The state's freestanding "interest in judicial efficiency," which applies in every state proceeding, did not suggest that abstention was appropriate. Id.

Here, by contrast, plaintiffs seek "federal court interference" with New Hampshire's "peculiar statutes, schemes, and procedures." Id. Plaintiffs seek declaratory and injunctive relief that would strike down the state's procedures for conducting telephonic probable cause hearings for IEA-certified patients from a central Circuit Court location in Concord. New Hampshire's "peculiar statutes, schemes, and procedures" for the involuntary emergency admission of persons whose mental illness renders them dangerous to themselves or others undoubtedly implicate important state interests. See Weber, 2010 WL 148368, at *5. Thus, the court finds that the second Middlesex factor weighs in favor of abstention.

C.   <u>Federal Defenses May Be Raised in IEA Proceedings</u>

The third Middlesex factor also weighs in favor of abstention. "Except in the most extraordinary cases, a federal court must presume that state courts . . . are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct. of P.R. for the Dist. of Arecibo, 988 F.2d 252, 262 (1st Cir. 1993). Thus, "the third Middlesex factor is generally deemed [to favor abstention] as long as no state procedural rule bars the assertion of a federal defense and the state affords a fair opportunity to raise that defense." Sirva, 794 F.3d at 196. There is no dispute in this case that patients can

challenge the constitutionality of the procedures for IEA probable cause hearings in those hearings themselves and that a Circuit Court's decision can be appealed to the New Hampshire Supreme Court or collaterally attacked through a petition for a writ of habeas corpus in New Hampshire Superior Court. Plaintiffs acknowledge that patients can and have raised due process challenges in IEA probable cause hearings. They argue, however, that this "is not an adequate alternative to the broad-based injunctive relief that Plaintiffs seek to ensure that all IEA patients receive adequate due process." Doc. no. 295 at 12-13 (quotation and emphasis omitted). In support of this contention, plaintiffs rely on Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142 (D. Mass. 2011). They contend that Connor B. stands for the proposition that abstention is not appropriate in a class action when the plaintiffs seek an injunction to accomplish a "systemic" change.

As an initial matter, the court in Connor B. did not have the benefit of the First Circuit's opinion in Sirva, which synthesized and clarified Younger jurisprudence following the Supreme Court's opinion in Sprint Communications. Thus, in Connor B., the District of Massachusetts discounted the defendants' reliance on language from Moore v. Sims in which the Supreme Court stated that "abstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims," 442 U.S. 415, 425-26 (1979), because Moore preceded Middlesex. See Connor B., 771 F. Supp. 2d at 157. This was understandable given the Middlesex court's emphasis on the adequacy of the state proceeding, see 457 U.S. at 432, but in Sirva the First Circuit held that, under the

third Middlesex factor (and in reliance on the language from Moore that the District of Massachusetts discounted), a state proceeding generally presents an adequate forum to litigate federal defenses "so long as no state procedural rule bars the assertion of a federal defense and the state affords a fair opportunity to raise that defense." Sirva, 794 F.3d at 196 (citing Moore, 442 U.S. at 430-32). Thus, Sirva makes clear that the First Circuit interprets Moore as having survived Middlesex, and this court is bound by that interpretation.

Second, the court is not convinced that Connor B. stands for as broad a proposition as plaintiffs maintain. In that case, the plaintiffs brought a proposed class action on behalf of all children who had been or would be placed in the custody of the Massachusetts Department of Children and Families ("DCF") as a result of a state juvenile court order adjudicating them in need of care or protection due to abuse or neglect by their parents. See 771 F. Supp. 2d at 149-50. The plaintiffs did not allege that the proceedings themselves were constitutionally deficient, but rather "challenge[d] certain facets of the foster care system in Massachusetts." Id. at 150. Specifically, they alleged that children in DCF's custody were exposed to substantial harm as a result of "systemic deficiencies within DCF, including," inter alia, DCF's "failure to maintain an adequately staffed and appropriately trained child welfare workforce." Id. The plaintiffs sought injunctive relief requiring DCF implement various internal reforms. See id. at 150-51.

In ruling that a Massachusetts juvenile court proceeding to determine whether a juvenile was in need of care or protection as a result of their parents'

abuse or neglect did not present an adequate forum to challenge systemic failures within DCF, the District of Massachusetts made the uncontroversial observation that, in such proceedings, "Massachusetts juvenile courts are tasked with handling difficult questions of family law on an ad-hoc basis," not with determining whether DCF is well-equipped to provide adequate care for and supervision of the thousands of children within the State's foster care system. Id. at 158. Because the plaintiffs' lawsuit challenged the latter but not the former, the juvenile court proceeding did not afford an adequate forum for the plaintiffs' argument. Stated differently, the plaintiffs' challenge in Connor B. did not go to the constitutionality of the juvenile courts' procedures for determining whether placement with DCF was warranted, but rather attacked DCF's ability to provide adequate care for children within the state's foster care system. The juvenile court proceedings "'contemplate[d] issues centering on the care of the child by his or her parent' and, thus, '[were] not suitable arenas in which to grapple with broad issues external to the parent-child relationship.'" Id. at 158 (quoting LaShawn A. v. Kelly, 990 F.2d 1319, 1322 (D.C. Cir. 1993)).

Here by contrast, plaintiffs do not make a systemic argument that New Hampshire agencies are incapable of providing suitable care for persons involuntarily admitted to the mental health services system on an emergency basis. Rather, they challenge the constitutionality of the procedures by which persons are involuntarily admitted to that system on an emergency basis. As plaintiffs acknowledge, New Hampshire Circuit Courts can and have reviewed the procedures

by which IEA probable cause hearings are conducted within those hearings themselves. If the Circuit Court denies relief, the patient can appeal to the New Hampshire Supreme Court, and a favorable ruling by that court on a due process challenge could have much the same effect as the requested state-wide injunction in this case. In short, nothing here suggests that due process rights cannot be vindicated in the state court system. Therefore, the third <u>Middlesex</u> factor favors abstention.

III.   <u>No Exception to *Younger* Applies</u>

Having found that IEA proceedings come within <u>Younger</u>'s scope and that all three <u>Middlesex</u> factors favor abstention, the court must abstain unless an exception to <u>Younger</u> applies. "Over the years, the [Supreme] Court has recognized a handful of exceptions to the <u>Younger</u> doctrine." <u>Sirva</u>, 794 F.3d at 192. These exceptions include: (1) "when a state proceeding is brought in bad faith, that is, for the purpose of harassment"; (2) "the state forum provides inadequate protection of federal rights"; and (3) "when a state statute is 'flagrantly and patently violative of express constitutional prohibitions.'" <u>Id.</u> (quoting <u>Younger</u>, 401 U.S. at 53). Plaintiffs do not argue that any exception to <u>Younger</u> applies, and the allegations in the complaint do not suggest that the challenged procedures were implemented in bad faith, that New Hampshire courts inadequately protect federal rights, or that the challenged procedures are flagrantly unconstitutional. As such, the court does not find that an exception to <u>Younger</u> applies, and the court must abstain from resolving the plaintiff's claim.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (doc. nos. 289 and 290) are granted. The second amended complaint (doc. no. 281) is dismissed. The Hospital plaintiffs' motion for joinder (doc. no. 288) is denied as moot. The motion to amend the class definition (doc. no. 307) is denied as moot.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 25, 2024

cc:     Counsel of Record